### UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

**Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

### MOTION INFORMATION STATEMENT

**Docket Number(s):** 23-7549

Caption [use short title]

**Motion for:** a stay pending appeal

Set forth below precise, complete statement of relief sought:

Motion for a stay of the district court's award of

prospective relief, consisting of declaratory relief and

a permanent injunction of New York City Administrative

Code 10-303(a)(2), which is a local law governing

shotgun and rifle permit applications, pending

the City's appeal.

Joseph Srour,

Plaintiff-Appellee,

v.

Kechant Sewell, in her Official Capacity as

NYPD Police Commissioner,

Defendant-Defendant,

and

New York City, New York, Edward A. Caban,

Defendants-Appellants.

**MOVING PARTY:** New York City and Caban          **OPPOSING PARTY:** Joseph Srour

☐ Plaintiff          ■ Defendant

■ Appellant/Petitioner          ☐ Appellee/Respondent

**MOVING ATTORNEY:** Elina Druker          **OPPOSING ATTORNEY:** Amy Bellantoni

[name of attorney, with firm, address, phone number and e-mail]

NYC Law Department          Amy Bellantoni Law Firm

100 Church Street, NY, NY, 10005          2 Overhill Road, Suite 400, Scarsdale, NY 10583

212-356-2609; edruker@law.nyc.gov          914-367-0090; abell@bellantoni-law.com

Court- Judge/ Agency appealed from: U.S. District Court for the Southern District of New York / Hon. John P. Cronan

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):

■ Yes   ☐ No (explain):_____

Opposing counsel's position on motion:

☐ Unopposed  ■ Opposed  ☐ Don't Know

Does opposing counsel intend to file a response:

■ Yes   ☐ No  ☐ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below?   ■ Yes ☐ No
Has this relief been previously sought in this court?  ☐ Yes ■ No

Requested return date and explanation  of emergency: _____

The district court has entered a stay of the decisions on appeal

until this Court determines this motion for a stay pending appeal, on the condition

that the City seek this relief by 10/30/23 at 11:59p.m. (as it is doing).

Is the oral argument on motion requested?   ■ Yes  ☐ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set?   ☐ Yes  ■ No  If yes, enter date:_____

**Signature  of Moving Attorney:**

_Elina Druker_   **Date:** 10/30/2023   Service : ■ Electronic  ☐ Other [Attach proof of service]

**Form T-1080** (rev. 10-23)

# 23-7549

## United States Court of Appeals
## for the Second Circuit

JOSEPH SROUR,

*Plaintiff-Appellant,*

*against*

KEECHANT SEWELL, in her Official Capacity as NYPD
Police Commissioner,

*Defendant-Defendant,*

*and*

NEW YORK CITY, NEW YORK, and EDWARD A. CABAN,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of New York

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR A STAY PENDING APPEAL**

RICHARD DEARING
CLAUDE S. PLATTON
ELINA DRUKER
*of Counsel*

October 30, 2023

HON SYLVIA O. HINDS-RADIX
*Corporation Counsel
of the City of New York*
Attorney for Appellee
100 Church Street
New York, New York 10007
212-356-2609 or -2502
edruker@law.nyc.gov

Reproduced on Recycled Paper

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..........................................................ii

PRELIMINARY STATEMENT ................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND .................................. 4

    A. The changing regulatory landscape governing the possession of firearms in New York City .................................... 4

    B. Srour's application for a rifle/shotgun permit and handgun premises license ......................................... 9

    C. This lawsuit culminating in the district court's grant of declaratory and permanent injunctive relief........................... 12

REASONS TO GRANT A STAY PENDING APPEAL ........................... 14

    A. This Court has already determined that an identical provision should remain in effect pending appeal. ................. 14

    B. A stay pending appeal is warranted under all of the stay factors. ........................................................ 16

        1. The City is likely to prevail on the merits. ........................... 17

        2. The equities overwhelmingly favor a stay, and Srour will suffer no harm if a stay is issued. ................................. 25

CONCLUSION ................................................................ 28

CERTIFICATE OF COMPLIANCE ....................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Chufen Chen v. Dunkin' Brands, Inc.*,
954 F.3d 492 (2d Cir. 2020) ............................................................... 20

*Dist. of Columbia v. Heller*,
554 U.S. 570 (2008) ................................................................. 22, 24

*Hassoun v. Searls*,
968 F.3d 190 (2d Cir. 2020) ............................................................. 16

*James B. Nutter & Co. v. Cnty. of Saratoga*,
39 N.Y.3d 350 (2023) ...................................................................... 20

*Libertarian Party v. Cuomo*,
970 F.3d 106 (2d Cir. 2020) ....................................................... 17, 18

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
142 S. Ct. 2111 (2022) ............................................................. *passim*

*People v. Viviani*,
36 N.Y.3d 564 (2021) ...................................................................... 20

*Petereit v. S.B. Thomas, Inc.*,
63 F.3d 1169 (2d Cir. 1995) ............................................................. 14

*Raritan Dev. Corp. v. Silva*,
91 N.Y.2d 98 (1997) ........................................................................ 21

*Town of Chester v. Laroe Estates, Inc.*,
581 U.S. 433 (2017) ........................................................................ 17

*United States v. Texas*,
143 S. Ct. 1964 (2023) .................................................................... 26

## Statutes and Regulations

28 U.S.C. § 1292(a)(1) ..................................................................... 14

ii

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

New York City Administrative Code § 10-131 ............................................5

New York City Administrative Code § 10-303(a)(2) ......................*passim*

New York City Administrative Code § 10-303(a)(9) ..........................4, 13

1913 N.Y. Laws ch. 608, § 1 ......................................................................25

Concealed Carry Improvement Act, 2022 N.Y. Laws ch. 371 .................7

N.Y. City Charter §§ 434, 435 ...................................................................5

N.Y. Penal L. § 400.00 ......................................................................4, 5, 7

38 R.C.N.Y. § 3-03 ...............................................................*passim*

38 R.C.N.Y. § 5-10 ...............................................................*passim*

38 R.C.N.Y. § 5-05 ....................................................................................5

## Other Authorities

S.51001,
   https://legislation.nysenate.gov/pdf/bills/2021/S51001 ...................7, 8

New York Police Department, Notice of Adoption of Final
   Rule (Dec. 13, 2022), https://rules.cityofnewyork.us/wp-
   content/uploads/2022/10/Permanent-Rule-FINAL-
   12.13.22.pdf ..........................................................................................8

## PRELIMINARY STATEMENT

In this Second Amendment challenge, the U.S. District Court for the Southern District of New York (Cronan, J.) issued declaratory and permanent injunctive relief preventing enforcement of New York City Administrative Code § 10-303(a)(2), which authorizes the Police Commissioner to deny a license to purchase and possess a rifle or shotgun in the City if the applicant lacks "good moral character." This Court should stay the declaratory and injunctive relief pending appeal.

Indeed, this Court has already determined that a stay pending appeal is appropriate in substantially similar circumstances. Following *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), New York State amended its handgun-licensing statutes, including by adding a new definition of "good moral character" that aligned with *Bruen*'s pronouncements. Late last year, a federal district court enjoined the new good-moral-character provision on essentially the same basis as was applied here. This Court stayed that injunction pending appeal. *Antonyuk v. Hochul*, 2d Cir. Case No. 22-2908, ECF Nos. 31; 75. The Court should follow suit and stay the injunctive and declaratory relief here for the same reasons, particularly since the NYPD has incorporated

the very same definition of "good moral character" in its post-*Bruen* regulations implementing Administrative Code § 10-303(a)(2).

Even apart from *Antonyuk*, the stay factors all counsel in favor of granting a stay pending appeal. Most fundamentally, the City is likely to prevail on the merits of its appeal. At the outset, Srour lacked standing to seek prospective relief against the current rifle/shotgun permitting scheme, given that Srour had not applied for a license under the post-*Bruen* amendments to the NYPD's implementing regulations and been denied, and there is no basis to conclude that he would have been denied a license under the new standards.

Prospective relief was also unwarranted because the court's assessment of the pre-*Bruen* licensing regime does not justify an injunction against the current post-*Bruen* scheme. On this point, at bottom, the district court placed undue weight on the fact that Administrative Code § 10-303(a)(2) was not amended after *Bruen*. But, as noted, the NYPD's implementing regulations were amended to clarify that "good moral character," as used in § 10-303(a)(2), tracks the definition in the state's post-*Bruen* handgun-licensing statute. The district court rightly recognized that Srour had no standing or basis to

2

challenge the NYPD's new regulation, but failed to recognize that the same logic dooms Srour's claims against the underlying Administrative Code provision, which the NYPD's regulation authoritatively construes.

Moreover, if the current good-moral-character requirement were properly before the Court, it would easily survive Second Amendment scrutiny. It is a permissible threshold requirement that mirrors identical language used in a Connecticut licensing statute expressly blessed by *Bruen*, and is calculated to ensure that only persons within the scope of the right—that is, responsible, law-abiding individuals—possess rifles or shotguns. A good-moral-character requirement is consistent with the original public understanding of the right, as confirmed by over 250 years of historical laws that disarmed irresponsible and non-law-abiding individuals.

The district court's misguided injunction will generate confusion and delays in licensing, and potentially undermine public safety by preventing the NYPD from considering whether applicants have the essential character, temperament, and judgment necessary to be safely entrusted with a weapon in New York City.

3

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  The changing regulatory landscape governing the possession of firearms in New York City

This stay application is limited to the district court's grant of a permanent injunction and declaratory relief against part of a local law enacted by the New York City Council that authorizes the NYPD to deny a license to purchase or possess a rifle or shotgun in the City to an applicant who lacks "good moral character." N.Y. City Admin. Code § 10-303(a)(2). To understand that law, it is necessary to understand the scheme for handgun licensing in the State, from which New York City's rifle/shotgun permitting scheme draws heavily.[1]

State law establishes the framework for handgun licensing in New York. *See generally* N.Y. Penal L. § 400.00. The State has long prohibited the possession of handguns without a license, *id.* §§ 265.01-265.04, 265.20(a)(3), and made two types of licenses generally available to the public: premises licenses for possession in a specific home or business and

---

[1] The City does not seek a stay pending appeal as to the injunction of New York City Administrative Code § 10-303(a)(9), which allows denial of a rifle/shotgun permit if "good cause exists for the denial." The agency's current, relevant regulations do not authorize it to deny applications on that basis. Thus, while the City disagrees with the district court's analysis regarding § 10-303(a)(9), it has no practical reason to seek a stay of that ruling.

4

carry licenses that authorize the holder to carry concealed handguns in certain public places, *id.* § 400.00(2)(a)-(b), (c)-(f). State law delegates authority to administer the firearm-licensing scheme to local licensing officers. *Id.* § 265.00(10). In New York City, the "licensing officer" in charge of issuing and renewing all firearms licenses is the Police Commissioner. *Id.* §§ 265.00(10), 400.00(1); N.Y. City Admin. Code § 10-131; N.Y. City Charter §§ 434, 435.

As relevant here, the Penal Law has long required applicants seeking a handgun license to demonstrate that they have "good moral character." The Commissioner has promulgated regulations to implement this authority, which are set forth in Title 38 of the Rules of the City of New York. The NYPD's License Division reviews all firearms permit applications under the supervision of the police commissioner. 38 R.C.N.Y. § 5-05.

The agency's rules have long provided that, when reviewing handgun-license applicants' moral character, the License Division shall consider, among other things, whether applicants have been arrested, indicted, or convicted of any crimes; made any false statements on their applications or failed to disclose their complete arrest history; have a poor

5

driving history; or any other information that demonstrates a lack of good moral character, including a lack of candor towards authorities. 38 R.C.N.Y. § 5-10(a), (e), (h), & (n).

The City Council borrowed heavily from the handgun licensing scheme when it long ago adopted a permitting scheme covering possession of rifles and shotguns in New York City, given the increased dangers posed by firearms in the most densely populated major municipality in the country. N.Y. City Admin. Code § 10-303(a). The Administrative Code directs the Police Commissioner to issue rifle/shotgun permits under similar criteria that apply to issuance of handgun premises licenses under the state statute. *Id.* § 10-303(b), (c). The law therefore allows the Police Commissioner to deny a license if the applicant lacks "good moral character"—a term that is not defined. *Id.* § 10-303(a)(2).

In June 2022, in *Bruen*, the Supreme Court invalidated New York State's "proper cause" requirement, which had been part of concealed-carry handgun licensing in the State for over a century. 142 S. Ct. at 2156. The proper-cause standard is not relevant here, because this challenge is limited to the rules governing shotgun/rifle permits, which

have never required a showing of proper cause. However, *Bruen* triggered a broader reevaluation of licensing standards at the state and local levels.

In response to *Bruen*, the New York State Legislature enacted the Concealed Carry Improvement Act (S.51001/A.41001) in an emergency session.[2] The CCIA establishes new statewide standards for issuing carry licenses and regulating firearms more generally. See 2022 N.Y. Laws ch. 371; N.Y. Penal L. § 400.00 *et seq.*

The CCIA also clarifies the good-moral-character requirement that applies to handgun license applications by adding the following definition: "[G]ood moral character … shall mean having the essential character, temperament and judgement necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others." N.Y. Penal L. § 400.00(1)(b). *See Bruen*, 142 S. Ct. at 260 n.1 (approving of Connecticut's suitable-person standard, which allow officials "to deny a concealed-carry permit … only to those 'individuals whose conduct has shown them to be lacking the essential character of [sic] temperament necessary to be entrusted with a weapon.'" (internal

---

[2] https://legislation.nysenate.gov/pdf/bills/2021/S51001.

citations omitted)). The CCIA also deleted the provision holding that a handgun license could be granted only where "no good cause exists for the denial." S.51001, at 2.

The City Council did not amend § 10-303 after *Bruen*. But in response to the CCIA, the NYPD promulgated updated rules, effective December 16, 2022, governing both handgun-premises-license and rifle/shotgun-permit applications. The new rules, codified in 38 R.C.N.Y. §§ 3-03 and § 5-10, clarify that—for both types of applications—the License Division will assess whether applicants have good moral character using the definition found in the CCIA: "the essential character, temperament and judgment necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others."[3] Thus, the only definition of "good moral character" applicable to rifle/shotgun permit applications tracks the CCIA's definition of that standard. Likewise tracking the CCIA, the updated rules also strike the provision that had previously allowed consideration of other "good cause" for denial.

---

[3] *See* New York Police Department, Notice of Adoption of Final Rule (Dec. 13, 2022), https://rules.cityofnewyork.us/wp-content/uploads/2022/10/Permanent-Rule-FINAL-12.13.22.pdf, at 3-4, 20-21 ("Notice of Adoption").

The amended rifle/shotgun rule includes a detailed list of objective criteria for assessing good moral character. These include whether the applicant has been "arrested, indicted, or convicted for a crime"; has a "disability or condition that may affect their ability to safely possess or use a rifle or shotgun"; made a "false statement on the license application, or failed to disclose a complete arrest history, including sealed arrests"; has a domestic-violence history; has a poor driving history; has demonstrated an inability to safely store firearms; failed to cooperate with the License Division's investigation; or has demonstrated "an unwillingness to abide by the law," or "a lack of candor towards lawful authorities" 38 R.C.N.Y. § 3-03.

### B. Srour's application for a rifle/shotgun permit and handgun premises license

In 2018, Srour applied to the NYPD License Division for a permit to possess a rifle or shotgun in his home, and in 2019, he applied for a permit to possess a handgun in his home (SDNY Dkt. 22-cv-3, ECF No. 27, at 1-2). He received Notices of Disapproval from the License Division's appeals unit November 2019 (ECF No. 27, at 2).

In the agency's denial of his administrative appeal, which Srour attached in redacted form in support of his summary-judgment motion, the agency explained that under 38 R.C.N.Y. §§ 5-10 and 3-03, his handgun license and rifle/shotgun permit applications were denied due to his arrest history, driving history, and lack of candor (ECF No. 27-4, at 1). He had failed to disclose that he was arrested in 1995 and again in 1996, including on a serious violent offense (ECF No. 27-4, at 1, No. 31, at 7), and had had his driver's license revoked six times and suspended 24 times (ECF No. 27-4, at 1-2).

In discussing his arrests, the agency observed that "[a]lthough these cases were dismissed … the License Division may consider the circumstances," and, "[w]hile these arrests are not recent, Mr. Srour's having been arrested twice, as well as the violent nature of the circumstances surrounding the [redacted] arrest are factors supporting denial of his applications" (ECF No. 27-4, at 1). The agency further explained that applicants must indicate whether they've ever been arrested, "even if the arrest was dismissed, sealed, voided, or nullified by operation of law" (*id*. at 2). "Mr. Srour failed to disclose either of his two arrests on his application" and "checked 'No' in response to the question

10

asking if he had ever been arrested []even if sealed" (*id.*) Srour also signed and notarized an affidavit stating that he "acknowledge[d] that [he] underst[oo]d the requirement to disclose all information relating to [his] arrest history," and the "omission of a previous arrest or any false statements made in relation to [his] application … is grounds for denial of a permit" (*id.*).

According to Srour, the criminal cases against him were dismissed and sealed, so he "put the events out of [his] mind" (*id.*). Those arrests were "revealed to the License Division upon the return of [Srour's] criminal history report from the New York State Division of Criminal Justice Services and/or the Federal Bureau of Investigation" (ECF No. 1, at 20-21).

The 2019 administrative appeal denial also cited Srour's driving history as evidence of his "inability to abide by laws and regulations" which constitutes a "lack of moral character" (*id.*). Srour's driving records showed that he had (a) 28 moving violations, (b) 24 license suspensions; and (c) six license revocations (*id.*). Srour had also received two recent summonses under the Navigational Law for disregarding rules while operating a jet ski "even after being informed of them" (*id.*).

**C. This lawsuit culminating in the district court's grant of declaratory and permanent injunctive relief**

Srour filed a complaint in the United States District Court for the Southern District of New York in January 2022 claiming that parts of the New York City Administrative Code, N.Y. City Admin. Code §§ 10-303(a)(2) & (9), 3-310, and the Police Department's Handgun and Rifle/Shotgun Rules, 38 R.C.N.Y. §§ 3-03(a), (e), (h) & (n), 5-10(a), (e), (h), & (n), violate the Second Amendment facially and as applied, and are pre-empted by New York State Penal Law. In March 2022, the district court stayed the case pending the Supreme Court's decision in *Bruen*. After the City answered and sought discovery, Srour withdrew his as-applied Second Amendment claims and preemption claims (SDNY Dkt. 22-cv-3, 11/2/2022 Minute Entry). Srour then moved for pre-discovery summary judgment on his facial Second Amendment claim challenging the Administrative Code and Police Department Rules.

In the decision at issue here, the district court granted partial summary judgment and held that the good-moral-character and other-good-cause provisions in the rifle/shotgun local law, contained in Administrative Code § 10-303(a)(2) and (9), violate the Second

12

Amendment because they afford too much discretion to the License Division (ECF No. 43 ("Decision")). The court decided that possessing a firearm without demonstrating good moral character is "covered by the plain text of the Second Amendment" (*id.* at 23) and that the amount of discretion permitted by these provisions was not supported by historical gun laws (*id.* at 25-39). Noting that Srour was pressing only a facial challenge, the court concluded that "every time a New York City official denied a rifle or shotgun permit [under the former scheme], the official acted pursuant to an unconstitutional exercise of discretion … mak[ing] those provisions facially invalid" (*id.* at 39).

On this basis, the district court granted Srour summary judgment on liability, concluding that Administrative Code § 10-303(a)(2) and (a)(9) were facially invalid because they had granted broad discretion in assessing an applicant's moral character.[4] The court then issued declaratory relief and a permanent injunction prohibiting enforcement of these provisions (*id.* at 44). Having previously bifurcated the issues of liability and damages, the court directed that damages, attorney's fees,

---

[4] The court also held that the pre-amendment versions of the NYPD regulations regarding rifle/shotgun and handgun licensing, 38 R.C.N.Y. §§ 3-03 and 5-10, were facially unconstitutional (Decision at 40).

13

and costs would be determined later (*id.* at 47). The City noticed this interlocutory appeal.[5]

Following the decision, the City asked the district court to stay its decision pending appeal. The court denied the request but issued a temporary stay of the injunction through midnight on October 30, 2023, and further ordered that, if the City moves for a stay in this Court by that deadline (as we do here), "the temporary stay will remain in effect until the Second Circuit decides the stay motion" (ECF No. 49).[6]

## REASONS TO GRANT A STAY PENDING APPEAL

### A. This Court has already determined that an identical provision should remain in effect pending appeal.

The Court should grant a stay pending appeal in this case because a panel of this Court has already determined that a stay was warranted under nearly identical circumstances. In December 2022, this Court stayed several district court injunctions of various sections of the CCIA

---

[5] This Court has jurisdiction over this appeal under 28 U.S.C. § 1292(a)(1). *See Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1175 (2d Cir. 1995) (finding appellate jurisdiction over interlocutory appeal where the district court granted a permanent injunction, but deferred a ruling on damages).

[6] Because the district court's stay will continue until this motion is decided, the City does not seek an administrative stay of the injunction pending the determination of this motion.

on Second Amendment grounds, including—in *Antonyuk*, Case No. 22-2908—the CCIA's good-moral-character requirement.

In *Antonyuk*, a district court enjoined the CCIA's good-moral-character requirement on the grounds that the State had not pointed to sufficiently similar historical analogues and that it was too "mushy and subjective" (N.D.N.Y. Dkt. No. 22-cv-986, ECF No. 78, at 92-102). The State appealed and asked this Court for an immediate stay of the injunction pending appeal (2d Cir. Case No. 22-2908, ECF No. 18). A panel of this Court granted a stay (*id.,* ECF Nos. 31; 75). In March 2023, this Court heard oral argument in *Antonyuk* and four other cases involving Second Amendment challenges to CCIA provisions (*id.*, ECF No. 375).[7]

The stay decision in *Antonyuk* points the way here: This Court has already concluded that a nearly identical licensing provision should remain in effect while its constitutionality is litigated. The Administrative Code provision at issue here, § 10-303, which pertains to rifle/shotgun permits, has always paralleled the State Penal Law's good-

---

[7] *See also Hardaway v. Nigrelli*, Case No. 22-2933; *Christian v. Nigrelli,* Case No. 22-2987; *Gazzola v. Hochul*, Case No. 22-3068; *Spencer v. Nigrelli*, Case No. 22-3237.

moral-character requirement for handgun licenses. As discussed further below, there is every reason to think that the good-moral-character requirement in the Administrative Code provision relating to rifle/shotgun permits will be construed and applied consistent with the Penal Law definition as amended by the CCIA. Indeed, the NYPD's post-*Bruen*, post-CCIA licensing regulations for rifle/shotgun permits, which implement § 10-303, expressly incorporate the CCIA's definition of good moral character. A stay is warranted for the same reasons that the stay was issued by a panel of this Court in *Antonyuk*—that is, because enjoining the provision would have administrative and public-safety implications and the government is likely to prevail on appeal.

## B. A stay pending appeal is warranted under all of the stay factors.

The City is entitled to a stay pending appeal under the standard stay factors: the City is likely to succeed on appeal; governmental and public interests weigh in favor of a stay; and Srour will suffer no injury from a stay. *See, e.g.*, *Hassoun v. Searls*, 968 F.3d 190, 195 (2d Cir. 2020).

16

### 1. The City is likely to prevail on the merits.

The City is likely to prevail on appeal because (1) Srour lacked standing to pursue prospective relief against the good-moral-character requirement of Administrative Code § 10-303(a)(2); (2) there is no basis to conclude that the requirement would be applied in the future to afford licensing officials impermissible discretion; and (3) the requirement passes constitutional muster. A stay of the permanent injunction and declaratory relief is thus warranted.

*First*, the district court erred in finding that Srour has standing to seek prospective relief against the good-moral-character requirement. "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017). Thus, it is irrelevant here whether Srour had standing to challenge his 2019 license denial (though he disclaimed any as-applied claim based on that denial). To have standing to obtain prospective relief against § 10-303, he had to "either have applied for and been denied a license or make a substantial showing that his … application would have been futile." *Libertarian Party v. Cuomo*, 970 F.3d 106, 116 (2d Cir. 2020) (cleaned up), *abrogated on other grounds*

17

*by Bruen*, 142 S. Ct. 2111 (2022). He did not, and could not, make this showing.

Srour was denied a license in 2019 under the old regulatory regime, and he had not reapplied when he sought prospective relief from the district court. Srour thus had no concrete interest at the time the district court ruled in whether § 10-303(a)(2) currently complies with the Second Amendment. Nor could Srour show that reapplying would have been futile. Since his 2019 application, *Bruen*, the CCIA, and new NYPD regulations significantly changed firearm licensing in the State. So, as discussed further below, a new application by Srour would be reviewed under a materially different standard. The changes in the regulatory landscape preclude Srour from making a "substantial showing" of futility. *Libertarian Party*, 970 F.3d at 116.

Indeed, the district court seemed to recognize as much—making its grant of prospective relief all the more puzzling. The court correctly understood that Srour lacked standing to challenge the current versions of the NYPD's regulations—including 38 R.C.N.Y. § 3-03, the rifle/shotgun regulation that implements § 10-303(a)(2)—because he had "alleged no injury in fact arising from the current version" of the

18

regulations (Decision at 21). The court observed that Srour "has not been denied permission to possess firearms pursuant to a City official's application of the current version of either Section 3-03 or Section 5-10," cannot "bring a preemptive challenge against the amended provisions prior to being denied a license or permit under them," and has not "reapplied for such a license or permit" (*id.*). Yet the court nonetheless found that Srour had standing to be awarded declaratory relief and a permanent injunction against enforcement of the local law that 38 R.C.N.Y. § 3-03 both implements and construes. The result verges on paradoxical.

*Second*, for similar reasons, the district court erred on the merits by granting prospective relief. The court stated that it could not "discern from the record any reason to believe that Defendants will not continue to enforce those unconstitutional provisions [of the Administrative Code providing for consideration of moral character and other good cause] going forward in the absence of equitable relief" (Decision at 44). But the NYPD's regulations provided ample reason to believe just that. The district court improperly construed the facts against the City, where there was no basis to assume that the local law's good-moral-character

19

requirement would be given an unconstitutional construction that was divorced from the rest of the statutory and regulatory scheme.

The court, indeed, ignored several binding principles of New York law, which applies when construing the Administrative Code. *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 497 (2d Cir. 2020) (when construing state statutes, federal courts must apply state law in line with how the state's highest court would resolve uncertainties). Under New York law, ambiguities in statutes should be resolved in a way that avoids placing their constitutionality in doubt, *People v. Viviani*, 36 N.Y.3d 564, 579 (2021), and that harmonizes related provisions within a broader legislative scheme to render them compatible, *James B. Nutter & Co. v. Cnty. of Saratoga*, 39 N.Y.3d 350, 355 (2023). What's more, an implementing agency's rational construction of statutory language is typically "entitled to deference." *Raritan Dev. Corp. v. Silva*, 91 N.Y.2d 98, 102-103 (1997).

It was thus error for the district court to ignore the NYPD's interpretation of "good moral character" as used in the Administrative Code, which is rational, avoids potential constitutional problems, and harmonizes the local law with the state statute that the law was drafted

20

to track. This rule change provides clear evidence of how the License Division intends to apply § 10-303 going forward. Yet the district court leapt to the conclusion that the purportedly open-ended pre-*Bruen* standard for good-moral-character would apply in the future. Even if that were a fair description of the regulatory regime before *Bruen* (and it is not), application of the Administrative Code's good-moral-character provision is now channeled by *Bruen*, the CCIA, and the NYPD's rules.

The district court put great stock in the fact that the City Council did not amend § 10-303 after *Bruen*. But there was no pressing need for the City Council to act because the NYPD had clarified that it would apply the statute in line with *Bruen* and the clarified state statute that was the local law's inspiration from the start. 38 R.C.N.Y. §§ 3-03 and 5-10; *see also* Notice of Adoption at 4. It was particularly unwarranted to read § 10-303's good-moral-character requirement without reference to the implementing regulation because the Administrative Code provision does not define that term. Instead, the NYPD has supplied a definition through rulemaking. Any possible future injury that might flow from the police department's consideration of insufficiently objective criteria

would not be traceable to the Administrative Code, which does not purport to fully define how the agency will conduct licensing.

*Third*, although the Court need not reach the issue to conclude that the prospective relief was an abuse of discretion, the City is likely to succeed on the merits because the good-moral-character requirement of Administrative Code § 10-303(a)(2)—as currently construed—is constitutional. It fully comports with *Bruen*, as it is "designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens,'" 142 S. Ct. at 2138 n.9 (quoting *Dist. of Columbia v. Heller*, 554 U.S. 570, 635 (2008)).

Indeed, *Bruen* essentially blessed that exact requirement when discussing Connecticut's licensing scheme. *Bruen*, 142 S. Ct. at 2123 n.1. The Court explained that Connecticut "operates like [a] shall issue jurisdiction," because, although "officials have discretion to deny a concealed-carry permit to anyone who is not a 'suitable person,'" that standard "precludes permits only to those individuals whose conduct has shown them to be lacking the essential character of [*sic*] temperament necessary to be entrusted with a weapon." *Id.* (internal citation and

quotation marks omitted). New York State's good-moral-character requirement tracks this language.

More broadly, *Bruen* teaches that threshold objective licensing criteria that are part of shall-issue regimes serve a permissible gatekeeping function consistent with the original public understanding of the Second Amendment. *Id.* Threshold licensing criteria designed to ensure that only law-abiding, responsible individuals have firearms can be challenged only if they are "put toward abusive ends …. for example, [if] lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry." *Id.*

Moreover, even if the good-moral-character requirement were subject to historical scrutiny, the district court misapplied *Bruen* by demanding that the City supply a "historical twin," instead of engaging in flexible, analogical reasoning. *Id.* at 2133. At the Founding, states routinely disarmed individuals who were not considered loyal and responsible, such as individuals who had supported Britain during the Revolutionary War.[8] By Reconstruction, there was a tradition of

---

[8] *See, e.g.*, 1776-77 edition of the Laws Enacted in the First Sitting of the First General Assembly of the Commonwealth of Pennsylvania, including "An ACT,

*(cont'd on next page)*

protecting the right of "all loyal and well-disposed inhabitants to bear arms," while excluding dangerous and incompetent people from bearing arms. *See Bruen*, 142 S. Ct. at 2152 (quoting Cong. Globe, 39th Cong., 1st Sess., at 908-09, which disarmed any "disorderly person, vagrant, or disturber of the peace"); *see also Heller*, 554 U.S. at 626-27 (noting that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill….").

The City canvassed this body of historical evidence more extensively below and will do so again in this appeal. For present purposes, the key point is that a through-line runs from longstanding historical laws prohibiting dangerous, irresponsible, and non-law-abiding individuals from possessing or carrying firearms up to the Administrative Code's good-moral-character requirement. The district court's conclusion that the requirement is not consistent with the original public understanding of the Second Amendment was improvident and wrong.

---

obliging the male white inhabitants of this state to give assurances of allegiance to the same..."

24

## 2. The equities overwhelmingly favor a stay, and Srour will suffer no harm if a stay is issued.

The equities also strongly favor a stay. The City and public interest would be injured if the injunctive and declaratory relief are not stayed, while Srour would not suffer any injury if a stay is imposed.

Equitable relief barring enforcement of a duly enacted local law runs contrary to the public interests that the legislature intended to protect. The good-moral-character requirement has been a facet of firearms licensing in the State since 1913. See 1913 N.Y. Laws ch. 608, § 1. It ensures that applicants are responsible and law-abiding, so can be entrusted with deadly weapons in New York City. The district court's injunctive and declaratory relief would frustrate the important public-safety interests served by this longstanding law.

And, as a practical matter, denying a stay would leave the License Division in the lurch. The agency will be confronted with the problem of how to process rifle/shotgun permit applications where applicants have engaged in criminal or other actions that suggest that they lack the essential character, temperament, and judgment to safety possess a rifle or shotgun. The district court's order will needlessly delay, complicate, and confuse the processing of applications.

25

Moreover, the order does not purport to restrain enforcement only as to Srour. Nor did the district court confront any of the difficulties associated with issuing injunctive relief that reaches beyond the parties to the controversy. *See United States v. Texas*, 143 S. Ct. 1964, 1980 (2023) (Gorsuch, J., concurring in the judgment) (discussing the proper scope of injunctive relief with respect to parties and nonparties). These questions surrounding the injunction's scope only heighten the confusion and disruption it would spawn if no stayed.

The substantial confusion engendered by the district court's injunction of the good-moral-character requirement in rifle/shotgun permitting in the City is compounded by the fact that the CCIA's identical good-moral-character requirement for handgun licenses will remain in effect statewide pending appeal in *Antonyuk*. It would be odd and undesirable to force divergent approaches to the good-moral-character requirements in the parallel handgun-license and rifle/shotgun-permit schemes here. That is especially so, given that this Court is poised to decide *Antonyuk* and address Srour's underlying theory concerning the lawfulness of a good-moral-character licensing

requirement. For all the reasons that a panel of this Court issued a stay pending appeal in *Antonyuk*, the equities favor a stay here as well.

On the other hand, Srour would not be prejudiced by a stay. In evaluating any new application from Srour, the License Division would apply its post-*Bruen* regulations, which appropriately account for the Supreme Court's holding and the CCIA, and correctly channel the agency's discretion. If Srour were to believe himself aggrieved by any new determination, he could seek judicial review. But he has no valid interest in hamstringing the NYPD's licensing determinations based on an outmoded understanding of the Administrative Code.

## CONCLUSION

This Court should stay the district court's permanent injunction of and declaratory relief as to New York City Administrative Code § 10-303(a)(2) until this Court finally determines the City's appeal.

Dated: New York, NY
October 30, 2023

Respectfully submitted,

HON SYLVIA O. HINDS-RADIX
*Corporation Counsel*
*of the City of New York*
Attorney for Appellee

By: ELINA DRUKER
Assistant Corporation Counsel

100 Church Street
New York, NY 10007
212-356-2609
edruker@law.nyc.gov

RICHARD DEARING
CLAUDE S. PLATTON
ELINA DRUKER
   *of Counsel*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared using Microsoft Word 2010, and according to that software, it contains 5,179 words, not including the table of contents, table of authorities, this certificate, and the cover.

_____
ELINA DRUKER