# 23-7549

## United States Court of Appeals
## for the Second Circuit

JOSEPH SROUR,

*Plaintiff-Appellee,*

*against*

KEECHANT SEWELL, in her Official Capacity as NYPD
Police Commissioner,

*Defendant-Defendant,*

*and*

NEW YORK CITY, NEW YORK, and EDWARD A. CABAN,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Southern District of New York

**MEMORANDUM OF LAW IN OPPOSITION
TO NEW YORK CITY'S MOTION FOR
A STAY PENDING APPEAL**

THE BELLANTONI LAW FIRM, PLLC
Attorney for Plaintiff-Appellee
2 Overhill Road, Suite 400
Scarsdale, New York 10583
abell@bellantoni-law.com

November 9, 2023

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ...................................................................... i

PRELIMINARY STATEMENT ............................................................. 1

LEGAL STANDARD .......................................................................... 4

ARGUMENT ...................................................................................... 5

I.  THE DISTRICT COURT CONSIDERED THE CITY'S POSITION AND DENIED ITS REQUEST FOR A STAY ................................................. 5

II.  SROUR HAS ARTICLE III STANDING ......................................... 6

III.  THE CITY HAS NO LIKELIHOOD OF SUCCESS ON THE MERITS ........ 8

    A.  'Discretion' Is Inconsistent With The Plain Text – And Rejected By *Heller*, *McDonald*, and *Bruen* ............................................... 9

    B. The District Court Properly Rejected The City's 'Exclusion Theory'. 10

    C.  The City's Examples Were Not Analogous ......................................... 12

IV.  A STAY WILL SUBSTANTIALLY INJURE SROUR; THE CITY WILL SUFFER NO HARM IF DENIED ............................................ 13

    A. No Showing of 'Substantial Harm' to the City ................................. 13

    B.  Severability Was Efficiently and Properly Addressed Below ............ 14

    C. Srour Will Suffer Continued Substantial Harm ................................. 14

V.  THE PUBLIC INTEREST CRIES OUT FOR THE DISTRICT COURT'S DECLARATORY AND INJUNCTIVE RELIEF ................................. 15

VI. NYC ADMIN. CODE 10-303(a)(2) IS NOT IDENTICAL TO THE CCIA ................................................................................... 16

    A. The Code Was Left Untouched By The CCIA Amendments.......... 16

    B. Subsection (a)(2) Contains Different Language Than State Law ... 17

    C. 10-303(a)(2) and (a)(9) Act Independent of 38 RCNY 3-03 .......... 18

    D. NYC Admin. Code and 10-303 and 38 RCNY 3-03 Do Not Reference Each Other .......................................................................... 19

VII. THE CITY CANNOT ALTER THE TRIAL COURT RECORD ................... 20

CONCLUSION ....................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amadei v. Nielsen*,
348 F. Supp. 3d 145 (E.D.N.Y. 2018) .................................................................. 6

*D.C. v. Heller*,
554 U.S. 570 (2008) ....................................................................... 8, 11, 16

*Deshawn E. ex rel. Charlotte E. v. Safir*,
156 F.3d 340 (2d Cir. 1998) ................................................................ 6

*Dollinger v. New York State Ins. Fund*,
726 F. App'x 828 (2d Cir. 2018) ....................................................... 21

*Elrod v. Burns*,
427 U.S. 347 (1976) ....................................................................... 4, 15

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,
46 F.4th 1075 (9th Cir. 2022) ......................................................... 4, 15

*Hilton v. Braunskill*,
481 U.S. 770 (1987) ......................................................................... 5

*In re World Trade Ctr. Disaster Site Litig.*,
503 F.3d 167 (2d Cir.2007) .............................................................. 5

*Int'l Bus. Machs. Corp. v. Edelstein*,
526 F.2d 37 (2d Cir. 1975) ............................................................. 22

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ......................................................................... 6

*Miller v. Bonta*,
646 F. Supp. 3d 1218 (S.D. Cal. 2022) ........................................... 4, 15

*New York State Rifle & Pistol Ass'n v. Bruen*,
142 S.Ct. 2111 (2022) ................................................................... 1, 8

i

*O'Shea v. Littleton*,
  414 U.S. 488 (1974) ............................................................... 6

*Range v. Att'y Gen.*,
  69 F.4th 96 (3d Cir. 2023) ...................................................11

*Schwartz v. Dolan*,
  159 F.R.D. 380 (N.D.N.Y.1995) .............................................. 5

*Srour v. New York City, New York*,
  2023 WL 7005172 (S.D.N.Y. Oct. 24, 2023) ................................ Passim

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ............................................................... 6

*U.S. S.E.C. v. Citigroup Glob. Markets Inc.*,
  673 F.3d 158 (2d Cir. 2012) .................................................... 5

*United States v. E. Air Lines, Inc.*,
  923 F.2d 241 (2d Cir.1991) .................................................... 5

**Statutes**

N.Y. Penal Law § 400.00(1)(b) ................................................. 18, 20

**Regulations**

38 RCNY 3-03 ...................................................................... Passim
38 RCNY 5-10 ...................................................................... 3
New York City Administrative Code 10-303 ................................... Passim

**Other Authorities**

4 C.J.S. Appeal and Error § 684 .............................................. 22

ii

## PRELIMINARY STATEMENT

In a contemplative, scholarly, and measured opinion, the district court properly applied the text, history, and tradition test required by *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S.Ct. 2111 (2022) when declaring that two subsections of New York City Administrative Code 10-303[1] violate the Second and Fourteenth Amendments. The district court went on to properly order the permanent injunction of the two subsections, NYC Code 10-303(a)(2) and (a)(9), and the City moves for a stay from this Court pending appeal only as to 10-303(a)(2).[2]

New York City (the "City") is far from establishing entitlement to a stay of the district court's declaratory and injunctive relief, and its motion should be denied.

NYC Admin. Code 10-303(a)(2) vests broad discretion in a city official to deny a *rifle/shotgun* permit if the official reaches a subjective conclusion that an applicant lacks "good moral character."

The City's motion for a stay pending appeal should be denied for several reasons. ***First,*** the City has ***no*** likelihood of success on the merits of its appeal. The subsections imbue unfettered discretion in an administrative agency to decide who

---

[1] NYC Admin. Code 10-303 only applies to a license to possess rifles and shotguns; it does not apply to handgun licenses.

[2] The City notes that it does not challenge the stay of 10-303(a)(9) "good cause." But because the regulation has not been repealed, Srour requests that the district court injunction of NYS Admin. Code 10-303(a)(9) not be stayed *sua sponte* by this Court. https://codelibrary.amlegal.com/codes/newyorkcity/latest/NYCadmin/0-0-0-208353 Srour mentions (a)(9) herein, in any event, to demonstrate that the regulations collectively cast a wide net to subjectively and arbitrarily prohibit conduct protected by the plain text of the Second Amendment.

1

can, and cannot, exercise a *preexisting* right. Foreclosed by Supreme Court jurisprudence, which flatly rejects the exercise of discretion when regulating firearm rights, subsections (a)(2) and (a)(9) are repugnant to the plain text of the Second Amendment.[3] And the City failed to meet its burden under *Bruen* of identifying an historical analogue to justify the regulations' existence.

**Second,** contrary to the City's claims, subsection (a)(2) ***is not*** identical to the "good moral character" amendment to NYS Penal Law § 400.00(1)(b) enacted under the 2022 Concealed Carry Improvement Act (CCIA).[4] Not only is the CCIA limited to regulation of handguns[5], the City and State regulations contain materially different language. While the City attempts to press this Court into granting what is tantamount to an automatic stay, the "good moral character" requirement under 10-

---

[3] Below, the City also failed to cite *any* Founding Era regulation requiring colonists to seek and obtain permission from a government official before being able to lawfully possess rifles and shotguns. Licensing did not materialize until the late 1800s and early 1900s and, even then, licensing was only required for handguns – not long guns. See, *Baird v. Bonta*, 19 Civ. 617 (KJM) (C.A.E.D.) (Declaration of Robert Spitzer, Dkt. 90-6, p. 5) ("Further, a variety of weapons licensing laws were enacted in the nineteenth and early twentieth centuries that allowed for conditional carrying [of handguns], subject to a valid license issued by the government.").

[4] New York State agrees. See, November 2, 2023 FRAP letter by New York State Attorney General's Office.

[5] The exception is the recently added inclusion of semiautomatic rifles under the handgun licensing statute, Penal Law 400.00, *et seq.* in 2022. Simply, if Srour lived in any county outside of New York City he would be able to walk into a gun store, have a NICS background check performed, and bring home a shotgun and/or rifle that day for home defense and any other lawful purpose.

303(a)(2) ***does not*** track the "moral character" requirement *sub judice* in *Antonyuk v. Hochul*, 22-2908, 22-2978.[6]

**Third,** the City grossly overstates the reach of the district court's injunctive relief: there is no injunction against the City's entire licensing regime. Only a small portion of one section of the NYC Administrative Code, which only regulates *rifles and shotguns*, is affected. A plethora of objective factors remain at the City's disposal under NYC Admin. Code 10-303 and 38 RCNY 3-03 to regulate rifles and shotguns.

The district court properly considered the severability of 10-303(a)(2) and (a)(9) and rightly determined that their excision will have no effect on the City's ability to continue enforcing the remaining regulations.

**Fourth,** Srour had standing to seek prospective relief: applying for a license during the pendency of the litigation was futile, as evidenced by the License Division's 2019 denial and the City's October 25, 2023 announcement in its application to the district court for a stay pending appeal: "the License Division believes that Plaintiff is both 'dangerous' and not law-abiding." [ECF Doc. 45 n.3].

Srour is being substantially and irreparably injured now and he has been suffering actual constitutional harm since the denial of his firearms licenses in 2019.

---

[6] 38 RCNY 3-03 and 38 RCNY 5-10, which enumerate the grounds for denying an application for a rifle/shotgun license and handgun license, respectively, were amended in December 2022 -- ***but*** they ***are not*** identical to the language of amended Penal Law 400.00(1)(b) ***and*** they ***are not*** at issue in this appeal: the district court did not grant any injunctive relief against the enforcement of those two regulations.

The City has foreclosed Srour's ability to possess firearms for self-defense – entirely. Srour, and hundreds of thousands of other non-prohibited New Yorkers who have been wrongfully divested of their Natural Right to self-defense by the City's enforcement of NYC Admin. Code 10-303(a)(2) and (a)(9), will continue to suffer substantial and irreparable harm if a stay of the district court's relief is issued. The loss of constitutional freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. See, e.g., *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (First Amendment).

**Fifth**, it is always in the public interest to enjoin unconstitutional laws. *Miller v. Bonta*, 646 F. Supp. 3d 1218, 1231 (S.D. Cal. 2022) citing *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 46 F.4th 1075, 1098 (9th Cir. 2022) (granting permanent negative injunction). Only a tyrannical government would claim 'harm' from the injunction of an unconstitutional law.

The City's motion should be denied in its entirety.

## LEGAL STANDARD

In determining whether to issue a stay, the court considers the following factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *U.S. S.E.C. v.*

*Citigroup Glob. Markets Inc.*, 673 F.3d 158, 162–63 (2d Cir. 2012) (internal quotation marks omitted) quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); accord *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir.2007); *United States v. E. Air Lines, Inc.*, 923 F.2d 241, 243–44 (2d Cir.1991).

## ARGUMENT

## I. THE DISTRICT COURT CONSIDERED THE CITY'S POSITION AND DENIED ITS REQUEST FOR A STAY

The mere repetition of arguments previously considered and rejected cannot be characterized as a "strong showing" of success on the merits. *Schwartz v. Dolan*, 159 F.R.D. 380, 383 (N.D.N.Y.1995), vacated in part, 86 F.3d 315, 318 (2d Cir.1996) (noting it denied a stay pending appeal).

The district court has twice considered – and rejected -- the City's arguments: at the summary judgment stage and again in its motion for a stay pending appeal. The City now comes before this Court to, for a third time, press the same unsound legal arguments rejected by the district court (as well as some arguments not raised below).

There is no likelihood that the City will prevail on the merits of its appeal. Under the scrutiny of text, history, and American traditions, the City will continue to strike out.

5

## II.  SROUR HAS ARTICLE III STANDING

A plaintiff seeking prospective relief in the form of a declaration and injunction cannot rely on past injury to satisfy the injury requirement but must instead show a likelihood that he will be injured in the future. *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 158 (E.D.N.Y. 2018) quoting *Deshawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998). This future injury, or "imminent" danger, requirement is an "elastic concept." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 n.2 (1992).

Srour faces a concrete and substantial likelihood of future harm [see, e.g., *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)]. As discussed immediately below, the denial of Srour's pending handgun and rifle/shotgun licenses is certain.

And while a past injury alone is insufficient to establish standing to seek prospective relief, a court may consider a past injury as "evidence bearing on whether there is a real and immediate threat of repeated injury." *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974).

Reapplying to the License Division during the pendency of the federal litigation would have been futile for Srour. In 2019, the License Division made a final determination, albeit an incorrect one, that Srour is a 'dangerous' and 'not law

abiding' person who is unfit to possess firearms of any type – handguns, rifles, and shotguns. Relying on 10-303(a)(2) and (a)(9), the City denied Srour's applications.

The City based its decision on Srour's false arrests from 26 years ago, which were dismissed and sealed by the state court, his driving history from 23 years ago, and his (initial) non-disclosure of the dismissed and sealed arrests.[7]

The events upon which the City denied Srour's prior applications still exist – Srour cannot change his past. The City relied on subsections (a)(2) and (a)(9) to deny Srour's applications and the text of those subsections has not changed: the License Division still has broad discretion to deny a license to anyone they feel does not possess "good moral character" [10-303 (a)(2)] and/or "for any good cause" [10-303(a)(9)]. Srour's pending applications, filed within days of the district court decision, will likewise also be denied.[8]

The City fails to identify any change in circumstances that would lead to a different outcome. On the contrary, in its October 25, 2023 letter motion to the district court for a stay pending appeal, the City announced that the License Division *still* believes Mr. Srour to be "dangerous and not law abiding." [ECF Doc. 45 n. 3].

If enforcement of the district court's order is stayed, Srour's applications will *again* be denied because of the City's wide discretion to render subjective "morality

---

[7] During the investigation by the License Division, Srour did disclose the sealed arrests and provided a written explanation of the events giving rise thereto.
[8] See, *Srour v. New York City ("Srour II")*, 23 Civ. 09489 (JPC) (S.D.N.Y.) at Dkt. 1, 14.

judgments," contrary to Supreme Court precedent. *Bruen*, at 2138 n. 9 (rejecting licensing schemes that require the "appraisal of facts, the exercise of judgment, and the formation of an opinion…features that typify proper-cause standards like New York's."

## III. THE CITY HAS NO LIKELIHOOD OF SUCCESS ON THE MERITS

The Supreme Court's warning to New York in *Bruen* about its discretionary licensing scheme, the City's failure to identify any historical analogue, and the finding reached by the district court after a thorough text, history, and tradition analysis, foreclose the City's chances of prevailing in this appeal.

The Second Amendment was created to prevent government officials from infringing – encroaching to any extent – on the right to possess and carry arms; it "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *D.C. v. Heller,* 554 U.S. 570, 592 (2008), and 634 ("The very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon.").

The district court properly applied the test announced in *Bruen.* Beginning with the plain text, the district court acknowledged that the Second Amendment codified a *pre-existing*, individual right to keep and bear arms, and that the *central component* of that right is individual self-defense. *Srour v. New York City, New York*,

8

No. 22 CIV. 3 (JPC), 2023 WL 7005172, at *5 (S.D.N.Y. Oct. 24, 2023). The court correctly identified the test for Second Amendment challenges announced in *Bruen* [*Id.*] and noted the City's failure to understand that *the government* shoulders the weight of justifying the challenged regulations, not Srour. [*Id.* n. 6]. After identifying the regulations at issue [*Id.*, *13-18], the court reiterated the *Bruen* test and then applied it[9] properly finding that Srour's conduct – possessing firearms for a lawful purpose – falls within the scope of the plain text.

### A. 'Discretion' Is Inconsistent With The Plain Text – And Rejected By *Heller, McDonald,* and *Bruen*

The court correctly rejected the City's proffered historical analogues for a regulation that empowers government officials with unfettered discretion over who can, and cannot, exercise the right to possess and carry arms for self-defense. [*Id.*, *13-19].

Much like the "proper-cause" inquiry invalidated in *Bruen*, subsections (a)(2) and (a)(9) have the effect of "preventing law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." [*Srour.* at *14]. The regulations "bestowed vast discretion in licensing officials" – power inconsistent with the plain text, history, and tradition, and rejected by the Supreme Court.

---

[9] The court also properly conducted an analysis of Srour's Article III standing. [*Id.* at *10-11].

> Subsections (a)(2) and (a)(9) of New York City Administrative Code Section 10-303 suffer from the very same constitutional flaws under *Bruen*.
>
> These provisions allow a City official to deny a shotgun or rifle permit after finding that an applicant "is not of good moral character" or that "good cause exists for the denial of the permit." N.Y.C. Admin. Code § 10-303(a)(2), (a)(9).
>
> Section 10-303 itself defines neither of these terms in further detail, with the factors enumerated in Section 3-03 of Title 38 of the RCNY implementing Section 10-303.
>
> Without doubt, the very notions of "good moral character" and "good cause" are inherently exceedingly broad and discretionary. Someone may be deemed to have good moral character by one person, yet a very morally flawed character by another.
>
> Such unfettered discretion is hard, if not impossible, to reconcile with *Bruen*.

*Srour,* at *14; *16 n. 17 ("Presumably, there were plenty of people at the time of our country's Founding who were considered to lack good moral character, but were not necessarily dangerous, yet Defendants have identified no law depriving such individuals of their right to possess firearms").

## B. The District Court Properly Rejected The City's 'Exclusion Theory'

The district court properly rejected the idea that Srour is (somehow) not entitled to Second Amendment protections in the first instance because *the License Division* 'feels' he is not 'responsible and law abiding.' [*Id.*, at *11-13].[10] The City's use of the phrase "law-abiding" is absent from both an historical analysis and the

---

[10] "Defendants impermissibly merge a person's conduct with their status as defined by the regulation. *Bruen*, however, draws a clear distinction between the individual's conduct and the regulation which burdens that conduct." *Sour,* at *12, citing *Bruen*, at 2126.

10

plain language of the Amendment.

> "The People" refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community.

*Heller*, 554 U.S. at 580-81 (citations omitted).

Adopting the City's view, "the government would be able to skirt a court's analysis of the history and tradition of firearm regulation, as required by *Bruen*, merely by roping the actual regulation into the individual's conduct." *Srour*, at *12 citing *Range v. Att'y Gen.*, 69 F.4th 96, 102-103 (3d Cir. 2023) (en banc) (rejecting "the Government's claim that only 'law abiding, responsible citizens' are protected by the Second Amendment," and explaining that such "extreme deference" would "give[ ] legislatures unreviewable power to manipulate the Second Amendment by choosing a label" and "to decide whom to exclude from 'the people'" (internal quotation marks and citations omitted)).

> The conduct at issue is the possession of a firearm. The question is whether such conduct in possessing firearms may be constitutionally regulated.
>
> Whether an applicant "lacks good moral character" is not part of the *conduct* being regulated.
>
> The requirement that an applicant submit to a determination of moral character instead is the regulation itself. In arguing otherwise, Defendants impermissibly merge a person's conduct with their status as defined by the regulation.

*Srour*, at *12 (emphasis supplied).

### C. The City's Examples Were Not Analogous

The City's proffered analogues were inapposite and otherwise failed to demonstrate any historical tradition of vesting officials with broad discretion to restrict Second Amendment rights based on a subjective determination of "good moral character" or for a "vague and undefined notion of good cause." [*Id.* at *15].

The City's 'public safety' justifications were appropriately rejected below, as in *Heller, McDonald,* and *Bruen. Srour,* at *16 ("a law preventing a person who is 'dangerous or potentially dangerous' from possessing a firearm is hardly analogous to denying someone their Second Amendment's rights based on a City official's discretionary determination that that person 'lacks good moral character' or that 'good cause' exists...The latter is far broader and sweeps in significantly more conduct. More importantly, this Court finds no evidence in the historical materials that Defendants identify of a tradition of regulations of the sort challenged here.").

Criminal laws prohibiting affray, terrorizing, and other violent behavior are not analogies to a regulation that gives a government official discretion to deny individual self-defense rights. *Srour*, at *16-19 (discussing affray, menacing, surety statutes); *Bruen*, at 2120, 2138-2150.

> And nothing in [the suggested statutes] provides a burden on the right to bear arms comparable to a holistic and discretionary assessment of an individual's character or other unspecified good cause *prior* to that individual's ability to exercise their right to possess a firearm. The fact that justices of the peace in those states were empowered to

take firearms instead indicates that but for the specified activity—
e.g., fighting, rioting, or disturbing or breaking the peace—the right
to possess those arms was presumed.

*Srour*, at *18 (emphasis supplied).

Placing discretionary authority to decide who may and may not keep and bear arms in the hands of a government official defeats the purpose of the amendment itself. And "to the extent later history contradicts what the text says, the text controls." *Bruen*, at 2137.

## IV. A STAY WILL SUBSTANTIALLY INJURE SROUR; THE CITY WILL SUFFER NO HARM IF DENIED

### A. No Showing of 'Substantial Harm' to the City

The City makes no claim that it will be "substantially injured" without a stay and, in any event, no government has any valid interest in the enforcement of unconstitutional regulations against its citizens.

At most, the City claims the License Division will be "left in the lurch" and that the "good moral character" requirement has been a "facet" of licensing since 1913. [City Br. at 25].

Well, the "proper cause" requirement has also been a "facet" of licensing for, but neither New York State nor the City fell apart once it was stricken by the Supreme Court in *Bruen*. There was no 'confusion' nor will there be here. And, as

detailed herein, there is ***no parallel*** rifle/shotgun-permit scheme with the State.[11]

## B. Severability Was Efficiently and Properly Addressed Below

Enjoining 10-303(a)(2) and (9) will not impede the City's licensing regime. The district court engaged in a through severability analysis to identify what, if any, detrimental effect would occur from striking subsections (a)(2) and (a)(9) from 10-303. The conclusion: the Court had "little trouble concluding that the subsections (a)(2) and (a)(9) are severable from the rest of Section 10-303." *Srour v. New York City, New York*, No. 22 CIV. 3 (JPC), 2023 WL 7005172, at *21 (S.D.N.Y. Oct. 24, 2023).

Among other safeguards, § 10-303(a) articulates multiple alternative grounds for an official to deny a shotgun or rifle permit, with individual subsections identifying reasons entirely unrelated to an applicant's character or general good cause, including the applicant's age and criminal history, to name two examples" and "City officials can simply continue to process permit applications by considering the seven other subsections." *Srour*, at *21.

## C. Srour Will Suffer Continued Substantial Harm

Srour is being substantially and irreparably injured now and he has been suffering such constitutional harms since the denial of his firearms licenses in 2019.

---

[11] NYC Admin. Code 10-303 does not regulate handguns, and the text of the "moral character" regulations in NYC Admin. Code 10-303(a)(2), 38 RCNY 3-03, and Penal Law 400.00(1)(b) are not the same.

The loss of constitutional freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. See, e.g., *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (First Amendment).

The City has ***absolutely foreclosed*** Srour's ability to possess ***any type of*** firearm for self-defense. Srour, and hundreds of thousands of other non-prohibited New Yorkers who have been wrongfully divested of their Natural Right to self-defense by the City's enforcement of NYC Admin. Code 10-303(a)(2) and (a)(9), will continue to suffer substantial and irreparable harm if a stay of the district court's declaratory and injunctive relief is issued.

## V. THE PUBLIC INTEREST CRIES OUT FOR THE DISTRICT COURT'S DECLARATORY AND INJUNCTIVE RELIEF

It is always in the public interest to enjoin unconstitutional laws. *Miller v. Bonta*, 646 F. Supp. 3d 1218, 1231 (S.D. Cal. 2022) citing *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 46 F.4th 1075, 1098 (9th Cir. 2022) (granting permanent negative injunction). Only a tyrannical government would claim 'harm' from the injunction of an unconstitutional law.

Everywhere else in the state, citizens can freely purchase and possess shotguns and rifles for self-defense and other lawful purposes without first seeking permission from the government.

15

Srour is a law-abiding individual with **_no disqualifiers_** to firearms possession under state or federal law– he has **_never been convicted of a crime or any violation_** of the New York State Penal Law.

The City's continued arbitrary and unconstitutional barriers to Srour's exercise of his preexisting Natural Right to self-defense cannot, most respectfully, be sanctioned by this Court.[12]

## VI.  NYC ADMIN. CODE 10-303(a)(2) IS <u>NOT</u> IDENTICAL TO THE CCIA

The City falsely claims in a headnote:  "This Court has already determined that _an identical provision_ should remain in effect pending appeal." [City Br. at 14 (emphasis added)]. No, it has not.

### A.  The Code Was Left Untouched By The CCIA Amendments

The City leans heavily on its discussion of the amended licensing regulations – yet concedes that the regulation at issue -- NYC Admin. Code 10-303 -- **_was not amended_** after _Bruen_. [City Br. at 8 ("The City Council did not amend § 10-303 after

---

[12] The City also claims that its licensing regime "ensures that applicants are responsible and law-abiding" and "can be trusted with deadly weapons" – but provides no evidence of its truth. In other words, violent criminals, felons, and other prohibited people do not apply for a gun license – they carry guns illegally and victimize the citizenry that the City forces to  be disarmed. The only people who apply for a gun license are those seeking to comply with the law -- law-abiding people, like Srour. The City's regulations harm these law-abiding people because they impose an artificial and arbitrary barrier to the natural right to self-defense, which _preexisted any form of government_. "The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it 'shall not be infringed…this is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence." _Heller_, at 592 (cleaned up) (citation omitted).

*Bruen*")].

Untouched by the 2022 amendments, 10-303(a)(2) and (a)(9) remain intact and are still enforced against those seeking a rifle/shotgun license, like Srour.

Srour remains subject to the enforcement of 10-303(a)(2) and (a)(9) and, as discussed above, Srour's pending rifle/shotgun license application will also be denied if the Court grants the City's motion for a stay.

**B. Subsection (a)(2) Contains Different Language Than State Law**

Subsection (a)(2) stands -- and falls -- on its own.

The "good moral character" language of 10-303(a)(2) ***does not*** track the "moral character" requirement *sub judice* in *Antonyuk v. Hochul*, 22-2908, 22-2978 enacted under the CCIA.[13]

New York State agrees.[14]

The City's regulation:

> "10-303(a) Requirements. No person shall be denied a permit to purchase and possess a rifle or shotgun unless the applicant: … (2) is not of good moral character;"

NYS regulation:

> "…No license shall be issued or renewed except for an applicant… (b) of good moral character, which, for the purposes of this article,

---

[13] See, City Br. at 2 incorrectly claiming " 'good moral character' as used in § 10-303(a)(2), tracks the definition in the state's post-Bruen handgun-licensing statute."

[14] See, November 2, 2023 FRAP letter by New York State Attorney General's Office in *Antonyuk v. Hochul*, 22-2980 (2d Cir.) at Dkt. 402.

shall mean having the essential character, temperament and judgement necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others;"

N.Y. Penal Law § 400.00(1)(b).

The City and State regulations contain materially different language and, therefore, require separate analysis.[15]

## C. 10-303(a)(2) and (a)(9) Act Independent of 38 RCNY 3-03

The district court committed no error in its determination that 10-303(a)(2) and (a)(9) violate the Second Amendment. The district court did not "ignore" the City's interpretation of "good moral character as used in the Administrative Code" [City Br. at 20-21] – 10-303 and 38 RCNY 3-03 provide separate and independent grounds for denying a rifle/shotgun application, as the Notices of Disapproval from 2019 bore out below. [Dkt. 27-2, 27-4].

Specifically, Srour's rifle/shotgun application was denied, in part, because the License Division concluded he Srour had "poor moral judgment" and that his "driving record" and "arrests" "reflect negatively on [his] moral character," thus implicating 10-303(a)(2). [Srour Dec. at Ex. 2/Dkt. 27-2] The same events "cast grave doubt on [Srour's] fitness to possess a firearm", also implicating 10-303(a)(9) "good cause" for the denial.

---

[15] Also, the CCIA does not regulate rifles and shotguns [with the exception of semiautomatic rifles, which were recently incorporated into the handgun licensing statute]. NYC Admin. Code 10-303 regulates *only* rifles and shotguns.

Because there is no separate provision in 38 RCNY 3-03 allowing denial of a rifle/shotgun license based on a conclusion that the licensing authority believes that "grave doubt" has been "cast" on an applicant's "fitness to possess a firearm" the only catch-all provision under which Srour's the rifle/shotgun license could have been denied is the "good cause" provision of 10-303(a)(9).

The amendments to the preface of 38 RCNY 3-03 do not alter the ability of 10-303(a)(2) and (a)(9) to continue to provide a catch-all resource for denials[16] because the subsections were left untouched. And so, 10-303(a)(2) and (a)(9) act independently of 38 RCNY 3-03 as additional grounds to deny a rifle/shotgun license.

### D. NYC Admin. Code and 10-303 and 38 RCNY 3-03 Do Not Reference Each Other

The nonexistence of the City's professed 'simpatico' relationship between 10-303 and the amended 38 RCNY 3-03 is apparent from the regulations themselves. 38 RCNY 3-03 contains no reference to NYC Admin. Code 10-303 and vice versa.

Significantly, the definition of "good moral character" in 38 RCNY 3-03 is substantially different from 10-303 ***and*** from the text of Penal Law 400.00(1)(b):

> In addition to other bases for disqualification pursuant to federal, state, and local law and this chapter, an application for a rifle/shotgun permit may be denied where it is determined that an applicant lacks good moral character.

---

[16] Srour objects to this argument as the City failed to raise it below.

19

> For the purposes of this chapter, "good moral character" means having the essential character, temperament and judgment necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others. For the purposes of the preceding sentence, the use of force that is reasonably necessary to protect oneself or others shall not be construed as endangering oneself or others. Such a determination shall be made based upon consideration of the following factors…"

38 RCNY 3-03 (current).[17, 18]

For these reasons, among others, the City's "statutory interpretation" theory fails.[19]

## VII. THE CITY CANNOT ALTER THE TRIAL COURT RECORD

NYC Admin. Code 10-303 is a *New York City* regulation – not a *State* regulation. The City had a full and fair opportunity to present evidence to justify its regulations – it bore its proof below, and failed.

The City cannot now come before this Court and attempt to usurp whatever historical analogues New York *State* has submitted in defense of the State regulations. Apart from the statutes' textual differences, there are two wholly different evidentiary records involved and the City is bound to the record it created.

---

[17] https://codelibrary.amlegal.com/codes/newyorkcity/latest/NYCrules/0-0-0-77077
https://codelibrary.amlegal.com/codes/newyorkcity/latest/NYCAdmin/0-0-0-208353
[18] The 38 RCNY 3-03 version of "good moral character" has a carve out for use in self-defense – quite unlike the State statute, which expressly forbids use of a handgun for self-defense. See, Penal Law § 400.00(1)(b) ("and to use it only in a manner that does not endanger oneself or others").
[19] The numerous and varied versions of a "moral character" assessment highlight the arbitrary and non-objective nature of the regulations in the first instance.

The City cannot alter the trial court record. It is improper for the City to press this Court to apply evidence from the *Antonyuk* case to the record in this case. There are no parties in common, nor are the regulations identical.

This Court is constrained to look to the evidentiary record on *this case* -- what was presented in the district court -- and not on evidence outside of the appellate record. There are no "exceptional circumstances" warranting a contrary course. *Dollinger v. New York State Ins. Fund*, 726 F. App'x 828, 830 (2d Cir. 2018) ("We will consider evidence from outside the district court record only in 'extraordinary circumstances.'") citing *Int'l Bus. Machs. Corp. v.* Edelstein, 526 F.2d 37, 45 (2d Cir. 1975); see also, 4 C.J.S. Appeal and Error § 684 ("Absent unusual circumstances, an appellate court may not base its decision on matters outside the record on appeal and may not consider matters not produced and received in evidence below. An appellate court may rely only on what appears in the certified record.").

And the City should be cautioned that "canvassing" the "historical evidence" "again in this appeal" is patently improper. [City Br. at 24].

The "historical evidence" is just that – ***evidence***. [City Br. at 24]. The City cannot continue to bite the apple by supplementing the evidence that it presented to the district court to justify its regulations; the City cannot 're-justify' with other 'evidence' on appeal.

21

## CONCLUSION

The City's motion should be denied in its entirety.

Dated:  November 9, 2023
       Scarsdale, New York

                          THE BELLANTONI LAW FIRM, PLLC
                          *Attorneys for Plaintiff, Joseph Srour*

                By:   *Amy L. Bellantoni*
                          Amy L. Bellantoni (AB3061)
                          2 Overhill Road, Suite 400
                          Scarsdale, New York 10583
                          abell@bellantoni-law.com

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared using Microsoft Word 2016, and according to that software, it contains 5130 words , exclusive of the table of authorities, table of contents, cover, signature block, and this certificate.


*Amy L. Bellantoni*
Amy L. Bellantoni