# 23-7549

### United States Court of Appeals
### for the Second Circuit

JOSEPH SROUR,

*Plaintiff-Appellee,*

against

KEECHANT SEWELL, in her Official Capacity as NYPD Police Commissioner,

*Defendant-Defendant,*

and

NEW YORK CITY, NEW YORK, and EDWARD A. CABAN,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Southern District of New York

**REPLY MEMORANDUM IN FURTHER SUPPORT
OF MOTION FOR A STAY PENDING APPEAL**

RICHARD DEARING
CLAUDE S. PLATTON
ELINA DRUKER
   *of Counsel*

November 16, 2023

HON SYLVIA O. HINDS-RADIX
*Corporation Counsel
of the City of New York*
Attorney for Appellants
100 Church Street
New York, New York 10007
212-356-2609 or -2502
edruker@law.nyc.gov

Reproduced on Recycled Paper

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

REASONS TO GRANT A STAY PENDING APPEAL ............................. 3

    A. A stay should issue as in *Antonyuk*. ............................................. 3

    B. The City is likely to succeed on appeal. ...................................... 4

        1. Srour lacks standing to challenge the current scheme. ......... 4

        2. Srour offers no response to the City's showing that prospective relief was unwarranted. ........................................ 7

        3. The good-moral-character requirement as currently implemented is constitutionally sound. ................................. 8

    C. The balance of equities favors a stay. ..................................... 12

CONCLUSION ................................................................................. 14

CERTIFICATE OF COMPLIANCE ..................................................... 15

i

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Antonyuk v. Hochul*,
  2d Cir. Case No. 22-2908 ............................................................. 1, 3, 4

*Citizens for Orderly Energy Policy, Inc. v. Cuomo*,
  78 N.Y.2d 398 (1991)...................................................................... 10

*Comm'y Hous. Improvement Program v. City of N.Y.*,
  59 F.4th 540 (2d Cir. 2023)............................................................... 11

*Libertarian Party v. Cuomo*,
  970 F.3d 106 (2d Cir. 2020), *abrogated on other grounds by Bruen*, 142 S. Ct. 2111 ....................................................... 7

*Maryland v. King*,
  133 S. Ct. 1 (2012) ........................................................................... 12

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
  142 S. Ct. 2111 (2022)............................................................... *passim*

*Third Natl. Bank v. Impac, Ltd.*,
  432 U.S. 312 (1977) ......................................................................... 11

*We the Patriots U.S. v. Conn. Off. Of Early Childhood Dev.*,
  76 F.4th 130 (2d Cir. 2023).............................................................. 11

## Statutes

CCIA..................................................................................................3, 5, 8, 9

N.Y. Penal L. § 400.00(1)(b) ............................................................... 3, 7

## Other Authorities

38 R.C.N.Y. § 3-03 ......................................................................... *passim*

New York City Administrative Code § 10-303(a)(2) ...................... *passim*

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

New York City Administrative Code § 10-303(a)(9) .................................. 3

## PRELIMINARY STATEMENT

As the City's opening memorandum ("Mtn.") explained, this Court should stay the district court's award of declaratory and permanent injunctive relief preventing enforcement of New York City Administrative Code § 10-303(a)(2), a local law that authorizes denial of a rifle/shotgun permit to an applicant who lacks "good moral character." A stay is warranted just as it was in *Antonyuk v. Hochul*, 2d Cir. Case No. 22-2908, which involves a challenge to the parallel good-moral-character requirement of the State's handgun-licensing scheme. Moreover, the City is likely to succeed on its appeal, and in the meantime, the injunction would inject confusion and delays into rifle and shotgun permitting, and potentially undermine public safety.

In opposition, Srour repeats the district court's central conceptual error of viewing § 10-303(a)(2)'s good-moral-character requirement in isolation rather than within the broader permitting scheme, which was amended in response to *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). He has no valid answer to the City's showing that he lacked standing to challenge the current version of the scheme: his application was denied under the prior version, and he did

not establish that reapplying under the revised standards would be futile. Given his myopic focus on § 10-303(a)(2)—divorced from *Bruen*, state law, and NYPD's implementing regulation—Srour also has no rejoinder to the City's showing that the district court abused its discretion by granting prospective relief against the good-moral-character requirement based on its assessment of how the standard was applied pre-*Bruen*. Likewise, Srour's assertion that the requirement affords unconstitutionally broad discretion ignores the current implementing regulation, which incorporates a standard that *Bruen* identified as appropriately narrowing licensing discretion.

Finally, Srour fails to refute the City's showing that the balance of equities favors a stay. He cannot demonstrate irreparable harm if a stay is granted because, even without the injunction, he may reapply for a permit under standards that align with *Bruen*—and indeed has already done so since the district court ruled. But his dismissive assertion that permitting could continue without the good-moral-character requirement ignores the requirement's significant role in ensuring that only law-abiding, responsible people possess rifles or shotguns in the City.

## REASONS TO GRANT A STAY PENDING APPEAL

### A. A stay should issue as in *Antonyuk*.

The City showed that a stay pending appeal is warranted here as it was in *Antonyuk v. Hochul*, a Second Amendment challenge to provisions of the State's Concealed Carry Improvement Act (CCIA), including its good-moral-character requirement for handgun licensing (Mtn. 14-16).[1] In response, Srour repeats his mistaken contention that the two good-moral-character provisions are "materially different" (Pl.'s Memorandum in Opposition ("Opp.") 18-19). But this argument fails to recognize that the NYPD's implementing regulation clarifies the definition of good moral character for purposes of rifle/shotgun permitting, giving it the same meaning as the identical phrase in the CCIA. *Compare* 38 R.C.N.Y. § 3-03, *with* N.Y. Penal L. § 400.00(1)(b).[2]

---

[1] As the City explained (Mtn. 4), there is no practical need to stay the injunction of Administrative Code § 10-303(a)(9)—the "good cause" provision—because NYPD's regulation does not authorize a denial on that basis. The City disagrees with Srour's arguments but focuses here on subsection (a)(2).

[2] Contrary to Srour's suggestion, the New York Attorney General did not assert in a FRAP 28(j) letter in *Antonyuk* that the two provisions "do[] not track" (Opp. 17 (emphasis and italics omitted)). In distinguishing the *Srour* ruling, the Attorney General, in addition to asserting that it was "deeply flawed," noted that it had no bearing on *Antonyuk* because the CCIA lacks the features animating the ruling, in that it defines good moral character and does not authorize denial for "good cause" (2d Cir. Case No. 22-2908, ECF No. 402). The same is true of NYPD's implementing regulation.

Srour does not dispute that the district court in *Antonyuk* enjoined the CCIA's good-moral-character provision on essentially the same basis as the district court here enjoined § 10-303(a)(2), or that the *Antonyuk* plaintiffs advance the same legal arguments against the State's requirement that Srour makes about the City's. Where this Court stayed the injunction against the State's requirement for handgun licensing pending the State's appeal in *Antonyuk*, it should likewise stay the injunction here against the City's parallel requirement for rifle/shotgun permitting.

**B. The City is likely to succeed on appeal.**

    **1. Srour lacks standing to challenge the current scheme.**

Srour fails to defend the district court's conclusion that he had standing to pursue prospective relief against § 10-303(a)(2). He asserts that it would be futile to apply for a rifle/shotgun permit under the current permitting scheme because the agency denied his application for a permit in 2019 (Opp. 6-8). In support of this contention, he insists that "the text of those subsections has not changed" and that "[t]he City fails to identify any change in circumstances [since 2019] that would lead to a

different outcome" (Opp. 7). But Srour ignores the key intervening facts that belie his assertion of futility: (1) in June 2022, the Supreme Court decided *Bruen,* upending Second Amendment jurisprudence; (2) the next month, the State enacted the CCIA, adopting a definition of good moral character for handgun licensing similar to a Connecticut standard specifically blessed in *Bruen*, and eliminating a catch-all provision that had allowed for license denials for "other good cause"; and (3) in December 2022, the NYPD promulgated new regulations for handgun licensing and rifle/shotgun permitting that incorporated the CCIA's definition of good moral character and eliminated a similar catch-all (*see* Mtn. 6-9). Srour's claim that nothing about the regulatory regime has changed since 2019 is simply untenable.

Srour also offers no defense of the incongruity at the heart of the district court's standing analysis: the conclusion that Srour had standing to challenge the future implementation of § 10-303(a)(2) yet lacked standing to challenge the current NYPD regulation that implements the provision, 38 R.C.N.Y. § 3-03, because he had not been denied a permit under the regulation (*see* Mtn. 18-19). Srour's failure to address this distinction confirms it is indefensible.

5

What's more, Srour ignores that five years have passed since he submitted his rifle/shotgun application. The regulation provides that "the License Division shall consider all relevant factors, including but not limited to the number, *recency* and severity of [misconduct] incidents." 38 R.C.N.Y. § 3-03 (emphasis added). As Srour admits, in 2018, he initially concealed from the License Division that he was twice arrested on violent charges, and he also had a long history of ignoring licensing rules as evidenced by his driving record (Mtn. 9-11; Opp. 6-7). These facts underlay the agency's license denial in 2019, but they are not automatic disqualifiers; on a fresh application under the current scheme—such as he has now made—the agency will consider his explanation for his initial lack of candor and the recency of these incidents to determine whether Srour has the "essential character, temperament and judgment" to safely keep rifles and shotguns. 38 R.C.N.Y. § 3-03.

For these reasons, Srour misses the mark in his attempt to leverage cases holding that past injuries may indicate that a harm will recur (Opp. 6). This is true only where the surrounding circumstances remain the same—unlike here, where the jurisprudential and regulatory landscape has shifted significantly. Srour thus did not make a "substantial

showing" that applying for a license would have been futile, and so lacked standing to obtain prospective relief against the current scheme. *Libertarian Party v. Cuomo*, 970 F.3d 106, 116 (2d Cir. 2020), *abrogated on other grounds by Bruen*, 142 S. Ct. 2111.

### 2. Srour offers no response to the City's showing that prospective relief was unwarranted.

Srour also fails to counter the City's showing that the district court improperly granted prospective relief based on the mistaken assumption that § 10-303(a)(2)'s good-moral-character requirement would be applied unconstitutionally in the future simply because it was not amended after *Bruen* (Mtn. 19-22). As we have explained, New York principles of statutory interpretation require courts to construe legislation to avoid constitutional infirmities and to harmonize common phrases in parallel legislative schemes (*see id.* at 19-22). The court thus should have read § 10-303(a)(2) to align with *Bruen* and with state law's parallel requirement for handgun licensing, N.Y. Penal L. § 400.00(1)(b), which it was always intended to track. New York law also required the district court to defer to the meaning given to the good-moral-character requirement by NYPD's revised regulation, *see* 38 R.C.N.Y. § 3-03, which

provides clear evidence that the NYPD will apply the requirement in line with *Bruen* and the CCIA (*see* Mtn. 20-21). In light of these principles, the district court erred in finding no "reason to believe" that § 10-303(a)(2) would be applied differently going forward (ECF No. 43, at 19).

Srour makes no attempt to refute the City's argument that prospective relief was improper given the changes in Second Amendment jurisprudence, state law, and the implementing regulations. His silence on these essential points just confirms that the City is likely to prevail on the merits.

### 3. The good-moral-character requirement as currently implemented is constitutionally sound.

These defects of standing and remedy are enough to establish that the City is likely to succeed on the merits of its appeal. But a stay is also warranted because the district court's constitutional analysis is incorrect. Srour's arguments in defense of the district court's reasoning misunderstand the limits of the Second Amendment and the contours of the good-moral-character requirement in the City's rifle/shotgun-permit scheme.

To start, Srour mistakenly asserts that the Second Amendment bars "encroaching to any extent … on the right to possess and carry arms" (Opp. 8). This absolutist conception of the Second Amendment is unsound. Indeed, *Bruen* stressed that the Second Amendment is not "a regulatory straightjacket" and that modern-day restrictions are constitutionally permissible if they are consistent with the history and tradition of gun regulation. 142 S. Ct. at 2133-34. And *Bruen* took pains to avoid casting doubt on the handgun-licensing schemes of 43 States, *id.* at 2138 n.9, which cannot be squared with Srour's no-regulation view.

So too, Srour is mistaken in arguing that § 10-303(a)(2) gives licensing officials "unfettered discretion" (Opp. 1). As discussed above and in the City's opening memorandum (at 19-22), § 10-303(a)(2)'s good-moral-character requirement is focused by the NYPD's amended implementing regulation, which incorporates the CCIA's definition of the same phrase; the CCIA, in turn, adopts language from Connecticut's licensing scheme that the Supreme Court noted was sufficient to constrain licensing officials' discretion, *see Bruen*, 142 S. Ct. 2123 n.1. The amended regulation also eliminates the discretion conferred by the

former provision authorizing denial of a license for "other good cause." The agency's discretion is thus appropriately channeled.

In an attempt to minimize the impact of the implementing regulation, Srour argues that the regulation is "not at issue in this appeal" because the district court did not enjoin it, and the regulation and § 10-303(a)(2) do not expressly cross-reference each other (Opp. 3 n.6, 19-20). This argument makes no sense. The regulation implements the local law; they operate in tandem to define when the License Division may deny a rifle/shotgun-permit application. Srour does not explain how that regulation could be enforced while the statutory provision furnishing its legal basis is enjoined. But if he were correct, it would be difficult to understand what practical impact the district court's injunction has, or why he objects to a stay of it.[3]

Trying another tack, Srour argues that *any* discretion in licensing is impermissible, claiming that *Bruen* "flatly rejects the exercise of discretion" (Opp. 2, 9-10). But Srour again misreads the decision. Although *Bruen* rejected unchanneled discretion and approved of

---

[3] Srour fails to disclose that he has filed a second motion below to enjoin the regulation (S.D.N.Y. Case No. 23-cv-9489(JPC), ECF No. 5), underscoring his apparent belief that he has not yet obtained effective relief.

objective licensing standards, 142 S. Ct. at 2138 n.9, it favorably cited Connecticut's standard under which "officials [have] … discretion to deny a concealed-carry permit to anyone who is not a 'suitable person,'" *id.* at 2123 n.1. Consistent with this discussion, the historical analogues the City cited in its opening brief (Mtn. 23-24) demonstrate that there is a longstanding tradition of disarming individuals based on discretionary assessments, such as historical laws that allowed for disarming individuals who were deemed not "loyal and well-disposed." *See Bruen*, 142 S. Ct. at 2152 (quoting Cong. Globe, 39th Cong., 1st Sess., at 908-09).

Attempting to undercut the City's historical evidence, Srour suggests that this Court is "constrained" to consider only historical laws that were provided to the district court (Opp. 20-21). But it is not "patently improper," as Srour suggests (*id.* at 21), to offer new legal citations on appeal, and the Court can take judicial notice of the historical facts, *Third Natl. Bank v. Impac, Ltd.*, 432 U.S. 312, 317 (1977), legislative history, *We the Patriots U.S. v. Conn. Off. Of Early Childhood Dev.*, 76 F.4th 130, 136 (2d Cir. 2023), and matters of public record, *Comm'y Hous. Improvement Program v. City of N.Y.*, 59 F.4th 540, 544, n.1 (2d Cir. 2023). Srour cannot invent new rules of appellate procedure

to exclude evidence of the nation's longstanding tradition of limiting the possession of firearms to responsible and law-abiding individuals.

### C. The balance of equities favors a stay.

Srour is also unable to counter the City's showing that the balance of equities favors granting a stay (Mtn. 25-27). To begin, a stay would not harm Srour. As noted, he lacks standing to challenge the current permitting regime because he hasn't been injured by it. He claims that he is "absolutely foreclosed" from possessing "any type of firearm" (Opp. 15), but this is sheer speculation because he has not been denied a permit under the current standards. He needs no injunction to have an application considered under the post-*Bruen* permitting scheme.

On the other side of the scale, the public interest strongly favors a stay. Ignoring the City's arguments about the effects of the injunction, Srour contends that enjoining enforcement of the good-moral-character requirement would pose a mere administrative inconvenience (Opp. 13-14). But city policymakers have determined that the requirement is an important part of the permitting scheme, and allowing their public-safety judgments to be frustrated during the appeal's pendency would cause irreparable harm. *See Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts,

C.J., in chambers) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (quotation marks omitted)).

Moreover, by issuing relief beyond the parties, the district court created grave, real-world repercussions (Mtn. 25-27). It enjoined the NYPD from denying any future application on moral-character grounds, meaning that the License Division could not deny an application even if the applicant lacks "the essential character, temperament and judgment necessary to be entrusted with a weapon," unless an applicant is also separately disqualified from possessing a rifle or shotgun under a different provision of federal, state, or local law. 38 R.C.N.Y. § 3-03. Thus, an application could not be denied if an applicant has repeatedly and recently been indicted on violent criminal charges, including for domestic violence, or made egregious false statements on the application. *Id.* § 3-03(a), (e).

The district court's permanent injunction and declaratory relief therefore threaten to undermine public safety, in addition to needlessly delaying, complicating, and confusing the processing of applications. For all of these reasons, the equities favor a stay pending appeal.

## CONCLUSION

This Court should grant a stay pending appeal.

Dated: New York, NY
November 16, 2023

                                      Respectfully submitted,

                                      HON SYLVIA O. HINDS-RADIX
                                      *Corporation Counsel*
                                      *of the City of New York*
                                      Attorney for Appellants

By: /s/ Elina Druker
       ELINA DRUKER
       Assistant Corporation Counsel

       100 Church Street
       New York, NY 10007
       212-356-2609
       edruker@law.nyc.gov

RICHARD DEARING
CLAUDE S. PLATTON
ELINA DRUKER
   *of Counsel*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared using Microsoft Word 2010, and according to that software, it contains 2,595 words, not including the table of contents, table of authorities, this certificate, and the cover.

_____*Elina Druker*_____
ELINA DRUKER