# 23-7549

## United States Court of Appeals
## for the Second Circuit

JOSEPH SROUR,

*Plaintiff-Appellee,*

*against*

NEW YORK CITY, NEW YORK, and EDWARD A. CABAN,

*Defendants-Appellants,*

KEECHANT SEWELL, in her Official Capacity as NYPD
Police Commissioner,

*Defendant.*

On Appeal from the United States District Court
for the Southern District of New York

### BRIEF FOR APPELLANTS

HON SYLVIA O. HINDS-RADIX
*Corporation Counsel*
*of the City of New York*
Attorney for Appellants
100 Church Street
New York, New York 10007
212-356-2502 or -2609
cplatton@law.nyc.gov

RICHARD DEARING
CLAUDE S. PLATTON
ELINA DRUKER
  *of Counsel*

February 12, 2024

Reproduced on Recycled Paper

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iii

PRELIMINARY STATEMENT ................................................................ 1

JURISDICTIONAL STATEMENT ........................................................ 3

ISSUE PRESENTED FOR REVIEW ...................................................... 4

STATEMENT OF THE CASE .................................................................. 4

    A.  The permitting scheme for rifles and shotguns in New York City ........................................................................ 4

        1. The scheme's source in state law governing handgun licensing ............................................................................. 4

        2. The changes to state handgun licensing and local rifle/shotgun permitting after *Bruen* ..................................... 7

    B.  Srour's applications for a rifle/shotgun permit and a handgun license ........................................................ 10

    C.  This lawsuit culminating in the district court's grant of a permanent injunction .............................................. 13

    D.  Srour's second set of applications and second lawsuit challenging the amended rifle/shotgun regulation ................. 16

SUMMARY OF ARGUMENT AND STANDARD OF REVIEW ........... 17

ARGUMENT ........................................................................................ 21

    THE DISTRICT COURT ERRED IN GRANTING DECLARATORY AND PERMANENT INJUNCTIVE RELIEF AGAINST ENFORCEMENT OF § 10-303 ..................... 21

i

# TABLE OF CONTENTS (cont'd)

**Page**

A. Srour lacked standing to obtain prospective relief against the current scheme for rifle/shotgun permitting. .................... 21

  1. Srour was not denied a license under the present-day regulatory regime. ................................................................. 25

  2. Srour failed to demonstrate futility. ..................................... 30

B. The character requirement as currently implemented is constitutionally sound. ............................................................. 32

C. The remaining factors also cut against the injunction entered by the district court. .................................................... 39

CONCLUSION ......................................................................................... 44

CERTIFICATE OF COMPLIANCE ......................................................... 45

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Tel. & Tel. Co. v. State Tax Comm'n,*
61 N.Y.2d 393 (1984) .......................................................................... 27

*Antonyuk v. Chiumento,*
No. 22-2908(L), 89 F.4th 271, 2023 U.S. App. LEXIS
32492 (2d Cir. Dec. 8, 2023) ......................................................... *passim*

*Brokamp v. James,*
66 F.4th 374 (2d Cir. 2023) ............................................................... 23

*Chufen Chen v. Dunkin' Brands, Inc.,*
954 F.3d 492 (2d Cir. 2020) .............................................................. 26

*eBay Inc. v. MercExchange, L.L.C.,*
547 U.S. 388 (2006) ........................................................................... 17

*Green Haven Prison Preparative Meeting of Religious Soc'y of
Friends v. N.Y.S. Dep't of Corr. & Cmty. Supervision,*
16 F.4th 67 (2d Cir. 2021) ................................................................. 17

*Grimm v. New York,*
56 Misc. 2d 525 (Sup. Ct., Queens Cnty. 1968) ............................. 6, 40

*District of Columbia v. Heller,*
554 U.S. 570 (2008) ........................................................................... 36

*Jackson-Bey v. Hanslmaier,*
115 F.3d 1091 (2d Cir. 1997) ....................................................... 21, 22

*James B. Nutter & Co. v. Cnty. of Saratoga,*
39 N.Y.3d 350 (2023) ........................................................................ 27

*Lacewell v. Off. of the Comptroller of the Currency,*
999 F.3d 130 (2d Cir. 2021) .............................................................. 25

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Libertarian Party v. Cuomo,*
  970 F.3d 106 (2d Cir. 2020), *abrogated on other grounds
  by Bruen*, 597 U.S. 1 (2022) .............................................. 22, 24, 29, 30

*Maryland v. King,*
  133 S. Ct. 1 (2012) .................................................................... 41

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
  597 U.S. 1 (2022) ........................................................... *passim*

*People v. Viviani,*
  36 N.Y.3d 564 (2021) ................................................................ 27

*Petereit v. S.B. Thomas, Inc.,*
  63 F.3d 1169 (2d Cir. 1995) ....................................................... 4

*Raritan Dev. Corp. v. Silva,*
  91 N.Y.2d 98 (1997) .................................................................. 27

*Town of Chester v. Laroe Estates, Inc.,*
  581 U.S. 433 (2017) .................................................................. 21

*TransUnion LLC v. Ramirez,*
  141 S. Ct. 2190 (2021) .............................................................. 22

*Trump v. Hawaii,*
  138 S. Ct. 2392 (2018) .............................................................. 41

*United States v. Texas,*
  143 S. Ct. 1964 (2023) .............................................................. 41

*We the Patriots USA, Inc. v. Hochul,*
  17 F.4th 266 (2d Cir. 2021) (per curiam) ............................... 17

*Xiang Fu He v. Troon Mgt., Inc.,*
  34 N.Y.3d 167 (2019) ................................................................ 26

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

**Statutes**

28 U.S.C. § 1292(a)(1)................................................................4

28 U.S.C. § 1331 ......................................................................3

42 U.S.C. § 1983 ......................................................................3

2022 N.Y. Sess. Laws ch. 371 ....................................................9

N.Y. City Admin. Code § 10-131 ...............................................5

N.Y. City Admin. Code § 10-303(a)(2)...............................*passim*

N.Y. City Admin. Code § 10-303(a)(9)...........................13, 14, 15

N.Y. City Admin. Code § 10-303(b) ...........................................7

N.Y. City Admin. Code § 10-303(c) ...........................................7

1913 N.Y. Laws ch. 608, § 1 ...................................................40

2022 N.Y. Laws ch. 371 ...........................................................8

N.Y. Penal L. § 265.00(10) .......................................................5

N.Y. Penal L. §§ 265.01-265.04 ................................................5

N.Y. Penal L. § 265.20(a)(3) .....................................................5

N.Y. Penal L. § 400.00..............................................5, 8, 18, 33

**Other Authorities**

38 R.C.N.Y. § 3-03 ........................................................*passim*

38 R.C.N.Y. § 5-05 ..................................................................6

38 R.C.N.Y. § 5-10 ........................................................*passim*

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

N.Y. City Charter § 434..............................................................5

N.Y. City Charter § 435..............................................................5

New York Police Department, Notice of Adoption of Final
    Rule (Dec. 13, 2022), https://rules.cityofnewyork.us/wp-
    content/uploads/2022/10/Permanent-Rule-FINAL-
    12.13.22.pdf..................................................................9

## PRELIMINARY STATEMENT

Plaintiff Joseph Srour brought this Second Amendment challenge to New York City Administrative Code § 10-303(a)(2), a local law that authorizes the NYPD Commissioner to deny a permit to purchase and possess a rifle or shotgun in the City if the applicant lacks "good moral character." The meaning of the statutory term has long been fleshed out by its implementing regulation. The Commissioner amended that regulation in 2022 to incorporate the character standard that the State Legislature adopted for handgun licensing after *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022)—a standard that has since been upheld against a facial Second Amendment challenge in *Antonyuk v. Chiumento*, 89 F.4th 271 (2d Cir. 2023).

The U.S. District Court for the Southern District of New York (Cronan, J.) declared § 10-303(a)(2) facially unconstitutional and permanently enjoined its enforcement. The court mistakenly considered the provision without reference to its implementing regulation and concluded that it affords licensing officials unwarranted discretion. That ruling, which is now stayed, would have grave consequences for rifle/shotgun permitting in New York City. This Court should reverse.

To start, Srour lacked standing to seek prospective relief against the enforcement of § 10-303(a)(2) because he had not applied for and been denied a license under the amended NYPD regulation and thus suffered no injury from § 10-303(a)(2) as currently implemented. And, given the significant changes in constitutional standards and regulatory landscape since he applied and was denied in 2019, there is no basis to conclude that applying under the new standards would be futile.

The provision easily passes constitutional muster in any event, as *Antonyuk* confirms. *Antonyuk* upheld the State's substantively identical character requirement for handgun licensing and rejected arguments just like Srour's about the improper discretion it supposedly affords. Because the NYPD's amended regulation tracks the state character requirement, Srour's claim cannot prevail on the merits for all the reasons that the corresponding claim in *Antonyuk* failed. In short, a licensing standard like this one, which limits access to guns to individuals with the essential character, temperament, and judgment necessary to be entrusted to use them safely, is consistent with the nation's tradition of firearm regulation, as confirmed by over 250 years of laws that disarmed dangerous individuals.

Beyond the deficiencies of the order below on the merits, the other injunction factors also weigh against injunctive relief. For much the same reasons that Srour cannot establish standing, he failed to demonstrate the possibility of irreparable injury: nothing suggests that he would be unlawfully denied a rifle/shotgun permit under the current permitting scheme if an injunction does not issue. And the public interests outweigh any harm that Srour might claim to face. An injunction would generate confusion and delays in licensing and potentially undermine public safety by preventing the NYPD from denying permits to applicants who lack the essential character, temperament, and judgment necessary to safely keep a rifle or shotgun in the City.

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. § 1331 over Srour's 42 U.S.C. § 1983 claims. The district court entered its order on October 24, 2023 (Special Appendix (SPA) 49), and the City timely noticed its appeal on October 25, 2023 (Joint Appendix (A) 373). *See* Fed. R. App. P. 4(a)(1)(A). This Court has jurisdiction under 28 U.S.C. § 1292(a)(1) over this appeal from an order issuing a permanent injunction. *See Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1175 (2d Cir.

3

1995) (finding appellate jurisdiction over interlocutory appeal where the district court granted a permanent injunction but deferred a ruling on damages).

## ISSUE PRESENTED FOR REVIEW

Did the district court abuse its discretion in granting plaintiff's motion for a permanent injunction and declaratory relief, where plaintiff lacked standing, he failed to show that the law is unconstitutional, and the other permanent-injunction factors weigh against an injunction?

## STATEMENT OF THE CASE

### A. The permitting scheme for rifles and shotguns in New York City

#### 1. The scheme's source in state law governing handgun licensing

The NYPD Commissioner issues permits to possess a rifle or shotgun within a premises—a home or place of business—within the City. This appeal concerns a provision of local law, enacted by the New York City Council, that authorizes the Commissioner to deny a rifle/shotgun permit to an applicant who lacks "good moral character." N.Y. City Admin. Code § 10-303(a)(2). To understand that provision, it is necessary to understand the scheme for handgun licensing in the State,

from which New York City's rifle/shotgun permitting scheme heavily draws.[1]

State law establishes the framework for handgun licensing in New York. *See generally* N.Y. Penal L. § 400.00. It prohibits the possession of handguns without a license. *Id*. §§ 265.01-265.04, 265.20(a)(3). And it delegates authority over handgun licensing to local licensing officers. *Id*. § 265.00(10). In New York City, the designated licensing officer in charge of issuing and renewing all handgun licenses is the Police Commissioner. *Id.* §§ 265.00(10), 400.00(1); N.Y. City Admin. Code § 10-131; N.Y. City Charter §§ 434, 435. The Commissioner has promulgated regulations— referred to in New York as "rules"—to implement this authority, which are set forth in Title 38 of the Rules of the City of New York. The Commissioner's authority is delegated to the NYPD's License Division,

---

[1] The district court also permanently enjoined New York City Administrative Code § 10-303(a)(9), which states that an application for a rifle/shotgun permit can be denied if "good cause exists for the denial." Srour lacks standing to prospectively challenge § 10-303(a)(9) for all the reasons, discussed below, that he lacks standing to prospectively challenge § 10-303(a)(2). Indeed, the agency's current, relevant regulations do not authorize it to deny applications on the basis of "good cause" at all. Regarding the merits, while the City disagrees with the district court's analysis in finding § 10-303(a)(9) unconstitutional, it has no practical reason to challenge that conclusion on appeal and does not do so.

5

which reviews handgun-license applications under the Commissioner's supervision. 38 R.C.N.Y. § 5-05.

For over a century, the State's licensing scheme has required applicants for a handgun license to demonstrate that they have "good moral character." *Bruen*, 597 U.S. at 11 (quoting 1913 N.Y. Laws ch. 608, § 1, p. 1629). The NYPD's longstanding rules for handgun licensing provide that, when reviewing an applicant's character, the License Division should assess a list of enumerated considerations, such as arrest history, driving history, and candor towards authorities. 38 R.C.N.Y. § 5-10(a), (e), (h), & (n).

While statutes governing handgun licensing are established at the state level, those addressing permitting for rifles and shotguns in New York City mainly arise via local law.[2] But the latter are closely patterned on the former. In 1967, when it adopted the permitting scheme covering possession of rifles and shotguns in New York City, the New York City Council borrowed heavily from the state handgun-licensing scheme. N.Y. City Admin. Code § 10-303(a); *see Grimm v. New York*, 56 Misc. 2d 525,

---

[2] There is a state-level requirement to obtain a license before purchasing or taking possession of "a semiautomatic rifle, other than an assault weapon or disguised gun." N.Y. Penal L. § 400.00(2). That requirement is not at issue in this case.

6

525 (Sup. Ct., Queens Cnty. 1968). The City Administrative Code directs the Police Commissioner to issue permits to possess a rifle or shotgun in a home or place of business under criteria similar to those for issuance of handgun licenses under the state statute. N.Y.C. Admin. Code § 10-303(b), (c). The law therefore allows the Commissioner to deny a rifle/shotgun permit if the applicant lacks "good moral character," *id.* § 10-303(a)(2)—a term that the Administrative Code does not define. The factors used to assess good moral character are instead found in the NYPD Commissioner's implementing regulation, 38 R.C.N.Y. § 3-03. These factors parallel those applicable to handgun applications discussed above. *Compare id. with* 38 R.C.N.Y. § 5-10(a).

### 2. The changes to state handgun licensing and local rifle/shotgun permitting after *Bruen*

In June 2022, in *Bruen*, the Supreme Court invalidated New York State's "proper cause" requirement, which had been part of concealed-carry handgun licensing in the State for over a century. 597 U.S. at 71. The proper-cause standard is not relevant here because this challenge is limited to the rules governing rifle/shotgun permits, which have never

required a showing of proper cause. However, *Bruen* triggered a broader reevaluation of licensing standards at the state and local levels.

In response to *Bruen*, the New York Legislature enacted the Concealed Carry Improvement Act in an emergency session.[3] The CCIA establishes new statewide standards for issuing carry licenses and regulating firearms more generally. *See* 2022 N.Y. Laws ch. 371. The CCIA also clarifies the good-moral-character requirement that applies to handgun-license applications by adding the following definition, which is drawn from *Bruen*'s discussion of permissible licensing standards: "[G]ood moral character … shall mean having the essential character, temperament and judgement necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others." N.Y. Penal L. § 400.00(1)(b); *see Bruen*, 597 U.S. at 13 n.1 (approving of Connecticut's suitable-person standard, which allowed officials "to deny a concealed-carry permit … only to those 'individuals whose conduct has shown them to be lacking the essential character of [sic] temperament

---

[3] https://legislation.nysenate.gov/pdf/bills/2021/S51001.

necessary to be entrusted with a weapon.'" (cleaned up)).[4] The CCIA also deleted a statutory provision allowing issuance of a license only where "no good cause exists for the denial." 2022 N.Y. Sess. Laws ch. 371.

The City Council did not amend § 10-303 after *Bruen*. But close on the heels of the State's enactment of the CCIA, the NYPD promulgated updated rules, effective December 16, 2022, governing applications for both handgun licenses and rifle/shotgun permits. The new rules, codified in 38 R.C.N.Y. §§ 3-03 and 5-10, respectively, clarify that the License Division will assess whether applicants have good moral character by using the definition found in the CCIA: "the essential character, temperament and judgment necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others."[5] Thus, the only definition of "good moral character" applicable to rifle/shotgun applications tracks the CCIA's definition for handgun applications. Likewise tracking the CCIA, the updated rules also strike

---

[4] This brief uses "cleaned up" to indicate that internal quotation marks, alterations, or citations have been omitted from quotations.

[5] New York Police Department, Notice of Adoption of Final Rule (Dec. 13, 2022), https://rules.cityofnewyork.us/wp-content/uploads/2022/10/Permanent-Rule-FINAL-12.13.22.pdf, at 3-4, 20-21 ("Notice of Adoption").

an earlier provision that had allowed consideration of "other good cause" for denial.[6]

The current amended rifle/shotgun rule includes a detailed list of objective criteria for assessing whether an applicant has the essential character, temperament, and judgment to safely possess a rifle or shotgun. These include whether the applicant has been "arrested, indicted, or convicted for a crime"; has a "disability or condition that may affect their ability to safely possess or use a rifle or shotgun"; made a "false statement on the license application, or failed to disclose a complete arrest history, including sealed arrests"; has a domestic-violence history; has a poor driving history; has demonstrated an inability to safely store firearms; failed to cooperate with the License Division's investigation; or has demonstrated "an unwillingness to abide by the law," or "a lack of candor towards lawful authorities." 38 R.C.N.Y. § 3-03.

## B. Srour's applications for a rifle/shotgun permit and a handgun license

In 2018, Srour applied to the NYPD License Division for a permit to possess a rifle or shotgun in his home, and in 2019, he applied for a

---

[6] *Id.*

license to possess a handgun in his home (A103-04). In 2019, he received Notices of Disapproval of both applications from the License Division (under the pre-*Bruen* rules), which he appealed administratively (A104, 119, 122).

In the agency's denial of his administrative appeals, which Srour attached in redacted form in support of his summary-judgment motion, the agency explained that under 38 R.C.N.Y. §§ 5-10 and 3-03, his applications for a handgun license and rifle/shotgun permit were denied due to his arrest history, driving history, and lack of candor in his application (A125). A New York State Division of Criminal Justice Services' criminal record check showed that Srour had failed to disclose that he was arrested in 1995 and again in 1996, and that his driver's license was revoked six times and suspended 24 times (A108-10, 138).[7]

In discussing his arrests, the agency observed that "[a]lthough these cases were dismissed … the License Division may consider the circumstances," and, "[w]hile these arrests are not recent, Mr. Srour's having been arrested twice, as well as the violent nature of the

---

[7] The details of Srour's arrest are redacted in the records filed in the district court that are included in the appellate record.

11

circumstances surrounding the [redacted] arrest are factors supporting denial of his applications" (A124).

The agency further explained that the application instructions direct applicants to indicate whether they've ever been arrested, "even if the arrest was dismissed, sealed, voided, or nullified by operation of law" (A125). "Mr. Srour failed to disclose either of his two arrests on his application" and "checked 'No' in response to the question asking if he had ever been arrested []even if sealed" (*id.*) Srour also signed and notarized an affidavit stating that he "acknowledge[d] that [he] underst[oo]d the requirement to disclose all information relating to [his] arrest history," and the "omission of a previous arrest or any false statements made in relation to [his] application … is grounds for denial of a permit" (*id.*).

The 2019 administrative denial also cited Srour's driving history as evidence of his "inability to abide by laws and regulations" which constitutes a "lack of moral character" (*id.*). Srour's driving records showed that he had (a) 28 moving violations, (b) 24 license suspensions, and (c) six license revocations (*id.*). Srour had also received two recent

summonses under the State Navigational Law for disregarding rules while operating a jet ski "even after being informed of them" (*id.*).

### C. This lawsuit culminating in the district court's grant of a permanent injunction

Srour filed a complaint in the U.S. District Court for the Southern District of New York in January 2022 claiming that parts of the New York City Administrative Code, N.Y. City Admin. Code §§ 10-303(a)(2) & (9), 3-310, and the Police Department's Handgun and Rifle/Shotgun Rules, 38 R.C.N.Y. §§ 3-03(a), (e), (h) & (n), 5-10(a), (e), (h), & (n), violate the Second Amendment facially and as applied, and are preempted by the New York Penal Law (A12-44). In March 2022, the district court stayed the case pending the Supreme Court's decision in *Bruen*. After the City answered and sought discovery, Srour withdrew his as-applied Second Amendment claims and preemption claims (A6). Srour then moved for pre-discovery summary judgment on his facial Second Amendment claim challenging the Administrative Code and NYPD Rules.

In the decision at issue here, the district court granted partial summary judgment and held that the good-moral-character and good-

13

cause provisions for rifle/shotgun permitting, Administrative Code § 10-303(a)(2) and (9), violate the Second Amendment because they afford too much discretion to the licensing officer (SPA48). Applying *Bruen*'s two-step framework for analyzing Second Amendment challenges, the court decided, at the first step, that possessing a firearm without demonstrating good moral character is protected conduct covered by the plain text of the Second Amendment (SPA22). And, at the second step, the court determined that the amount of discretion permitted by these provisions was not supported by historical gun laws (SPA26-40). The court reasoned that "every time a New York City official denied a rifle or shotgun permit [under the former scheme], the official acted pursuant to an unconstitutional exercise of discretion … mak[ing] those provisions facially invalid" (SPA39).

On this basis, the district court granted Srour summary judgment on liability, concluding that Administrative Code § 10-303(a)(2) and (a)(9) were facially invalid because they allowed for the exercise of discretion in assessing an applicant's moral character. The court determined that it would sever § 10-303(a)(2) from the rest of the § 10-303, leaving in place the authority to withhold licenses on grounds such as an applicant's age

14

or criminal convictions (SPA44, 46). But the court further held that it would "not reach herein the constitutionality of the current versions of Sections 3-03 and 5-10," the NYPD's amended rifle/shotgun or handgun licensing rules, correctly recognizing that Srour lacked standing to challenge them because his applications had not been denied under those provisions (SPA22).[8]

Thus, in a paradoxical holding, the court invalidated § 10-303(a)(2)'s character requirement but did not invalidate the new definition and specific list of factors set out in the NYPD's updated rule that give the character requirement meaning (SPA44). The court did not explain what it means, as a practical matter, to enjoin the underlying local law but not its implementing regulation.

The court then issued declaratory relief and a permanent injunction prohibiting enforcement of Administrative Code § 10-303(a)(2) and (a)(9) (SPA45). Having previously bifurcated the issues of liability and damages, the court directed that damages, attorney's fees, and costs

---

[8] The court also held that the pre-amendment versions of the NYPD rules for rifle/shotgun permitting and handgun licensing, 38 R.C.N.Y. §§ 3-03 and 5-10, were facially unconstitutional (SPA41). That holding is incorrect, and the City reserves the right to challenge it in an appeal from the final judgment.

would be determined later (SPA48). The City noticed this interlocutory appeal from the entry of injunctive and declaratory relief (A372).

Following the decision, the City asked the district court to stay its decision pending appeal. The court denied the request but issued a temporary stay of the injunction that remains in effect until this Court resolves the City's application to this Court for a stay pending appeal (ECF No. 49). As of the date of filing of this brief, the City's stay motion remains pending, and the district court has not yet determined damages, attorney's fees, and costs.

### D. Srour's second set of applications and second lawsuit challenging the amended rifle/shotgun regulation

On October 26, 2023, the day after the City filed its notice of appeal in this case, Srour filed new applications for a handgun license and a rifle/shotgun permit with the NYPD License Division. SDNY Case No. 23-CV-9489, ECF No. 14. That same day, he also filed a new complaint against the City, NYPD Commissioner Edward Caban, and the Director of the NYPD License Division on the theory that his rights will inevitably be violated when a determination is issued on his newly filed applications that he anticipates will be denied. *Id.*, ECF No. 1. Three days later, he

16

filed a motion for a preliminary injunction seeking an order enjoining the City from applying the "good moral character" provisions of 38 R.C.N.Y. §§ 3-03 and 5-10 and from "classifying" Srour as "dangerous and not law-abiding." *Id.*, ECF No. 8, at 20.

The district court denied Srour's preliminary-injunction motion "without prejudice because [Srour] ha[d] not established a likelihood of success on the merits for the reasons stated in the record, specifically with respect to his standing to bring th[e] action." *Id.*, ECF No. 19. The City's motion to dismiss Srour's complaint is pending before the district court, and Srour's applications for a handgun license and rifle/shotgun permit are pending before the License Division.

## SUMMARY OF ARGUMENT
## AND STANDARD OF REVIEW

This Court reviews the district court's grant of an injunction for an abuse of discretion, examining legal conclusions *de novo* and factual findings for clear error. *Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. N.Y.S. Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 78 (2d Cir. 2021).

To obtain a permanent injunction against government action taken in the public interest, the plaintiff must demonstrate (1) actual success

17

on the merits, (2) irreparable injury absent injunctive relief, and (3) public interest weighing in favor of granting the injunction. *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 279-80 (2d Cir. 2021) (per curiam); *eBay Inc. v. MercExchange*, L.L.C., 547 U.S. 388, 391 (2006). Srour failed to make a sufficient showing on any of these prongs.

To begin, the district court improperly found for Srour on the merits. Most basically, the court went astray by viewing § 10-303(a)(2)'s character requirement in isolation, ignoring that the provision is given meaning, and its application by licensing officials is channeled, by the NYPD's implementing regulation. This blinkered reading, which violates core principles of statutory interpretation under New York law, led the district court to err in two key ways.

First, contrary to the district court's conclusion, Srour lacked standing to secure prospective relief against the character requirement as currently implemented. When the district court ruled, Srour had not even applied for a rifle/shotgun permit under the current regulatory regime, much less been denied, and he did not show that applying would have been futile. These failures defeat his claims.

18

On this point, the district court incorrectly concluded that the character requirement for the rifle/shotgun permitting scheme is unchanged since 2019, when Srour's application was denied, because the City Council did not amend the text of § 10-303(a)(2) after *Bruen*. But that conclusion ignores that the agency's regulation, which gives the local law its meaning, has changed. The rule, as amended by the NYPD Commissioner in response to *Bruen*, gives good moral character, for purposes of rifle/shotgun permitting, the same meaning as the identical phrase in the CCIA, *compare* 38 R.C.N.Y. § 3-03, *with* N.Y. Penal L. § 400.00(1)(b), which reflects the Supreme Court's guidance in *Bruen*. Thus, when his application was denied in 2019, Srour was not injured by § 10-303(a)(2) as it is currently implemented. The current permitting scheme is different and has not caused him any injury-in-fact. He thus lacks standing to seek relief against § 10-303(a)(2)'s enforcement in the future.

Second, the district court erred in declaring § 10-303(a)(2) facially unconstitutional. The court built an ill-defined strawman character requirement out of § 10-303(a)(2) and then concluded that it affords licensing officials too much discretion. But again, the court improperly

19

focused on the provision in a vacuum, without regard for the ways that the NYPD's implementing regulation gave substance to the standard and channeled its application. The provision, properly construed, is part of a permitting scheme that is on firm constitutional ground.

Indeed, this Court recently upheld the character requirement in the State's post-*Bruen* handgun-licensing regime against facial Second Amendment scrutiny. *Antonyuk*, No. 22-2908(L), 89 F.4th 271, 2023 U.S. App. LEXIS 32492 (2d Cir. Dec. 8, 2023), at *70. The same reasoning that led to that outcome applies here. Like its state-law counterpart, § 10-303(a)(2)'s character requirement—as defined by its implementing regulation—restricts licenses to responsible, law-abiding individuals with the essential character, temperament, and judgment to safely possess firearms. As *Antonyuk* recognized, that standard is consistent with the original public understanding of the right, as confirmed by over 250 years of historical laws that disarmed irresponsible and non-law-abiding individuals.

Even if Srour were right on the merits, moreover, a permanent injunction against § 10-303(a)(2) would still be unwarranted because any supposed harm to Srour is outweighed by compelling public interests.

20

Indeed, for the same reasons that he lacks standing, Srour faces no risk of injury from the current version of the rifle/shotgun scheme, which appropriately accounts for *Bruen*. On the other hand, the district court's permanent injunction and declaratory relief frustrate a duly enacted regulatory scheme adopted after *Bruen* and threaten to undermine public safety, in addition to needlessly delaying, complicating, and confusing the processing of rifle/shotgun applications. All of these considerations call for vacating the unfounded permanent injunction.

## ARGUMENT

### THE DISTRICT COURT ERRED IN GRANTING DECLARATORY AND PERMANENT INJUNCTIVE RELIEF AGAINST ENFORCEMENT OF § 10-303

A fundamental error about state law pervades the district court's decision and undermines both its the standing and constitutional analysis. With that mistaken assumption corrected, the court's decision crumbles on both fronts.

### A. Srour lacked standing to obtain prospective relief against the current scheme for rifle/shotgun permitting.

The district court mistakenly found that Srour had standing to seek prospective relief against § 10-303(a)(2)'s character requirement. "[A]

21

plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017). Srour abandoned any as-applied claim based on the NYPD's denial of a license to him in 2019, instead pressing a facial claim seeking prospective relief against the current version of the rifle/shotgun standards. But he was the wrong plaintiff for that claim.

Standing is a threshold question of subject-matter jurisdiction that must be resolved. *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1095 (2d Cir. 1997). To meet the "constitutional minima" of standing, Srour was required to show (1) an injury in fact that is concrete, particularized, and actual or imminent; (2) that was likely caused by the defendant; and (3) that is redressable through the litigation. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).

Generally, a cognizable injury-in-fact does not arise from a governmental licensing regulation until a license application has been denied, unless awaiting denial would be futile. *See Jackson-Bey*, 115 F.3d at 1096 (collecting cases). Thus, to have standing to obtain prospective relief against § 10-303 as it is currently implemented, Srour was required to either apply for a license and be denied, or make a substantial showing

22

that his application would be futile. *Antonyuk*, 2023 U.S. App. LEXIS 32492, at *63-66; *see also Libertarian Party v. Cuomo*, 970 F.3d 106, 116, 121-22 (2d Cir. 2020) (cleaned up), *abrogated on other grounds by Bruen*, 597 U.S. 1 (2022). He did neither one.

To be sure, in *Antonyuk*, this Court reached and passed on the constitutionality of the CCIA's character requirement, but that does not support a finding of standing on Srour's part, given key distinctions between the cases. The *Antonyuk* plaintiff who challenged the character requirement advanced a very different theory than Srour does here—objecting to the intrusiveness of the inquiry, not to having his character assessed as an eligibility requirement for licensure. 2023 U.S. App. LEXIS 32492, at *60-64. The *Antonyuk* decision explains that the futility rule does not apply when a plaintiff seeks to challenge a portion of the application process as unconstitutional—such as a mandated disclosure or interview requirement—in which case the injury flows from the application itself, not from a plaintiff's potential inability to obtain a license due to allegedly impermissible criteria. *Id*.

After all, the Court reasoned, it would make no sense to require an individual who objects to a component of an application as

23

unconstitutional to have to comply with the objected-to component to establish standing. *Id.* at *67; *see also Brokamp v. James*, 66 F.4th 374 (2d Cir. 2023) (finding that futility rule does not apply to a mental-health licensure requirement where the plaintiff's First Amendment free-speech challenge was to having to apply at all and "not to being denied a benefit" on unconstitutional grounds). The Court acknowledged that the *Antonyuk* plaintiff's challenge to the character requirement was somewhat different from his challenge to the mandated disclosures, but ultimately allowed the plaintiff to challenge the character requirement because the disclosures were "inextricable from"—allowing the licensing official to implement—the character requirement. 2023 U.S. App. LEXIS 32492, at *62-63. In "th[o]se particular circumstances," the Court held, a plaintiff could challenge the character requirement without first applying or showing futility. *Id.* at *63.

But Srour's claim is different. He does not object to the types of information that the NYPD sought as part of the permit application. He also does not challenge the baseline requirement of having to obtain a permit before keeping a rifle or shotgun in the City, or to provide information to the NYPD to allow the agency to access his character. He

challenges instead an eligibility criterion under which he speculates that he will be denied a permit in the future, just like the plaintiffs did in *Libertarian Party*. "Since the plaintiff's injury in such a case stems from his personal ineligibility for a license, the plaintiff must prove up that premise either by applying for a license or by making a substantial showing of futility." *Antonyuk*, 2023 U.S. App. LEXIS 32492, at *65-66. Having failed to make either of these showings, Srour did not establish standing to seek the prospective relief awarded by the district court.[9]

### 1. Srour was not denied a license under the present-day regulatory regime.

Srour failed to demonstrate an injury stemming from the permitting regime's present-day character requirement. Most basically, the district court failed to assess Srour's standing in light of the pertinent legal landscape in full, which includes both the local law and its implementing regulation, which, paired together, define the present-day regulatory regime against which Srour sought prospective relief.

---

[9] This brief need not, and does not, address Srour's standing to seek retrospective relief based on the 2019 denial of his application for a rifle/shotgun permit. The district court did not determine Srour's entitlement to such relief, and therefore the issue is not before the Court on this appeal.

His rifle/shotgun permit application was denied in 2019 under the pre-*Bruen* regulatory regime. But in December 2022, the NYPD promulgated new regulations for rifle/shotgun permitting that incorporated the CCIA's definition of good moral character. Srour was not denied a license under the present-day rifle/shotgun permitting regime's character requirement. Because he has not suffered any injury fairly traceable to the current character requirement, and does not face a concrete risk of any future injury from this requirement, he lacks standing to prospectively challenge the application of § 10-303(a)(2). *See Lacewell v. Off. of the Comptroller of the Currency*, 999 F.3d 130, 141-42 (2d Cir. 2021) (explaining that Article III standing requires an injury-in-fact—a concrete, particularized, actual or imminent, and non-speculative invasion of a legally protected interest).

The district court concluded otherwise based on a misreading of state law. Putting great stock in the fact that the City Council did not amend § 10-303 after *Bruen*, the court mistakenly concluded that the character requirement remains unchanged since 2019, when his application was denied (SPA44). But it was error to view the local law's current character requirement divorced from the rest of the statutory and

26

regulatory scheme. As noted, the requirement is channeled by NYPD's rulemaking.

Indeed, the district court ignored several binding principles of New York law that apply when construing the Administrative Code. *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 497 (2d Cir. 2020) (federal courts must construe state law in line with how the state's highest court would resolve the uncertainty); *Xiang Fu He v. Troon Mgt., Inc.*, 34 N.Y.3d 167, 172 (2019) (the New York City Administrative Code is construed according to the principles of state statutory construction). Under New York law, ambiguities in statutes should be resolved in a way that avoids placing their constitutionality in doubt, *People v. Viviani*, 36 N.Y.3d 564, 579 (2021), and that harmonizes related provisions within a broader legislative scheme to render them compatible, *James B. Nutter & Co. v. Cnty. of Saratoga*, 39 N.Y.3d 350, 355 (2023). What's more, agencies have discretion to flesh out broad statutory terms in the statutes they administer, *Am. Tel. & Tel. Co. v. State Tax Comm'n*, 61 N.Y.2d 393, 400 (1984), and an implementing agency's rational construction of statutory language is typically "entitled to deference," *Raritan Dev. Corp. v. Silva*, 91 N.Y.2d 98, 102-103 (1997).

These principles of New York law are especially fitting in their application here, where the local law governing rifle and shotgun permitting was patterned on the State's handgun-licensing statute to begin with, and where the intervening changes to NYPD's regulations track the definition of "good moral character" added to the state statute in response to *Bruen*. The district court failed to recognize that § 10-303(a)(2) does not, and has never, defined "good moral character," instead leaving the task of operationalizing the standard to the NYPD Commissioner's implementing regulation. And the definition of "good moral character" provided by the current version of that regulation, which the district court improperly ignored, is rational, avoids potential constitutional questions, and harmonizes the local law with the state statute that the law was drafted to track.[10] The rule change provides clear evidence of how the License Division will apply § 10-303 going forward, and under New York statutory-interpretation principles, the district court should have given the rule significant weight. Yet the

---

[10] The CCIA, in turn, adopted a standard that was discussed with approval in *Bruen*, which specifically observed that licensing statutes that may appear open-ended on their face may nonetheless pass constitutional muster by virtue of being channeled in practice. *Bruen*, 597 U.S. at 13 n.1.

28

district court leapt to the conclusion that the purportedly open-ended pre-*Bruen* standard for good moral character would continue to apply in the future (SPA45). Even if that were a fair description of the regulatory regime before *Bruen* (and it is not), application of the Administrative Code's good-moral-character provision is now formally defined by the NYPD's rules in a manner that aligns with *Bruen* and the CCIA.

Contrary to the district court view, it is of no moment that the text of § 10-303 didn't change after *Bruen*. There was no need for the City Council to amend § 10-303 because the NYPD had clarified that it would construe the character requirement in the local law in line with *Bruen* and with the state statute that was the local law's inspiration from the start. 38 R.C.N.Y. §§ 3-03 and 5-10; *see also* Notice of Adoption at 4. Indeed, as noted, NYPD has long supplied the applicable standard through rulemaking.

In short, Srour has not demonstrated that he was denied a license due to § 10-303's present-day character requirement or otherwise injured by the provision.

## 2. Srour failed to demonstrate futility.

Nor did Srour show that reapplying would have been futile. Intervening changes in the regulatory landscape and the passage of significant time preclude Srour from making a "substantial showing" of futility. *Libertarian Party*, 970 F.3d at 116.

First, as noted, there have been substantial changes in the pertinent legal landscape. Between when Srour's 2019 application was denied and the district court ruled, the following key events occurred: (1) in June 2022, the Supreme Court decided *Bruen,* upending Second Amendment jurisprudence; (2) the next month, the State enacted the CCIA, adopting a definition of good moral character for handgun licensing similar to a Connecticut standard specifically blessed in *Bruen*, and eliminating a catch-all provision that had allowed for license denials for "other good cause"; and (3) in December 2022, the NYPD promulgated new regulations for rifle/shotgun permitting that incorporated the CCIA's definition of good moral character and eliminated a similar catch-all. *Bruen*, the CCIA, and the new NYPD regulations significantly changed firearm licensing, so a new application by Srour would be reviewed under a materially different standard.

30

Second, the passage of time also prevents Srour from making a "substantial showing" of futility. *Libertarian Party*, 970 F.3d at 116. Five years have elapsed since he submitted his rifle/shotgun application. The regulation provides that "the License Division shall consider all relevant factors, including but not limited to the number, *recency* and severity of [misconduct] incidents." 38 R.C.N.Y. § 3-03 (emphasis added). In 2018, Srour initially concealed from the License Division that he was twice arrested on violent charges, and he also had a long history of ignoring licensing rules as evidenced by his driving record (A129, 104). These facts underlay the agency's license denial in 2019, but they are not automatic disqualifiers; on a fresh application under the current scheme the agency will consider his explanation for his initial lack of candor and the recency of these incidents to determine whether Srour has the "essential character, temperament and judgment" to safely keep a rifle or shotgun. 38 R.C.N.Y. § 3-03.

The district court's grant of prospective relief is all the more puzzling because the court correctly understood that Srour lacked standing to challenge the current versions of the NYPD's regulations—including 38 R.C.N.Y. § 3-03, the rifle/shotgun regulation that

31

implements § 10-303(a)(2)—because he had "alleged no injury in fact arising from the current version" of the regulations (SPA22). The court observed that Srour "has not been denied permission to possess firearms pursuant to a City official's application of the current version of either Section 3-03 or Section 5-10," could not "bring a preemptive challenge against the amended provisions prior to being denied a license or permit under them," and had not "reapplied for such a license or permit" (*id.*). Yet the court paradoxically found that Srour had standing to be awarded declaratory relief and a permanent injunction against enforcement of the local law that 38 R.C.N.Y. § 3-03 both implements and construes. This logical inconsistency confirms that the court erred in finding that Srour had standing.

**B. The character requirement as currently implemented is constitutionally sound.**

The standing defect is enough to warrant reversal, but the district court's constitutional analysis was also incorrect. This Court's precedential decision in *Antonyuk* upholding the CCIA's parallel character requirement establishes as much. Even if it were necessary to

undertake the historical analysis anew, § 10-303(a)(2)'s character requirement fully comports with *Bruen*.

*Antonyuk*'s upholding of the CCIA's character requirement is dispositive of Srour's facial challenge. 2023 U.S. App. LEXIS 32492, at *68-101. Although the decision addressed a provision of state law regarding handgun licensing, it answers the questions presented here because, as discussed, § 10-303(a)(2) parallels Penal Law § 400.00(1)(b), the State's provision that was at issue in *Antonyuk*.

The district court concluded that § 10-303(a)(2) was facially unconstitutional because "the very notion[] of 'good moral character'" is "inherently exceedingly broad and discretionary" and cannot be reconciled with *Bruen* (SPA30). But *Antonyuk* rejected that very argument. The Court held that "[a] reasoned denial of a carry license to a person who, if armed, would pose a danger to themselves, others, or to the public is consistent with the well-recognized historical tradition of preventing dangerous individuals from possessing weapons." *Antonyuk*, 2023 U.S. App. LEXIS 32492, at *57. This Court emphasized that *Bruen*, 597 U.S. at 13 n.1, had endorsed licensing regimes that "confer some measure of discretion," with many, such as Connecticut's, "using terms

that are nearly identical to New York's character requirement." *Antonyuk*, 2023 U.S. App. LEXIS 32492, at *96. *Antonyuk* thus refutes the district court's conclusion that § 10-303(a)(2)'s character requirement affords licensing officials impermissible discretion and is inconsistent with *Bruen* (SPA26-41). This Court need go no further to reverse.

Even if *Antonyuk*'s approval of the CCIA's character requirement did not directly apply, the Court's unanimous and thorough reasoning is directly on point and all but compels reversal here. In particular, *Antonyuk*'s assessment of the relevant historical evidence, some of which the City highlighted in this case below, shows that the district court erred by holding that § 10-303(a)(2)'s character requirement was out of line with historical traditions of gun regulation.

*Bruen* announced that Second Amendment challenges should be analyzed in two steps. 597 U.S. at 17. A court must first assess whether "the Second Amendment's plain text covers [the challenger's] conduct." *Id.* If it does, "the Constitution presumptively protects the conduct," and, at the second step, the government "must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19, 24. Here, at

34

the second step, the district court mistakenly found "no evidence in the historical materials" of a tradition of disarming individuals perceived as dangerous based on any discretionary factors (SPA33-40).[11] But, in *Antonyuk*, this Court surveyed case law and historical evidence and found "widespread agreement" on a relevant tradition of preventing dangerous individuals from carrying guns, 2023 U.S. App. LEXIS 32492, at *73-74 & n. 23, and allowing licensing officials bounded discretion to assess dangerousness, *id.* at *79-94.

The historical evidence confirms as much. At the Founding, states routinely disarmed individuals who were not considered loyal and responsible, such as individuals who had supported Britain during the Revolutionary War.[12] By Reconstruction, there was a tradition of protecting the right of "all loyal and well-disposed inhabitants to bear

---

[11] *Antonyuk* left open whether a character-based eligibility standard that merely ensures that applicants are law-abiding and responsible even registers against the text of the Second Amendment at *Bruen*'s first step. 2023 U.S. App. LEXIS 32492, at *70-72. Here, too, there is no need to "opin[e] on [this] tricky question with wide-ranging implications," *id.* at *72, because the character requirement easily passes muster at *Bruen*'s second step.

[12] See, e.g., the 1776-77 edition of the Laws Enacted in the First Sitting of the First General Assembly of the Commonwealth of Pennsylvania, which included "An ACT, obliging the male white inhabitants of this state to give assurances of allegiance to the same…"

arms," while excluding dangerous and incompetent people from bearing arms. *See Bruen*, 597 U.S. at 63 (quoting Cong. Globe, 39th Cong., 1st Sess., at 908-09, which disarmed any "disorderly person, vagrant, or disturber of the peace"); *see also District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008) (noting that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill").

The historical tradition also includes close analogues to New York's character requirement. *Antonyuk*, 2023 U.S. App. LEXIS 32492, at *70-79. *Antonyuk* observed that a great number of "firearm licensing schemes from the years immediately following ratification of the Fourteenth Amendment … authorized a local official to issue permits in his limited discretion," relying on a catalog of 43 licensing ordinances. *Id.* at *80 n.28. The Court reviewed state and local licensing regimes that were adopted across the country and emphasized that they existed without raising constitutional qualms or facing legal challenges. *Id.* at 80-85 & n.28-33.

The district court discounted the very same historical laws on which *Antonyuk* relied, on the mistaken belief that those laws did not allow for

36

any consideration of discretionary factors (SPA33-40). But this Court specifically found that the historical evidence supports licensing officials making individualized assessments of applicants' dangerousness. *Antonyuk*, 2023 U.S. App. LEXIS 32492, at *94-101.

In concluding otherwise, the district court misapplied *Bruen* by effectively demanding that the City supply a "historical twin" instead of engaging in analogical reasoning. *Bruen*, 597 U.S. at 30 (cleaned up); *Antonyuk*, 2023 U.S. App. LEXIS 32492, at *43-46. But *Bruen* teaches that courts must judge whether the "historical regulation is a proper analogue" by assessing "how and why the regulations burden a law-abiding citizen's right to armed self-defense." 597 U.S. at 29. A modern regulation survives scrutiny if it "impose[s] a comparable burden on the right of armed self-defense" and "that burden is comparably justified." *Id*. *Bruen* stressed that "analogical reasoning requires only that the government identify a well-established and representative historical analogue." *Id*. at 30.

Because the district court took too rigid of an approach to analogical reasoning, it mistakenly concluded that historical laws that predated licensing, such as surety laws and laws disarming individuals deemed

37

dangerous, were not similar enough to licensing regimes (SPA33-40). For instance, although surety laws and historical "affray" laws conferred discretion on officials to disarm individuals deemed to pose a public safety risk, the court found them insufficiently similar to a licensing scheme (SPA36-40). But this Court recognized in *Antonyuk* that the surety systems that predated licensing are relevant historical antecedents, and that, around the time of the Civil War, surety schemes were "gradually phased out in favor of … armed carriage licensing laws." *Antonyuk*, 2023 U.S. App. LEXIS 32492, at 93 n.41 (cleaned up). The fact that different approaches were tried before individualized licensing was adopted does not show that licensing is inconsistent with the original public understanding of the Second Amendment.

Finally, *Antonyuk* also confirms that the district court's facial invalidation and permanent injunction of § 10-303(a)(2) was misguided. This Court rejected a facial challenge to the CCIA's character requirement after finding that there is a likely set of circumstances under which the requirement would be lawfully applied to prevent the carrying of firearms by dangerous individuals consistent with the original public understanding of the Second Amendment. 2023 U.S. App. LEXIS 32492,

at \*70-79. The Court found that the character requirement has a "plainly legitimate sweep," and any impermissible license denials can "be vindicated in court as they arise." *Id.* at \*73-74, 77 (cleaned up). But here, the district court reasoned that § 10-303(a)(2) is facially invalid in all applications because *any* permit denial under it is "an unconstitutional exercise of discretion" (SPA40). *Antonyuk* precludes such broad-brush reasoning and provides yet another reason to vacate the district court's sweeping entry of a permanent injunction against any consideration of § 10-303(a)(2)'s character requirement.

### C. The remaining factors also cut against the injunction entered by the district court.

Even putting the merits to one side, a permanent injunction is also improper under the remaining injunction factors.

On one side of the scale, Srour is completely unharmed by § 10-303's character requirement, as currently implemented, for essentially the same reasons that he lacks standing; he has never been denied a license under it and has not shown that applying would be futile. He needs no injunction to have an application considered under the current, constitutional scheme. Indeed, during the pendency of this appeal, he

submitted a new application for a rifle/shotgun permit that is being considered under the post-*Bruen* permitting standards, as the Second Amendment requires. Srour has no present interest in the sweeping, permanent injunction imposed by the district court.

Moreover, Srour seemed to concede that the relief he obtained from the district court is ineffective by filing a second lawsuit seeking an additional injunction against the enforcement of the present-day version of the NYPD's implementing regulations. Srour's second lawsuit begs the question of what he achieved when the district court cleaved the local law from the current version of its implementing regulation.

On the other side of the scale, the public interest tips strongly in the City's favor. Equitable relief barring enforcement of a duly enacted local law runs contrary to the public interests that the City Council intended to protect. The character requirement has been a facet of firearms licensing in the State since 1913. *See* 1913 N.Y. Laws ch. 608, § 1. And it has been a part of rifle/shotgun permitting in New York City since 1967. *Grimm*, 56 Misc. 2d at 525. The requirement ensures that applicants are responsible and law-abiding, and so can be entrusted with deadly weapons in New York City. *Antonyuk*, 2023 U.S. App. LEXIS

40

32492, at *71-76. The district court's permanent injunction and declaratory relief against the character requirement as applied to rifle/shotgun permitting would undermine the important public-safety interests served by this longstanding requirement.

Most basically, frustrating the legislative judgments of the City's and State's policymakers would itself cause irreparable harm to the City and its inhabitants. *See Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (quotation marks omitted)).

Moreover, by issuing relief reaching beyond the parties in the case, the district court risked grave, real-world repercussions. *See United States v. Texas*, 143 S. Ct. 1964, 1980 (2023) (Gorsuch, J., concurring in the judgment) (discussing the proper scope of injunctive relief with respect to parties and nonparties); *Trump v. Hawaii*, 138 S. Ct. 2392, 2427-28 (2018) (Thomas, J., concurring) (expressing skepticism that the judicial power allows courts to order equitable relief beyond the parties). The district court "permanently enjoin[ed]" the NYPD from enforcing § 10-303(a)(2) when considering any future rifle/shotgun applications

41

(SPA47). Since the implementing regulation seemingly can have no effect apart from its underlying statute, the result of the injunction would be that the License Division could not deny an application even if the applicant clearly lacked "the essential character, temperament and judgment necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others" unless an applicant is also separately disqualified from possessing a rifle or shotgun under a different provision of federal, state, or local law. 38 R.C.N.Y. § 3-03.

Thus, if the injunction goes into effect, the City will be barred from denying a permit to keep a rifle or shotgun in New York City to an applicant who has repeatedly and recently been indicted on violent criminal charges, such as domestic-violence charges, or made egregious false statements on the application. These facts, while plainly relevant to the applicant's ability to safely possess a rifle or shotgun, would not trigger any per se disqualifier for a permit. *Id.* § 3-03(a), (e). The permanent injunction thus threatens to cause real-world harm.

The district court's injunction of the character requirement for rifle/shotgun permitting in the City also threatens substantial confusion because the CCIA's identical character requirement has been upheld in

42

*Antonyuk*. Here, for example, Srour applied for both a handgun license and rifle/shotgun permit, which were denied in 2019 on character grounds, and has since reapplied for both. Under the district court's injunction, a person determined to be unsuitable to possess a handgun could nonetheless be issued a permit to possess a rifle or shotgun in New York City. It would be odd and undesirable to force divergent approaches to the character requirements in the parallel handgun-license and rifle/shotgun-permit schemes, in addition to posing a significant risk to public safety.

## CONCLUSION

This Court should reverse the district court's decision and order and vacate the award of permanent injunctive relief.

Dated:  New York, NY
         February 12, 2024

Respectfully submitted,

HON SYLVIA O. HINDS-RADIX
*Corporation Counsel*
*of the City of New York*
Attorney for Appellants

By:  __/s/ Claude S. Platton__
     CLAUDE S. PLATTON
     Assistant Corporation Counsel

     100 Church Street
     New York, NY 10007
     212-356-2502
     cplatton@law.nyc.gov

RICHARD DEARING
CLAUDE S. PLATTON
ELINA DRUKER
  *of Counsel*

44

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared using Microsoft Word 2010, and according to that software, it contains 8,300 words, not including the table of contents, table of authorities, this certificate, and the cover.

_____/s/ Claude S. Platton_____
CLAUDE S. PLATTON