# 23-7549

---

## United States Court of Appeals
## for the Second Circuit

---

JOSEPH SROUR,

*Plaintiff-Appellee,*

*against*

NEW YORK CITY, NEW YORK, and EDWARD A. CABAN,

*Defendants-Appellants,*

KEECHANT SEWELL, in her Official Capacity as NYPD
Police Commissioner,

*Defendant.*

---

On Appeal from the United States District Court
for the Southern District of New York

---

## REPLY BRIEF

---

HON SYLVIA O. HINDS-RADIX
*Corporation Counsel*
*of the City of New York*
Attorney for Appellants
100 Church Street
New York, New York 10007
212-356-2609 or -2502
edruker@law.nyc.gov

RICHARD DEARING
CLAUDE S. PLATTON
ELINA DRUKER
*of Counsel*

April 10, 2024

Reproduced on Recycled Paper

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ii

PRELIMINARY STATEMENT ................................................................. 1

ARGUMENT ............................................................................................. 3

    THE COURT SHOULD VACATE, OR REVERSE, THE
    DISTRICT COURT'S GRANT OF DECLARATORY AND
    INJUNCTIVE RELIEF AGAINST § 10-303 ................................... 3

    A. Srour's prospective claims are now moot because he was
       issued a rifle/shotgun permit, and this Court should
       vacate the district court's decision. ............................................ 3

    B. Srour lacked standing to obtain prospective relief against
       the current scheme for rifle/shotgun licensing. ....................... 11

    C. None of Srour's arguments on the merits hold water.............. 15

       1. Srour doubles down on the fundamental errors about
        .New York law that pervade the district court's
        decision. ................................................................................ 16

       2. Srour fails to offer a credible defense of the district
        court's flawed constitutional analysis. ................................. 19

    D. The balance of equities tips against injunctive relief. ............ 27

CONCLUSION ....................................................................................... 29

CERTIFICATE OF COMPLIANCE........................................................ 30

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Antonyuk v. Chiumento*,
No. 22-2908(L), 89 F.4th 271, 2023 U.S. App. LEXIS
32492 (2d Cir. Dec. 8, 2023)...................................................... *passim*

*Arizonans for Off. English v. Arizona*,
520 U.S. 43 (1997)................................................................7

*Camreta v. Greene*,
563 U.S. 692 (2011).............................................................8

*Capen v. Campbell*,
Civil Action No. 22-11431, 2023 U.S. Dist. LEXIS 227385
(D. Mass. Dec. 21, 2023) .....................................................24

*Connecticut Citizens Defense League, Inc. v Lamont*,
6 F.4th 439 (2d Cir. 2021).....................................................6

*Deem v. Dimella-Deem*,
941 F.3d 618 (2d Cir. 2019) ...............................................20

*Dorce v. City of N.Y.*,
2 F.4th 82 (2d Cir. 2021)........................................................6

*Hassoun v. Searls*,
976 F.3d 121 (2d. Cir. 2020) ....................................... 7, 9, 10

*Havens v. James*,
76 F.4th 103 (2d Cir. 2023)..................................................23

*Irish Lesbian & Gay Org. v. Giuliani*,
143 F.3d 638 (2d Cir. 1998) ...............................................20

*Matter of Juarez v. N.Y. State Off. of Victim Servs.*,
36 N.Y.3d 485 (2021) .........................................................18

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Kalimian v. Liberty Mut. Fire Ins. Co.,*
300 F.2d 547 (2d Cir. 1962) ............................................................... 10

*Kisor v. Wilkie,*
139 S. Ct. 2400 (2019) ...................................................................... 17

*Libertarian Party v. Cuomo,*
970 F.3d 106 (2d Cir. 2020) .............................................................. 12

*Marciano v. Adams,*
No. 22-570, 2023 U.S. App. LEXIS 11915 (2d Cir. May 16,
2023) ................................................................................................... 9

*Mastrovincenzo v. City of N.Y.,*
435 F.3d 78 (2d Cir. 2006) ................................................................ 20

*New York v. Actavis PLC,*
787 F.3d 638 (2d Cir. 2015) .............................................................. 20

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
142 S. Ct. 2111 (2022) ............................................................... *passim*

*N.Y. State Rifle & Pistol Ass'n v. City of N.Y.,*
140 S. Ct. 1525 (2020) ........................................................................ 5

*Raffellini v. State Farm Mut. Auto. Ins. Co.,*
9 N.Y.3d 196 (2007) ......................................................................... 17

*United States v. Munsingwear, Inc.,*
340 U.S. 36 (1950) ......................................................................... 7, 8

*Uzuegbunam v. Preczewski,*
141 S. Ct. 792 (2021) ........................................................................ 12

*Vidal v. S. Am. Sec. Co.,*
276 F. 855 (2d Cir. 1921) .................................................................. 11

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Virginia House of Delegates v. Bethune-Hill,*
139 S. Ct. 1945 (2019)............................................................... 12

**Statutes, Rules, and Regulations**

N.Y. Penal L. § 400.00............................................................... 25

New York City Administrative Code § 10-303(a)(2)...................... *passim*

New York City Administrative Code § 10-303(f) ................................. 17

New York City Charter § 1043................................................. 17

New York City Charter § 389.................................................. 17

38 R.C.N.Y. § 3-03 ........................................................... *passim*

## PRELIMINARY STATEMENT

In this action, plaintiff-appellee Joseph Srour sought prospective relief against the "good moral character" requirement of New York City Administrative Code § 10-303(a)(2), which he contended was a barrier to his receipt of a permit to possess a rifle or shotgun in his home. After defendants-appellants ("the City") noticed this appeal, Srour submitted a new permit application, and in March 2024, the NYPD License Division granted it, applying the character requirement. Since there is no live controversy over whether § 10-303(a)(2) would prevent Srour from obtaining a permit, this Court should dismiss the appeal as moot. In doing so, it should vacate the district court's now-unreviewable decision, which bars enforcement of the character requirement as to any applicant.

As yet another compelling reason for vacatur, or alternatively for reversal, the recent license grant also confirms that Srour lacked standing to seek prospective relief against § 10-303(a)(2) before the district court. As our opening brief explained, when Srour sought that relief, he had not been denied a license under the current permitting scheme and could not show that applying anew would have been futile. And indeed, it is now abundantly clear that it would not have been futile.

Srour's opposition also fails to grapple with another of the City's primary arguments for reversal: that the district court mistakenly read § 10-303(a)(2) without reference to the NYPD's implementing regulation, 38 R.C.N.Y. § 3-03, which gives substance to the character requirement and channels its application, and which was amended in 2022. Construed together with the regulation, as New York law requires, § 10-303(a)(2)'s present-day character requirement is substantively indistinguishable from the State's character requirement for handgun licensing that the Court upheld against a facial Second Amendment challenge in *Antonyuk v. Chiumento*, 89 F.4th 271 (2d Cir. 2023).

Srour is simply wrong in his suggestion that *Antonyuk*, a precedential decision of this Court, is somehow not binding because it resulted from the appeal of a preliminary injunction. And Srour's attempt to distinguish the decision because it concerned handgun licensing also falls flat. As our opening brief explained, § 10-303(a)(2)'s character requirement is part of the historical tradition of disarming dangerous individuals. That tradition did not depend on the type of firearm at issue, and, indeed, analogous Founding-era laws likely disarmed people mainly of long guns, which were then the most common firearms.

2

Finally, Srour has no answer to the City's showing that the other injunction factors weigh against permanent injunctive relief. Srour faced no risk of irreparable injury since he never established that the current permitting scheme was a barrier to having his application for a permit considered and potentially approved, as is evident from the fact that the NYPD has now granted him a rifle/shotgun permit under the current standards. But the district court's universal injunction would frustrate the administration of the City's permitting scheme and threaten to undermine public safety by removing a key mechanism for keeping rifles and shotguns out of the hands of dangerous individuals. For these reasons, too, if the Court does not find the case moot and vacate the decision below, it should reverse.

## ARGUMENT

### THE COURT SHOULD VACATE, OR REVERSE, THE DISTRICT COURT'S GRANT OF DECLARATORY AND INJUNCTIVE RELIEF AGAINST § 10-303

**A. Srour's prospective claims are now moot because he was issued a rifle/shotgun permit, and this Court should vacate the district court's decision.**

Recent events have rendered this appeal moot. On March 21, 2024, the NYPD License Division granted Srour's rifle/shotgun application, as

3

well as his applications for concealed-carry and premises handgun licenses—all of which Srour submitted in October 2023, after the district court granted him declaratory and permanent-injunctive relief, and after the City filed its notice of appeal. *See* SDNY Case No. 23-CV-9489, ECF No. 14. Because the district court's permanent injunction was stayed pending appeal throughout the application process, Srour's application for a rifle/shotgun permit was reviewed and granted under the very framework he challenges, including the character requirement of § 10-303(a)(2) and its implementing regulation, 38 R.C.N.Y. § 3-03.[1] Since Srour now has the permit that he sought, he no longer has any interest in the prospective relief at issue in this appeal.[2] The appeal is moot, and the decision on appeal should be vacated.

---

[1] The City stands ready to submit this administrative determination for the Court's review.

[2] There is no nonspeculative basis to conclude that Srour will be subject to the character requirement for rifle/shotgun permitting again in the future. A rifle/shotgun permit is valid for three years, and, once issued, the permit is presumptively subject to automatic renewal, meaning that a permit holder's moral character is not reassessed upon renewal unless new facts come to light. *See* N.Y.C. Admin. Code § 10-303(f) ("A permit shall be valid for three (3) years and shall be subject to automatic renewal, upon sworn application, and without investigation, unless the police commissioner has reason to believe that the status of the applicant has changed since the previous application.").

The premise of Srour's challenge to the current permitting scheme, and his purported basis for standing to seek prospective relief against it, was his assertion that the character requirement posed a barrier to his receipt of a rifle/shotgun permit (*see* A40-41). To be clear, Srour brought suit before the NYPD amended its regulation and sought damages for the denial of his 2019 application, as well as prospective relief. In December 2022, the NYPD amended its regulation, mooting any prospective challenge to the pre-December-2022 rifle/shotgun character requirement. *See N.Y. State Rifle & Pistol Ass'n v. City of N.Y.*, 140 S. Ct. 1525, 1526 (2020) (once a rule is amended, "declaratory and injunctive relief [claims] with respect to the … old rule [become] moot," although a plaintiff might be able to pursue a "residual claim under the new framework"). At that point, he pursued what was effectively a new claim—one seeking prospective relief against the post-December-2022 character requirement. The district court granted that relief even though, as discussed below (*see supra* Point B), he lacked standing to pursue it. This new claim, if it were ever justiciable, is now moot in light of the grant of a rifle/shotgun permit.

5

To satisfy the injury prong of the standing inquiry to seek injunctive and declaratory relief, Srour could not rely on his past alleged injury, but was required to show a likelihood that he would be injured in the future. *Dorce v. City of N.Y.*, 2 F.4th 82, 95 (2d Cir. 2021). Thus, to demonstrate that he had a stake in the outcome of his forward-looking claims, he was required to show "a substantial risk" that a "real and immediate" threatened injury was "certainly impending." *Id.* He attempted to meet this standard by arguing that the post-December-2022 character requirement would inevitably lead to the denial of any newly submitted permit application.

The mootness doctrine ensures that a litigant's interest in the outcome of a case remains "throughout the life of the lawsuit." *Connecticut Citizens Defense League, Inc. v Lamont*, 6 F.4th 439, 444 (2d Cir. 2021). If, "as a result of changed circumstances, [a claim] that presented an actual redressable injury at the time it was filed ceases to involve such an injury, it ceases to fall within a federal court's Article III subject matter jurisdiction and must be dismissed for mootness." *Id.*

6

(cleaned up).[3] In other words, an appeal becomes moot when "the issues presented are no longer live and the parties lack a legally cognizable interest in the outcome of th[e] appeal." *Hassoun v. Searls*, 976 F.3d 121, 130 (2d. Cir. 2020) (cleaned up). Because Srour now has obtained what he sought to achieve via his claims for declaratory and prospective relief, he can no longer claim that the character requirement is a barrier to his obtaining a permit, and, so, no longer has an interest in the outcome of this appeal—which is limited to those claims.

When claims become moot while on appeal, appellate courts generally vacate the judgment, or remand with instructions for the district court do so. *Arizonans for Off. English v. Arizona*, 520 U.S. 43, 71 (1997). Courts follow this practice "to prevent a judgment, unreviewable because of mootness, from spawning any legal consequences." *United States v. Munsingwear, Inc.*, 340 U.S. 36, 41 (1950).

Here, the district court's permanent injunction would have significant legal consequences if left undisturbed after the appeal is dismissed. As we have explained (App. Br. 41-42), the district court

---

[3] This brief uses "cleaned up" to indicate that internal quotation marks, alterations, or citations have been omitted from quotations.

improperly granted relief reaching beyond the parties to the case, precluding the NYPD License Division from applying the character requirement to any future applicant for a rifle/shotgun permit. Vacatur is appropriate to prevent those far-reaching effects from continuing indefinitely, beyond the reach of appellate review. *See Camreta v. Greene*, 563 U.S. 692, 713 (2011) (explaining that courts should vacate an "unreviewable," yet "legally consequential decision" that would otherwise "govern future cases" to strip the decision of its binding effect and clear the path for future litigation).

Moreover, as discussed further below, the granting of Srour's application confirms that the district court lacked subject-matter jurisdiction when it ruled on Srour's claims for prospective relief, since it plainly was not futile for Srour to reapply under the new permitting standard. This is a marked departure from the typical *Munsingwear* case, where events during the appeal deprive the courts of subject-matter jurisdiction that it once had. Since the district court lacked jurisdiction even when it granted declaratory and injunctive relief, the need for vacatur is all more the pressing.

To be sure, an appellant cannot intentionally moot an appeal to escape an unfavorable district-court decision. If an appellant "voluntarily acts with an intent that the appeal become moot," this will "constitute forfeiture of the benefit of vacatur." *Hassoun*, 976 F.3d at 131 (cleaned up). But "conduct that is voluntary in the sense of being non-accidental, but which is entirely unrelated to the lawsuit, should not preclude [this Court from] vacating the decision below." *Id.* (cleaned up).

This Court's decision in *Hassoun* is instructive. There, the district court granted a habeas corpus petition directing the release of an individual who was in immigration detention. 976 F.3d at 126-31. The government appealed, obtained a stay pending appeal, and, while the appeal was pending, removed the individual from the country. *Id.* at 126-27. This Court held that the appeal was moot and directed vacatur of the district court's decision, reasoning that the government did not remove the individual with the intention of depriving the Court of jurisdiction, but instead as part of the "typical progression of events," given the government's statutory duty to enforce a removal order within 90 days. *Id.* at 131; *see also Marciano v. Adams*, No. 22-570, 2023 U.S. App. LEXIS 11915, at *5 (2d Cir. May 16, 2023) (vacating decision on appeal, where

appellant who challenged a vaccination requirement did not "deliberately moot[] the appeal" when he got vaccinated).

Here, likewise, the License Division processed Srour's permit application in the ordinary course of business and in furtherance of its legal duties, in response to an application that Srour submitted in October 2023, while this appeal was pending. The appeal thus became moot through the "typical progression of events," and not because of any intention on the City's part to deprive this Court of jurisdiction, *Hassoun*, 976 F.3d at 131, so there is no barrier to vacatur of the district court's decision.

Perhaps having anticipated this result, Srour argues that his recent rifle/shotgun application, and any possible developments that post-date the denial of his 2019 application are "outside of the record" and thus "immaterial and extraneous" on appeal (Brief for Appellee ("Opp. Br.") 16-17). He is mistaken. Indeed, "[i]f such were the rule no case would ever be dismissed as moot due to occurrences pending appeal." *Kalimian v. Liberty Mut. Fire Ins. Co.*, 300 F.2d 547, 549 (2d Cir. 1962). It is foundational that appellate courts can consider developments that occur while the appeal is pending that may affect their subject-matter

10

jurisdiction. *Id.*; *see Vidal v. S. Am. Sec. Co.*, 276 F. 855, 874 (2d Cir. 1921) ("[F]acts which have occurred since the decree and which make the question at issue moot and which are outside of the record may be proved by extrinsic evidence."). Thus, to prevent the district court's unreviewable decision from having legal consequences, this Court should vacate it without reaching the merits.

## B. Srour lacked standing to obtain prospective relief against the current scheme for rifle/shotgun licensing.

If the Court continues to entertain the appeal, it should reverse on the ground that Srour lacked standing to seek prospective relief against § 10-303(a)(2)'s current character requirement.

Srour points to the 2019 denial of his permit application (Opp. Br. 14), but this alleged past injury cannot support his claim for prospective, injunctive relief. As we have explained (*see* Brief for Appellants ("App. Br.") 21-32), to establish a cognizable injury-in-fact sufficient to assert a claim for prospective relief against future applications of the rifle/shotgun standards, Srour needed to show either that he had applied for a license under the current permitting regime and been denied or that applying would have been futile. *Antonyuk*, 89 F.4th at 309-11; *see also*

11

*Libertarian Party v. Cuomo*, 970 F.3d 106, 116, 121-22 (2d Cir. 2020) (cleaned up), *abrogated on other grounds by New York State Rifle & Pistol Ass'n, Inc. v. Bruen,* 142 S. Ct. 2111 (2022). He did neither, and so lacked standing before the district court to obtain a permanent injunction against § 10-303(a)(2). The point is even clearer now that he has applied for and been granted a permit, which confirms that it would not have been futile for him to apply before seeking prospective relief.

In response, Srour argues that his standing should be evaluated as of the time he commenced his case in January 2022 (Opp. Br. 13-14).[4] But "a plaintiff must maintain a personal interest in the dispute at every stage of litigation, including when judgment is entered, and must do so separately for each form of relief sought." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021) (cleaned up). "Although rulings on standing often turn on a plaintiff's stake in initially filing suit, Article III demands that an 'actual controversy' persist throughout all stages of litigation." *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1950-51 (2019) (cleaned up). When Srour brought this action in 2022, he may have

---

[4] Srour mistakenly states that the complaint was filed in 2020 (Opp. Br. 14, 17), but in fact he filed it on January 2, 2022 (A3, 44).

12

had standing to challenge the 2019 denial of his previous permit application, but that denial did not confer standing to seek prospective relief against the current permitting scheme, which changed substantially several months later.

Srour has no answer to this basic disconnect between his purported injury in fact and the relief the district court granted him. Indeed, he makes no attempt to defend the puzzling inconsistency at the heart of the district court's standing analysis: its decision to sever the local law from its implementing regulation, 38 R.C.N.Y. § 3-03, and to invalidate the local law, while holding that Srour lacked standing to challenge the current version of the regulation because he had not sought a permit under it (SPA19-21). Srour's only response is to assert that the character requirement supposedly does not account for *Bruen* because the City Council did not amend § 10-303(a)(2) after the Supreme Court issued its decision (Opp. Br. 19-21). But Srour fails to contend with the change in 38 R.C.N.Y. § 3-03, which, as discussed below and in the City's opening brief (at 25-29), constrains how any future permit application would be evaluated.

Srour seems to concede that the local law and its implementing regulation must be considered together when he emphasizes that the practical effect of the district court's decision to invalidate § 10-303(a)(2)'s character requirement is to also render 38 R.C.N.Y. § 3-03 inoperative.[5] The key standing question, then, is whether the present-day character requirement of the local law, as given substance and channeled by the regulation, posed an obstacle to Srour's ability to obtain a rifle/shotgun permit. Srour did not show before the district court that the current character requirement caused him an actual or imminent injury. And, in light of his recent success in obtaining a rifle/shotgun permit during the pendency of this appeal, he cannot show an injury-in-fact from the present-day character requirement now.

---

[5] The district court seemingly continues to believe that the implementing regulations can operate independently of the local law it invalidated, as shown by recent proceedings in Srour's follow-on challenge to the current permitting scheme, *Srour v. City of N.Y.*, SDNY Case No. 23-CV-9489, Dkt. No. 23. In December 2023, the district court concluded that Srour lacked standing to bring another pre-enforcement challenge to 38 R.C.N.Y. § 3-03, and observed that while Srour's 2019 denial was in large part attributable to his lack of candor during the application process, the agency could assess his character differently in the future because "Srour now understands the need for him to disclose … his complete arrest history." *Id.* at 6-7. The court evidently believes that it left some character requirement in place in the rifle/shotgun permitting scheme, *id.* at 11-14, despite having enjoined the local law that is its source.

## C. None of Srour's arguments on the merits hold water.

Srour's Second Amendment arguments are also unsound. As the City's opening brief showed, the district court misconstrued state law and misapplied Second Amendment standards. After the court granted Srour declaratory and permanent injunctive relief, this Court decided *Antonyuk,* upholding the CCIA's substantially similar character requirement and rejecting the same reasoning that undergirds the district court's decision. Try as he might to distinguish *Antonyuk* or pivot to a new theory, Srour cannot avoid the conclusion that *Antonyuk* compels reversal here. And even if *Antonyuk*'s approval of the State's character requirement for handgun licensing did not directly control, the decision's reasoning provides the methodological lens through which the relevant historical evidence here should be viewed. Applying *Antonyuk*'s approach, the City's historical evidence easily establishes that the character requirement is part of a longstanding historical tradition of firearms regulations.

## 1. Srour doubles down on the fundamental errors about New York law that pervade the district court's decision.

Srour's insistence that the district court "nullifie[d]" all authority to consider character in rifle/shotgun permitting (Opp. Br. 15), shines a spotlight on the district court's fundamental misunderstanding of New York law—a point that the City made in its opening brief to which Srour offers no persuasive response. As the City explained, the NYPD's December 2022 regulations implement § 10-303(a)(2)'s character requirement (App. Br. 25-30). In holding otherwise, the district court ignored binding principles of New York law that require deference to an administrative agency's implementing regulations, require harmonizing related provisions within a broader legislative scheme, and compel courts to avoid reading statutes in a manner that places their constitutionality in doubt whenever possible (*id.*).

Srour fails to meaningfully engage with the City's argument that the rifle/shotgun character requirement is defined by § 10-303(a)(2) as read in tandem with 38 R.C.N.Y. § 3-03 (*see* Opp. Br. 17-19). Instead, he attempts—without any legal citation—to diminish the significance of the regulation, suggesting it is a mere "internal policy" or "administrative

16

guideline" adopted at the police commissioner's whim, akin to a handbook (Opp. Br. 4, 15, 18-20). But the Rules of the City of New York are formal regulations—that is, they have the "force of law." *Raffellini v. State Farm Mut. Auto. Ins. Co.*, 9 N.Y.3d 196, 201 (2007) ("A duly promulgated regulation that [is not inconsistent with statutory language or purpose] has the force of law."). The NYPD's regulations are authorized by New York City Charter § 389 and adopted in accordance with the City Administrative Procedure Act, which requires a notice-and-comment period and public hearing, N.Y.C. Charter § 1043.

As a result, 38 R.C.N.Y. § 3-03 offers not mere guidance, but a binding standard for making the character determination. *Raffellini*, 9 N.Y.3d at 201; *cf. Kisor v. Wilkie*, 139 S. Ct. 2400, 2434 (2019) (Roberts, C.J., concurring) (explaining that a federal regulation adopted through notice-and-comment procedures "carries the force of law unless and until it is amended or repealed"). Thus, the local law and agency rule, together, control how the NYPD License Division will apply a rifle/shotgun character requirement.

Srour wrongly suggests that the City Council's choice not to define the phrase "good moral character" renders § 10-303(a)(2) impermissibly

17

"vague and overbroad" (Opp. Br. 23). Of course, no vagueness or overbreadth challenge was raised below, and the district court did not address such claims, so those matters are not before the Court. But, in any event, Srour is incorrect about the implications of the City Council's choice to adopt the character requirement without further elaborating the standard in a definition. New York legislative bodies routinely and appropriately expect administrative agencies will fill in statutory interstices through formal rulemaking. *See, e.g.*, *Matter of Juarez v. N.Y. State Off. of Victim Servs.*, 36 N.Y.3d 485, 492 (2021). The NYPD has long exercised this authority to flesh out the undefined term "good moral character" in § 10-303(a)(2). The character requirement in the City's rifle/shotgun permitting scheme must be evaluated not in the abstract, but based on how it operates in practice, incorporating the construction provided in 38 R.C.N.Y. § 3-03.

Thus, there is no merit to Srour's argument that the State's character requirement for handgun licensing that this Court upheld in *Antonyuk* is "significantly narrower" than the City's parallel requirement for rifle/shotgun permitting (Opp. Br. 37). This is just yet another iteration of the same argument, which asks the Court to read § 10-

18

303(a)(2) in a vacuum and to ignore that the City's character requirement is just like its mirror image in state law that this Court upheld in *Antonyuk*.

### 2. Srour fails to offer a credible defense of the district court's flawed constitutional analysis.

This Court may reverse the district court's evaluation of the merits without engaging in any independent historical analysis because, as explained in the City's opening brief (App. Br. 32-39), the City's character requirement for rifle/shotgun permitting mirrors the State's parallel requirement for handgun licenses that this Court upheld in *Antonyuk*, 89 F.4th 271, as consistent with the nation's historical tradition of gun regulation. *Antonyuk* is dispositive of the legal issues here. None of Srour's attempts to distinguish it supports invaliding the rifle/shotgun scheme's character requirement.

Srour asks this Court to disregard the thorough merits decision in *Antonyuk* because it came out of an appeal of preliminary-injunction decisions (Opp. Br. 33-35). This argument confuses two different concepts. It's true that a ruling on a preliminary injunction generally may be revisited at later stages of the same case as the record evolves. *See*

19

*Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644-45 (2d Cir. 1998) ("Ordinarily, findings of fact and conclusions of law made in a preliminary injunction proceeding do not preclude reexamination of the merits at a subsequent trial."). But that point has nothing to do with the precedential effect for other cases of a published panel decision deciding questions of law.

The general rule, of course, is that "a published panel decision is binding on future panels unless and until it is overruled by the Court *en banc* or by the Supreme Court," or "an intervening Supreme Court decision casts doubt on [it]." *Deem v. Dimella-Deem*, 941 F.3d 618, 623 (2d Cir. 2019). The rule makes no distinction based on the posture in which the appeal arose. And indeed, many of this Court's seminal and oft-cited precedents were made in the context of appeals of preliminary injunctions. *See, e.g., New York v. Actavis PLC*, 787 F.3d 638, 651-60 (2d Cir. 2015) (affirming preliminary injunction and holding that it was an antitrust violation for pharmaceutical company to withdraw drug with expiring patent from the market and to introduce new drug of the same type to perpetuate patent exclusivity and avoid competition with generic drugs); *Mastrovincenzo v. City of N.Y.*, 435 F.3d 78, 81 (2d Cir. 2006)

(vacating preliminary injunction entered against the City and holding that enforcing the City's licensing requirement for unlicensed street vendors against sidewalk purveyors of clothing painted with graffiti did not violate the First Amendment).

*Antonyuk*, a lengthy decision issued under the names of all three panel members, and this Court's first precedential Second Amendment decision after *Bruen*, is no less binding than these other precedents. It is irrelevant that the factual findings underlying the decision were made on a preliminary record; the Court's legal pronouncements in upholding the State's character requirement for handgun licensing, as well as its methodological guidance about how historical evidence should be assessed in Second Amendment cases, guide the analysis here. As with any precedent, Srour can try to distinguish it on its facts. But he cannot claim that it may simply be ignored.

Notwithstanding this Court's clear holding to the contrary in *Antonyuk*, Srour devotes many pages to arguing that there is no historical tradition, at all, of licensing firearms, or of licensing regimes that involved individualized assessments of applicants' dangerousness (R25-26, 28-31, 38, 44-46). But as we have explained (App. Br. 33-34),

that argument was decisively rejected by the Supreme Court in *Bruen* and by this Court in *Antonyuk*, the latter of which expressly identified a tradition of gun licensing that is rooted in the nation's history of disarming dangerous individuals, 89 F.4th at 317-25.

Srour next argues that *Antonyuk* is distinguishable because it is limited to handgun licensing and did not address rifle/shotguns permits, and because there supposedly is no historical tradition of regulating the possession of rifles and shotguns (R28-29, 31-32, 35). That distinction has never been the focus of this case, so was not the focus of the historical record that the parties made. Indeed, Srour challenged the character requirement for both rifle/shotgun permitting and handgun licensing without drawing any distinction between them. And the district court did not identify any differences between long guns and handguns when distinguishing the City's proffered historical laws or cite any such differences when concluding that the rifle/shotgun character requirement allowed for too much discretion. The court did not even consider whether there was a sufficient historical tradition of long-gun licensing. Rather, it ruled on the basis that the character standard was supposedly too open-ended and discretionary. This new issue, which was

not a basis of the district court's decision, is not properly before the Court on this appeal. *See Havens v. James*, 76 F.4th 103, 123 (2d Cir. 2023) ("We are a court of review, not of first view." (cleaned up)).

In any event, Srour's attempt to distinguish handguns from rifles and shotguns is unavailing. *Antonyuk* determined that the State's character requirement is consistent with "the historical tradition of preventing dangerous individuals from carrying *guns*." 89 F.4th at 307 (emphasis added). This tradition is not rooted in the regulation of handguns specifically. *Id.* at 314-16 & n.23. The Court recognized a tradition reaching back to the Founding era of disarming individuals who "would pose a danger to themselves, others, or to the public," without any focus on the type of firearms they possessed. *Id.* at 307.

Nor does Srour's attempt to distinguish rifles, shotguns, and handguns for purposes of the character requirement make sense. Nothing about the tradition of disarming dangerous individuals depends on the type of weapon. The Second Amendment protects the right to armed self-defense with weapons "in common use at the time" and not weapons that are "highly unusual in society at large." *Bruen*, 597 US at 21, 47 (cleaned up). The Founding-era laws that the City relies on here,

such as loyalty oaths and surety laws (App. Br. 35-37), operated during a time when the most common type of firearms were muskets and fowling pieces. *See Capen v. Campbell*, Civil Action No. 22-11431, 2023 U.S. Dist. LEXIS 227385, at *29 (D. Mass. Dec. 21, 2023) (summarizing findings of historian expert about common firearms during colonial and Founding eras). This Founding-era tradition of disarming dangerous individuals of their long guns directly supports the City's character requirement for rifles and shotguns.

Later laws restricting handguns to law-abiding, responsible individuals are also part of the relevant tradition. *Antonyuk*, 89 F.4th at 322-24. In *Bruen*, the Supreme Court explained that handguns may have been unusual in the colonial period, but they are now in common use for self-defense. 597 U.S. at 47. Laws regulating rifles or muskets that were common in the Founding era thus form part of the relevant historical tradition for modern firearms regulations. *Id.* Likewise, licensing laws from a century later, allowing officials to deny handgun licenses to individuals who were dangerous, are part of the same tradition because the differences between rifles and handguns are not salient for purposes of the character requirement.

24

The primary distinction between handguns and long guns, in terms of government regulations, relates to the ease with which handguns, as opposed to long guns, can be carried concealed—which is why New York State separately regulates the concealed carriage of handguns. But the State's character requirement for handgun licensing, which, again, is substantially the same as the City's requirement for rifle/shotgun permits, applies equally to premise licenses and to concealed-carry licenses, *see* N.Y. Penal L. § 400.00(1). In other words, dangerousness is not a concern rooted in concealability, which is the primary distinguishing feature between handguns and long guns. Rather, dangerousness is a disqualifier linked to the possession of a firearm— whether rifle, shotgun, or handgun—at all, unrelated to whether it may be publicly carried. Thus, the historical concealed-carry licensing laws relied upon by *Antonyuk* are relevant evidence of a longstanding tradition of disarming dangerous individuals that extends to all firearms that might be misused.

Finally, there is no merit to Srour's argument that this Court cannot look to laws that post-date the Second Amendment's ratification for purposes of identifying the relevant historical tradition (Opp. Br. 40-

43). *Antonyuk* teaches that the Second Amendment requires a nuanced historical approach under which the court's task is "to determine whether a given modern law is *part* of the nation's tradition of firearm regulation, not the sum of it." *Antonyuk*, 89 F.4th at 320. Rather than focusing on a single period, courts must employ a wider historical lens and consider evidence from well before the Founding through Reconstruction, and even later, as relevant evidence of a historical tradition. *Id.* at 304-05.

Thus, as explained in the City's opening brief (App. Br. 34-39), the character requirement easily passes Second Amendment muster because it is a part of a longstanding historical tradition of keeping firearms out of dangerous people's hands that stretches back to before the Founding and continues to this day. Evidence of that tradition can be found in early loyalty laws disarming individuals who could not be trusted not to take up arms against the country, surety laws that disarmed individuals deemed too dangerous to possess weapons, and early licensing laws from across the country that withheld permission to keep or carry firearms from people who were deemed dangerous by local authorities (*id.* at 35-36). Consistent with that tradition, individuals who lack "the essential character, temperament and judgment necessary to be entrusted with a

26

weapon and to use it only in a manner that does not endanger oneself or others," 38 R.C.N.Y. § 3-03, may not keep rifles or shotguns in New York City.

## D. The balance of equities tips against injunctive relief.

The fact that the balance of equities and public interests tip decidedly against the injunction, as detailed in the City's opening brief (App. Br. 39-43), is yet another reason to reverse. Srour can no longer claim any present interest in the constitutionality of the character requirement at all now that his application has been granted.

On the other hand, the public continues to have a strong interest in maintaining the character requirement—which, above all else, is designed to keep firearms out of the hands of dangerous individuals, such as those who have demonstrated an inability to follow rules or safeguard their weapons, or who lie to the police about their criminal histories (App. Br. 41-43).[6] This longstanding requirement serves vital public-safety

---

[6] Ignoring that the district court entered a permanent injunction after evaluating both the merits and the balance of the equities, Srour wrongly argues that the City asks this Court to engage in impermissible "interest balancing" as part of its Second Amendment analysis (Opp. Br. 46). The City's brief instead discussed the equities in the context of the familiar standard for injunctions, not in assessing the merits of Srour's Second Amendment challenge (App. Br. 39-43).

interests by ensuring that individuals who possess rifles and shotguns in the City are responsible and law-abiding. Making matters worse, by issuing an overly broad injunction that bars any consideration of character in rifle and shotgun permitting for all applicants, not just Srour, the district court jeopardized the safety of New York City's residents. The balance of equities tips decidedly against the permanent injunction entered by the district court.

## CONCLUSION

The Court should dismiss the appeal as moot and vacate the district court's judgment. In the alternative, the Court should reverse the opinion and order and vacate the district court's award of prospective relief.

Dated:  New York, NY
        April 10, 2024

Respectfully submitted,

HON SYLVIA O. HINDS-RADIX
*Corporation Counsel*
*of the City of New York*
Attorney for Appellants

By:  *Elina Druker*
ELINA DRUKER
Assistant Corporation Counsel

RICHARD DEARING
CLAUDE S. PLATTON
ELINA DRUKER
   *of Counsel*

100 Church Street
New York, NY 10007
212-356-2609
edruker@law.nyc.gov

29

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared using Microsoft Word 2010, and according to that software, it contains 5,569 words, not including the table of contents, table of authorities, this certificate, and the cover.

_Elina Druker_

ELINA DRUKER