

June 13, 2024

**By ACMS**

Hon. Catherine O'Hagan Wolfe
Clerk of the Court
United States Court of Appeals
for the Second Circuit
40 Foley Square
New York, New York 10007

    Re: *Srour v. New York City*, Docket No. 23-7549

Dear Ms. Wolfe,

    I represent the Plaintiff-Appellee, Joseph Srour ("Srour"). Please accept the following in response to the Court's June 11, 2024 Order directing Srour to address whether his request for prospective relief is moot and, if so, whether the Court should vacate the entire judgment.

    Relevant here, Srour's complaint challenged, *inter alia*, the government's discretion over his right to possess rifles and shotguns. The Opinion and Order appealed from, which granted Srour's motion for summary judgment (in part), held that New York City Administrative Code ("NYAC") 10-303(a)(2) is facially unconstitutional in violation of the Second Amendment, and struck the regulation accordingly. The district court reserved decision on the issue of monetary damages for Srour's past constitutional harms.

    The district court's permanent injunction of NYAC 10-303(a)(2) renders the unbridled and subjective factors set forth in the NYPD's administrative regulations for rifles and shotguns a nullity. See, 38 RCNY 3-03(a)-(n), bringing the possession of rifles and shotguns into compliance with the bright-line, objective disqualifiers for firearm possession under state and federal law. See, 18 U.S.C. 922(g); Penal Law 265.00(17); 265.01(4).

    Prevailing below, Srour immediately submitted a new application to the NYPD License Division for, *inter alia,* a rifle/shotgun license[1] – a process that takes approximately one year. The City filed its appeal, expedited Srour's license applications[2], issued a license to Srour on March 21, 2024 and now argues[3] in its Reply Brief that the entire Opinion and Order should be vacated as moot.

---

[1] Filed on October 26, 2023.
[2] Even the state-imposed timeframe for issuing a handgun license is six months. See, Penal Law § 400.00(4-b).
[3] Reply Brief filed on April 10, 2024 [Dkt. 48.1].

| 2 Overhill Road, Suite 400 | *info@bellantoni-law.com* | (914) 367-0090 (t) |
| Scarsdale, New York 10583 | www.bellantoni-law.com | (888) 763-9761 (f) |

As a rifle/shotgun licensee, Srour remains subject to the enforcement of a facially unconstitutional regulation - NYAC 10-303(a)(2) - every three years. During oral argument before this Court on June 10, 2024, the City confirmed that Srour will continue to be subject to the broad discretion of 10-303(a)(2) and all of the enumerated factors under 38 RCNY 3-03 – including those used to violate his Second Amendment rights in 2019, none of which are probative of 'dangerousness.' Srour also remains subject to suspension and revocation under the broad discretion of 10-303(a)(2).

Srour's request for prospective relief is not moot for several reasons.

### *There is Still Effectual Relief for the Court to Grant*

"A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Hassoun v. Searls*, 976 F.3d 121, 128 (2d Cir. 2020) citing *Knox v. Serv. Emps. Int'l Union*, 567 U.S. 298, 307 (2012) (internal quotation marks omitted). In *Hassoun,* the plaintiff's habeas petition requested that "the government ... release Mr. Hassoun immediately." As a result of his deportation, there was no relief left for the court to grant.

On the contrary, as a rifle/shotgun licensee Srour is subject to the enforcement of NYAC 10-303(a)(2); he cannot renew his license without a moral character assessment thereunder [NYAC 10-303(f)] and is subject to suspension and revocation at will under 10-303(a)(2)- even for events having nothing to do with 'dangerousness.'[4]

Affirming the district court's grant of a permanent injunction of NYAC 10-303(a)(2) will ensure that Srour will not be subject to a discretionary, opinion-based assessment of his moral character[5] as a condition to his lawful possession of rifles and shotguns.

### *The City's Voluntary Cessation Does Not Moot the Relief*

Supreme Court "precedents hold that a defendant's voluntary cessation of a challenged practice will moot a case only if the defendant can [overcome the "formidable burden" to "show that the practice cannot reasonably be expected to recur." *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 241 (2024) (cleaned up) quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, (It is well settled that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice") quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) (government's voluntary cessation "would not preclude it from reenacting precisely the same provision if the District Court's judgment were vacated").

"If it did, the courts would be compelled to leave the defendant ... free to return to his old ways." *Mesquite,* 455 U.S. at 289 citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953).

---

[4] "The permittee's rifle/shotgun permit may be suspended for a defined period or revoked upon evidence of any disqualification pursuant to subdivision a of § 10-303 of the Administrative Code." 38 RCNY 3-05(b). This includes 10-303(a)(2).

[5] Unlike the "moral character" language of Penal Law § 400.00(1)(b), NYAC 10-303(a)(2) is not a "proxy for dangerousness." See, *Antonyuk v .Chiumento*, 89 F.4th 271, 312 (2d Cir. 2023). And while any amount of government discretion is inconsistent with the plain text of the Second Amendment [*Bruen*, 597 U.S. at n. 9], 10-303(a)(2) imbues substantially more than a 'modicum' of discretion in the licensing officer. *Antonyuk*, 89 F.4th at 324. The preamble to the police commissioner's administrative licensing rules (38 RCNY 3-03 (a)-(n)) may have been amended to mirror the language of P.L. § 400.00(1)(b), the enumerated factors were not; and many, including those used to deny Srour's 2018 application, do not rise to the level of a 'dangerousness' assessment.

A defendant claiming that its voluntary compliance moots a case bears the "formidable burden" of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur. *Friends of the Earth*, 528 U.S. at 190 (citation omitted).

The City voluntarily (and temporarily) complied with the district court's Order by issuing Srour a rifle/shotgun license, which it did under an expedited timeframe and in the face of its bold declaration on October 25, 2023 seeking a stay pending appeal from the district court: "Regardless, the License Division believes that **Plaintiff is both 'dangerous' and not law-abiding**." [ECF 45, p. 3 n. 3].

Four months later, the City issued Srour an expedited rifle/shotgun license[6] immediately before the City filed its Reply Brief arguing for vacatur of the permanent injunction and the entire Opinion and Order as 'moot' – because of its own voluntary conduct. Without the Opinion and Order, the City would have deprived Srour of an enumerated constitutional right (again) despite the fact that he has no prohibitors under federal or state law [A103-105; A108-116].

Before *Fed. Bureau of Investigation v. Fikre* made its way to the Supreme Court, the Ninth Circuit found that the government's removal of the plaintiff from the No Fly list, and submission of a declaration from the Acting Deputy Director for Operations of the Terrorist Screening Center representing that Fikre "will not be placed on the No Fly List in the future based on the currently available information" failed to establish the government's "formidable burden" proving that Fikre "will not be placed on the List if ... he ... engag[es] in the same or similar conduct" in the future. *Fikre*, 601 U.S. at 239-240. As a result, the circuit court concluded, the government had still failed to meet its burden of establishing that its allegedly unlawful conduct cannot "reasonably be expected to recur." *Fikre*, 601 U.S. at 240.

In its analysis of the government's petition for certiorari, the Supreme Court described the government's burden as "formidable" because the "Constitution deals with substance not strategies…Were the rule more forgiving, a defendant might suspend its challenged conduct after being sued, win dismissal, and later pick up where it left off; it might even repeat "this cycle" as necessary until it achieves all of its allegedly "unlawful ends…A live case or controversy cannot be so easily disguised, and a federal court's constitutional authority cannot be so readily manipulated." *Fikre*, 601 U.S. at 241.

"To show that a case is truly moot, a defendant must prove 'no reasonable expectation' remains that it will "return to [its] old ways." *Fikre*, 601 U.S. at 241 (internal citations omitted).

Unanimously affirming, the Supreme Court noted that Fikre contends he was placed on the No Fly List "for constitutionally impermissible reasons," and "as the court of appeals observed" neither his removal from the list nor the declaration demonstrate that the government "cannot reasonably be expected to do again in the future what it is alleged to have done in the past." *Fikre,* 601 U.S. at 242 quoting *Friends of the Earth*, 528 U.S. at 190. The Court also rejected the government's claims that (i) Fikre was removed from the No Fly List in 2016 and (ii) because Fikre "presumably has joined religious organizations" during the litigation, and interacted freely with his co-religionists" it is "unlikely he will

---

[6] Srour was issued every license applied for on March 21, 2024 - a rifle/shotgun license, premises handgun license, and concealed carry license, notwithstanding that R/S licenses and handgun licenses are handled by two separate departments within the License Division and located in two different boroughs. https://www.mapquest.com/us/new-york/nypd-license-division-rifle-shotgun-section-439380813;https://www.nyc.gov/site/nypd/services/law-enforcement/permits-licenses-firearms.page

face relisting in the future." *Fikre*, 601 U.S. at 243.

"In all cases, it is *the defendant's* "burden to establish" that it cannot reasonably be expected to resume its challenged conduct—whether the suit happens to be new or long lingering, and whether the challenged conduct might recur immediately or later at some more propitious moment…Nothing the government offers here satisfies that formidable standard. *Fikre,* 601 U.S. at 243 (emphasis added) citing, *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) (declining to dismiss a case as moot five years after the defendant voluntarily ceased its challenged conduct); *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 288–289 (1982) (similar).

Srour challenged the requirement that he be subject to a discretionary "moral character" assessment[7] before being able to lawfully possess, *inter alia*, rifles and shotguns, as required by NYAC 10-303(a)(2). There is no historical analogue for such a regulation on the possession of rifles and shotguns; notably, the City failed to meet it burden under *Bruen* to justify its regulations.

The City failed to meet its "burden to establish" that it cannot reasonably be expected to resume its challenged conduct. Quite the opposite. At oral argument before this Court, the City conceded and confirmed that it will continue to resume the challenged conduct. Srour will continue to be subject to the broad discretion of 10-303(a)(2). The City informed that Srour's character will be reassessed at the renewal stage in three years if he engages in *any of the same conduct* that led to his denial in 2019 - if "he's rearrested[8]" "or again decides to violate laws" – any laws – "not just his driving history" but also "violations of the navigational law." "So, if that kind of thing happens again, his character can be reassessed." [Oral Argument, June 10, 2024 at 35:30-36:25].

Srour's rifle/shotgun license is also subject to suspension and revocation at the will of the License Division, even for events having nothing to do with 'dangerousness.'[9]

While the City temporarily ceased its wrongful conduct and issued Srour's licenses, its action was taken specifically to seek vacatur of the permanent injunction of a facially unconstitutional regulation – and *not* because there is 'no likelihood' that the same regulation will be enforced against Srour in the future. The City ensured this Court that it will.

After all, it is the City's *modus operandi* to moot Second Amendment litigation by issuing gun licenses to litigants challenging its firearm regulations [see, *Abekassis v. New York City*, No. 20-3038, 2021 WL 852081 (2d Cir. Mar. 4, 2021) (license spontaneously issued after denial shortly before responsive brief due in Second Circuit) and *Taveras v. New York City,* No. 20 CIV. 1200 (KPF), 2023 WL 3026871, at *1 (S.D.N.Y. Apr. 20, 2023) (license spontaneously mailed to plaintiff in case

---

[7] As noted in Srour's application to the Supreme Court to vacate the Second Circuit's stay pending appeal, incorporated by reference herein, *Antonyuk v .Chiumento*, 89 F.4th 271 (2d Cir. 2023) is not controlling for several reasons, including that (i) the court's analysis of the State's handgun licensing scheme "moral character" factor is tied to the discretionary licensing of handguns enforced since the late 1800s/early 1900s (there was no licensing requirement for rifles and shotguns) and (ii) the State's moral character factor is limited to a 'dangerousness' assessment and affords only a 'modicum' of discretion – not the broad, undefined discretion of NYAC 10-303. https://www.supremecourt.gov/DocketPDF/23/23A870/305619/20240321132238535_Application%20to%20Vacate%20Stay%20FINAL.pdf

[8] Srour was denied in 2019 because of a false arrest in 1996 that was dismissed based on a misidentification and sealed. Yet, the City falsely branded him as 'dangerous' because the City treats all arrest allegations as adjudicated, disqualifying convictions. See, 38 RCNY 3-03(a) and 5-10(a).

[9] "The permittee's rifle/shotgun permit may be suspended for a defined period or revoked upon evidence of any disqualification pursuant to subdivision a of § 10-303 of the Administrative Code." 38 RCNY 3-05(b). This includes 10-303(a)(2).

remanded by this Court after *Bruen* despite 'dangerousness' finding underlying initial denial) and/or by amending its laws. See, *NYSRPA v. City of New York,* 140 S. Ct. 1525, 1531 (2020) ("the City maintained [that] the travel restrictions were "necessary to protect the public safety insofar as the transport of firearms outside the home potentially endangers the public."") citing City of New York's Memorandum in Support of Cross-Motion for Summary Judgt. & Opposition to Plaintiffs' Motion for Preliminary Injunction in No. 13–cv–2115, Doc. No. 36, p. 10.[10]

Srour should not lose his protections because the City voluntarily and temporarily obeyed to the district court's Order.[11] If Srour's injunctive relief is vacated, the City remains free to enforce "precisely the same provision if the District Court's judgment were vacated." *City of Mesquite,* 455 U.S. at 289.

***Personal Stake in the Proceedings***

Srour continues to maintain a "personal stake" and "cognizable interest" in the constitutionality of NYAC 10-303(a)(2). *Fox v. Bd. of Trustees of State Univ. of New York*, 42 F.3d 135, 140 (2d Cir. 1994). Unlike the students in *Fox,* whose declaratory and injunctive claims against the universities were mooted by their graduation, Srour continues to be subject to NYAC 10-303(a)(2) so long as he remains a licensee.

The Court can still redress Srour's prospective harm through its remedial powers. *Fox*, 42 F.3d at 140. Every rifle/shotgun license expires after three (3) years. NYAC § 10-303(f). The City misrepresents the renewal as 'automatic' [Reply Br. at 4, n. 2]. However, the "automatic renewal" language is qualified by the phrase "*unless* the police commissioner has reason to believe the status has changed…" which the City confirmed during oral argument encompasses the violation of *any law*. Srour also remains subject to "at will" suspension of his license, as noted above.

Based on the City's representations, and the renewal statute 10-303(f), 10-303(a)(2) will be enforced against Srour at each renewal[12] and as a means of suspending and/or revoking his license. Srour's personal stake in the outcome is particularly evident based on his submission of a second round of applications after his success in the district court - not only for a rifle/shotgun license, but also a residential handgun license and concealed carry handgun license. Srour won his case, yet he remains under the thumb of the facially unconstitutional regulation he succeeded in challenging.

---

[10] While Srour's motion for summary judgment was *sub judice*, the police commissioner amended the preamble to his rifle/shotgun "grounds for denial," 38 RCNY 3-03, which the district court held mooted Srour's challenge thereto, notwithstanding that the enumerated factors (a)-(n) remained untouched.

[11] Imagine a school saying, "We stopped discriminating against this Asian student, so we should be allowed to continue our discriminatory practices against the other Asians" or a diner claiming "we served this black plaintiff, so we should be allowed to continue discriminating against every other black person" or a county clerk stating "we gave this gay couple a marriage license, so the injunction of our anti-gay policies should be vacated." The Second Amendment right stretches across all nationalities, races, colors, and genders – it guarantees the individual right to self-defense of all American citizens – "the People." A facially unconstitutional law affecting "the People" as a whole, as NYAC 10-303(a)(2) does, should not get a "pass" because this plaintiff has been temporarily appeased. And unlike the "collective prohibitions" on groups like freed blacks, Native Americans, Mexicans and Chinese Americans (California), the individual assessment of each person (as opposed to a bright line objective factor, like the loyalty oaths - either the oath as taken or it was not) and having to 'prove' one's character to a government official, was ***never*** part of the historical traditions of this Nation…akin to subjective (and now-stricken) 'proper cause' requirement.

[12] Unfettered discretion in the police commissioner continues in abundance during the renewal process. Undefined are the parameters of the renewal 'application' and the scope of 'change' giving rise to the denial of a renewal application. Presumably, the 'eligibility' for the issuance of a license under the unaltered 38 RCNY 3-03 factors is the same as the 'eligibility' to renew.

*Capable of Repetition, Yet Evading Review*

Unlike a habeas petitioner who is deported during the proceedings [see, *Hassoun v. Searls*, 976 F.3d 121 (2d. Cir. 2020)] with no likelihood that the harm will be repeated, the harm to Srour is capable of repetition (and will be, according to the City). It the permanent injunction is vacated, this facially unconstitutional statute will evade review by this Court. See e.g., *Honig v. Doe*, 484 U.S. 305, 318 (1988) (claims of student not currently facing suspension, no longer residing in the school district, yet still under the jurisdiction of the state education department, "not moot"). Srour remains under the jurisdiction of NYAC 10-303(a)(2).

The three-year renewal requirement, the suspension/revocation policies, and the City's representations establish that, if the permanent injunction is vacated, this facially unconstitutional regulation will evade review by this Court despite the City's failure to justify its regulation under *Bruen*.

Moreover, the temporary nature of the rifle/shotgun license, which automatically expires after three years, places Srour's claims for declaratory and injunctive relief within the exception to the mootness doctrine. See, *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 648 (2d Cir. 1998) (annual nature of the Parade, claims for declaratory and injunctive relief are not moot); *Chabad–Lubavitch of Vt. v. City of Burlington*, 936 F.2d 109, 111 (2d Cir.1991) (per curiam) (same for the annual menorah display). This exception to the mootness requirement seeks to avoid placing the litigants in the same adversarial position in the future.

*Damages Claims Remain, Automatically Avoiding Mootness*

Because Srour's compensatory and nominal damages remain, his case cannot be rendered moot. *Marin v. Town of Southeast.*, 136 F. Supp. 3d 548, 562–63 (S.D.N.Y. 2015) ("So long as the plaintiff has a cause of action for damages, a defendant's change in conduct will not moot the case") citing *Buckhannon Bd. & Care Home, Inc. v. W.Va. Dep't of Health & Human Res.*, 532 U.S. 598, 608–09 (2001); *Van Wie v. Pataki*, 267 F.3d 109, 115 n. 4 (2d Cir.2001) (noting that a claim for damages, even nominal in nature, prevents mootness); *Stokes v. Village of Wurtsboro*, 818 F.2d 4, 6 (2d Cir.1987) ( "Claims for damages or other monetary relief automatically avoid mootness, so long as the claim remains viable"); *Keepers, Inc. v. City of Milford*, 944 F.Supp.2d 129, 141 (D.Conn.2013) (plaintiff's facial and as-applied challenges not moot where plaintiff made a claim for nominal damages; "[c]laims for damages or other monetary relief automatically avoid mootness" (internal quotation marks omitted)).

*The Permanent Injunction of NYAC 10-303(a)__(9)__ Forecloses Vacatur of the Opinion and Order*

In addition to granting summary judgment as to Srour's challenge to NYAC 10-303(a)(2), the district court also granted Srour summary judgment on his challenge to the "good cause" provision of NYAC 10-303(a)__(9)__ – and permanently enjoined (a)(9) within the Opinion and Order.

The City did not pursue an appeal of the permanent injunction and declaration of unconstitutionality of NYAC 10-303(a)(9).[13] Vacating the Opinion and Order, therefore, will improperly vacate an unchallenged permanent injunction of a facially unconstitutional statute – NYAC 10-303(a)(9, which remains in effect and enforced by the City[14] despite the City's failure to seek a stay of the permanent injunction [see, Second Circuit Order granting stay pending appeal at Dkt. 32.1]. By vacating the Opinion and Order, this Court would erroneously vacate a permanent injunction of a regulation unchallenged by the City [Second Circuit Order at n. 10].

---

[13] "Regarding the merits, while the City disagrees with the district court's analysis in finding § 10-303(a)(9) unconstitutional, on to challenge that conclusion on appeal and does not do so." [City Br. at 5 (27.1)].

[14] https://codelibrary.amlegal.com/codes/newyorkcity/latest/NYCadmin/0-0-0-208353 (last visited June 13, 2024).

### *This Court Should Proceed with Deciding the City's Appeal*

In its post-argument letter, the City claims that this Court "does not yet have appellate jurisdiction over [Srour's] retrospective claims as those claims have not been reduced to a final judgment. Only Srour's claims for prospective relief are now before the Court." [Dkt. 57.1]. The City expends great effort to parse out 'retrospective' and 'prospective' relief, expecting that it will be able to appeal the entirety of the Opinion and Order for a second time after final judgment is entered.

But by opening the door to a review of the permanent injunction of 10-303(a)(2), the City invited this Court to review the entire decision. An appeal as of right from the Opinion and Order entering a permanent injunction pursuant to 28 U.S.C. § 1292(a)(1) requires the Second Circuit to review the district court's decision on the liability issues that necessarily underlay the grant of injunctive relief. See e.g., *Empresa Cubana del Tabaco v. Culbro Corp.*, No. 97 CIV.8399(RWS), 2004 WL 925647, at *1 (S.D.N.Y. Apr. 30, 2004), aff'd in part, rev'd in part and remanded, 399 F.3d 462 (2d Cir. 2005).

The City had a full and fair opportunity to address the merits of the district court's Second Amendment analysis and holding. In fact, the City advanced such arguments in its Opening Brief, and it had a full and fair opportunity to counter Srour's response in its Reply Brief.

This Court should proceed with this appeal, which necessarily includes a review of the district court's decision on the liability issues that underlay the grant of injunctive relief. See also, *Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1175 (2d Cir. 1995) ("Therefore, the grant of a permanent injunction against Thomas in the Ahlquist litigation is an appealable interlocutory order. Having satisfied ourselves that we have jurisdiction, we *pass now to a discussion of the merits*.") (emphasis added).

### *The Opinion and Order Should Not Be Vacated*

If the Court finds that Srour's request for prospective relief is moot, and vacates the permanent injunctive and declaratory relief, the remainder of the district court decision should remain intact.

The Opinion and Order addresses the entirety of Srour's Second Amendment challenges; the Order has an effect on, and forms the basis for, not only the injunctive relief but Srour's plenary Second Amendment claims for monetary damages as well. The City's mootness argument does not serve as a basis for overturning the lower court's Opinion and Order on Srour's plenary action and damages claims. Moreover, the City should not benefit from the vacatur of an opinion that it had a full and fair opportunity to challenge, but chose not to.

### *The City Has Not Been Deprived of the Ability to Challenge the District Court's Ruling*

The City has not been deprived of its ability to challenge the district court ruling. The City brought this appeal to challenge the permanent injunction of 10-303(a)(2), which requires a review of the underlying decision giving rise to the permanent injunction – the Opinion and Order. The City had a full and fair opportunity to seek review of the Opinion and Order, but voluntarily chose to terminate this Court's review by its post-filing claim that the case has been rendered moot by *the City's issuance* of a license to Srour.[15] And rather than limit its request to the injunctive relief, the City champions vacatur of the entire Opinion and Order, seeking to erase any authority finding that 10-303(a)(2) and (9) violate the Second Amendment.

---

[15] At the filing of its appeal on February 12, 2024, the City knew that Srour's license applications were pending. See, *Srour v. New York City* (*Srour II*), 1:23-cv-09489; Affidavit of Service on New York City [ECF 10] and License Division Director [ECF 13].

The premise in *Munsingwear* is that "those who have been prevented from obtaining the review to which they are entitled [based on happenstance] should not be treated as if there had been a review." *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950); *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 23 (1994) (*Munsingwear* vacatur only appropriate for those judgments whose review is "prevented through happenstance" - where a controversy presented for review has "become moot due to circumstances unattributable to any of the parties").

The mootness pressed by the City occurred at the City's hand. No "happenstance" occurred.[16] The City voluntarily ceased its conduct and issued Srour a license, even though it believed Srour was "both dangerous and not law-abiding." The City should not benefit by arguing 'mootness' to vacate an Order against it based on its intentional acts.

And unlike, for instance, a fact-dominant ruling in a qualified immunity case (like *Camreta*)[17], Srour's successful facial challenge to a firearm regulation was purely a question of law that applies to the public generally and should not be vacated.

As Justice Jackson observed in her concurrence in *Acheson Hotels, LLC v. Laufer*, as "an equitable remedy, vacatur is not granted as a matter of course." 601 U.S. 1, 16 (2023) (Jackson, J. concurring in the judgment) quoting *Salazar v. Buono*, 559 U.S. 700, 714 (2010). "Instead, precisely because vacatur is rooted in equity, the decision whether to vacate turns on the conditions and circumstances of the particular case." *Acheson*, 601 U.S. at 16 (cleaned up) quoting *Azar v. Garza*, 584 U. S. ——, ——, 138 S.Ct. 1790, 1792 (2018) (per curiam) (quoting *United States v. Hamburg-Amerikanische Packetfahrt-Actien Gesellschaft*, 239 U.S. 466, 478 (1916)).

"Per historical tradition, a court that is asked to exercise its equitable authority to vacate a lower court's judgment must determine, in essence, whether it is 'most consonant to justice' for the judgment to 'remain undisturbed' or be vacated." *Acheson*, 601 U.S. at 16 quoting, *South Spring Hill Gold Mining Co. v. Amador Medean Gold Mining Co.*, 145 U.S. 300, 301–302 (1892) (emphasis deleted).

"But lower court judgments are binding and presumptively valid. Any suggestion to the contrary misunderstands the scope of the authority that all federal judges have pursuant to Article III, and disrespects the time and talent of the jurists who have previously undertaken to assess the merits of the matter. Nor is the validity of a lower court's judgment cast into doubt as a result of the case's subsequent mootness. We do not erase past precedents just because those cases cease to be live, litigated matters. Every federal case fades to black at some point, yet in our common-law system of case-by-case adjudication, the rulings that Article III judges have issued in those cases remain good law. There is no particular reason to assume that a decision, later mooted, is any less valid as precedent than any other opinion of a court." *Acheson*, 601 U.S. at 17–18 quoting *Mahoney v. Babbitt*, 113 F.3d 219, 222 (CADC 1997).

---

[16] When 'happenstance' prevents that review from occurring, the normal rule should apply: Vacatur then rightly "strips the decision below of its binding effect," *Deakins v. Monaghan*, 484 U.S. 193, 200 (1988), and "clears the path for future relitigation," *Munsingwear*, 340 U.S., at 40, 71 S.Ct. 104.

[17] See e.g, *Camreta v. Greene*, 563 U.S. 692, 713–14 (2011) (the 'happenstance' of S.G.'s moving across country and becoming an adult deprived defendant Camreta of his appeal rights. Mootness has frustrated his ability to challenge the Court of Appeals' ruling that he must obtain a warrant before interviewing a suspected child abuse victim at school" warranting vacatur of that part of the Ninth Circuit's opinion that addressed that issue).

- 9 -

***No Judgment Exists to be Vacated***

      No judgment exists to be vacated because no judgment has yet been entered below.

      Thank you for the Court's consideration in this matter.

Respectfully,

*Amy L. Bellantoni*
Amy L. Bellantoni