23-7549-cv
*Srour v. New York City*



In the

**United States Court of Appeals**

**For the Second Circuit**

_____

August Term, 2023

(Argued: June 10, 2024; Decided: September 9, 2024)

No. 23-7549-cv

_____

JOSEPH SROUR,

*Plaintiff-Appellee,*

v.

NEW YORK CITY, New York, and EDWARD A. CABAN, in his Official Capacity as
NYPD Police Commissioner,

*Defendants-Appellants,*

KEECHANT SEWELL,*

*Defendant.*

_____

Before:        LEVAL, LOHIER, and LEE, *Circuit Judges.*

_____

* The Clerk of the Court is respectfully directed to amend the official caption to conform
to the above.

In 2019, Joseph Srour was denied a permit to possess rifles and shotguns in his home in New York by the New York City Police Department ("NYPD") License Division. Subsequently, he initiated this lawsuit seeking injunctive, declaratory, and monetary relief, bringing a constitutional challenge to various provisions of the New York City Administrative Code and the Rules of the City of New York, which provide the legislative and administrative framework, respectively, for granting rifle and shotgun permits. Most relevant to this appeal is the requirement that an applicant have "good moral character" to be issued a rifle and shotgun permit. *See* N.Y.C. Admin. Code § 10-303(a)(2); 38 R.C.N.Y. § 3-03.

Srour moved for summary judgment, but prior to the district court's decision, the NYPD updated the Rules of the City of New York to provide a definition of "good moral character," which was previously undefined. The district court (Cronan, *J.*) granted Srour's motion with regard to the New York City Administrative Code, enjoining the enforcement of the "good moral character" requirement and the separate "good cause" requirement, and declaring them unconstitutional. *Srour v. New York City*, 699 F. Supp. 3d 258, 285, 289 (S.D.N.Y. 2023). The district court did not and has not yet decided the amount of damages. *Id.* at 289.

Defendants-Appellants, New York City and New York City Police Commissioner Edward A. Caban (collectively, "the City"), filed this interlocutory appeal asking us to review the district court's judgment enjoining enforcement of New York City Administrative Code subsection 10-303(a)(2). In the meantime, Srour applied for a rifle and shotgun permit again, and immediately brought another suit against the City on the theory that he would surely be denied another permit. However, on March 21, 2024, Srour was granted his rifle and shotgun permit.

The City now asks us to deem this appeal moot and to vacate the district court's judgment enjoining enforcement of New York Administrative Code subsection 10-303(a)(2) and declaring it unconstitutional. We now hold that because Srour has been granted the very relief he sought, the case before us is moot, and we lack jurisdiction to hear the merits. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Accordingly, we **VACATE** the district court's judgment enjoining New York City Administrative Code subsection 10-303(a)(2) and

declaring it facially unconstitutional, **DISMISS** this appeal as moot, and **REMAND** the case to the district court with instructions to dismiss Srour's claims for injunctive and declaratory relief from New York City Administrative Code subsection 10-303(a)(2) as moot. *See United States v. Munsingwear Inc.*, 340 U.S. 36, 41 (1950).

———————————————

ELINA DRUKER (Claude S. Platton, Richard Dearing, *on the brief*), Of Counsel, New York City Law Department, *for* Muriel Goode-Trufant, Acting Corporation Counsel for the City of New York, New York, NY, *for Defendants-Appellants.*

AMY L. BELLANTONI, The Bellantoni Law Firm, PLLC, Scarsdale, NY, *for Plaintiff-Appellee.*

Joseph G.S. Greenlee, Greenlee Law, PLLC, McCall, ID, *for Amicus Curiae* Firearms Policy Coalition and FPC Action Foundation, *in support of Plaintiff-Appellee.*

———————————————

EUNICE C. LEE, *Circuit Judge*:

In 2019, Joseph Srour was denied a permit to possess rifles and shotguns in his home in New York, by the New York City Police Department ("NYPD") License Division. Subsequently, he initiated this lawsuit seeking injunctive, declaratory, and monetary relief, bringing a constitutional challenge to various provisions of the New York City Administrative Code and the Rules of the City of New York, which provide the legislative and administrative framework, respectively, for granting rifle and shotgun permits. Most relevant to this appeal

1    is the requirement that an applicant have "good moral character" to be issued a

2    rifle and shotgun permit. *See* N.Y.C. Admin. Code § 10-303(a)(2); 38 R.C.N.Y. § 3-

3    03.

4          Srour moved for summary judgment, but prior to the district court's

5    decision, the NYPD updated the Rules of the City of New York to provide a

6    definition of "good moral character," which was previously undefined. The

7    district court (Cronan, *J.*) granted Srour's motion with regard to the New York City

8    Administrative Code, enjoining the enforcement of the "good moral character"

9    requirement and the separate "good cause" requirement and declaring them

10    unconstitutional. *Srour v. New York City*, 699 F. Supp. 3d 258, 285, 289 (S.D.N.Y.

11    2023). The district court did not and has not yet decided the amount of damages.

12    *Id.* at 289.

13          Defendants-Appellants, New York City and New York City Police

14    Commissioner Edward A. Caban[1] (collectively, "the City"), filed this interlocutory

15    appeal asking us to review the district court's judgment enjoining the enforcement

16    of New York City Administrative Code subsection 10-303(a)(2). In the meantime,

---

[1] When Srour brought this suit, Keechant Sewell was the New York City Police Commissioner. However, Edward A. Caban was appointed to the role of Commissioner on July 17, 2023, and therefore was automatically substituted for Sewell pursuant to Federal Rule of Civil Procedure 25(d).

1    Srour applied for a rifle and shotgun permit again, and immediately brought

2    another suit against the City on the theory that he would surely be denied another

3    permit.   However, on March 21, 2024, Srour was granted his rifle and shotgun

4    permit.

5          The City now asks us to deem this appeal moot and to vacate the district

6    court's judgment enjoining enforcement of New York Administrative Code

7    subsection 10-303(a)(2) and declaring it unconstitutional.   We hold that because

8    Srour has been granted the very relief he sought, the case before us is moot and

9    we lack jurisdiction to hear the merits.   *See Already, LLC v. Nike, Inc.*, 568 U.S. 85,

10   91 (2013).   Accordingly, we **VACATE** the district court's judgment enjoining New

11   York City Administrative Code subsection 10-303(a)(2) and declaring it facially

12   unconstitutional, **DISMISS** this appeal as moot, and **REMAND** to the district

13   court with instructions to dismiss Srour's claims for injunctive and declaratory

14   relief from New York City Administrative Code subsection 10-303(a)(2) as moot.

15   *See United States v. Munsingwear Inc.*, 340 U.S. 36, 41 (1950).

16                              **BACKGROUND**

17   **I.    Rifle and Shotgun Licensing in New York City**

18         Prior to delving into the specific facts of Srour's case, it is helpful to outline

19   the licensing scheme for the ownership of shotguns and rifles in New York City.

5

1    While state law governs handgun licensing for individuals, *see generally* N.Y. Penal

2    Law § 400.00, possession of rifles and shotguns is regulated by the City of New

3    York through the New York City Administrative Code (the "Code") section 10-

4    303.

5            The Code provides, among other things, that "[n]o person shall be denied a

6    permit to purchase and possess a rifle or shotgun unless the applicant . . . is not of

7    good moral character." N.Y.C. Admin. Code § 10-303(a)(2).[2]  The Code also

8    directs any application for a permit to be made to the police commissioner.

9    *Id*. § 10-303(b).

10           The New York City Charter allows the police commissioner to "adopt rules

11   necessary to carry out the powers and duties delegated to [the NYPD] by . . . local

12   law." N.Y.C. Charter § 1043(a)(2). The Police Department's regulations

13   regarding the process for issuing permits for rifles and shotguns are codified in

14   title 38, chapter 3 of the Rules of the City of New York (the "Rules"). Prior to

15   December 2022, the Rules stated that "an application for a rifle/shotgun permit

16   may be denied where it is determined that an applicant lacks good moral character

---

[2] Srour also challenged subsection 10-303(a)(9) of the Code, which allows the denial of a permit for "good cause." N.Y.C. Admin. Code § 10-303(a)(9). While the district court did enjoin enforcement of that provision, the City does not challenge that ruling on appeal, and the issue is thus not properly before this Court.

1    [or that other good cause exists for denial]."   New York City Police Department,

2    *Notice of Adoption of Final Rule* 4 (Dec. 13, 2022), https://perma.cc/U626-ME6W.

3    However, this section was amended on December 16, 2022, so that it now contains

4    a definition of "good moral character" and no longer permits denial for "good

5    cause."   *See* 38 R.C.N.Y. § 3-03 ("For the purposes of this chapter, 'good moral

6    character' means having the essential character, temperament and judgment

7    necessary to be entrusted with a weapon and to use it only in a manner that does

8    not endanger oneself or others.").   This definition in substance tracks the

9    definition for "good moral character" used by New York State in its handgun

10   licensing scheme.   *See* N.Y. Penal Law § 400.00(1)(b) ("[F]or the purposes of this

11   article, [good moral character] shall mean having the essential character,

12   temperament and judgement necessary to be entrusted with a weapon and to use

13   it only in a manner that does not endanger oneself or others[.]").

14   **II.**    **Srour's Rifle and Shotgun Permit Application**

15       In 2018, Srour, a resident of Brooklyn, New York, applied for a permit to

16   possess rifles and shotguns in his home.   His application was denied on June 13,

17   2019.[3]   The NYPD License Division issued a Notice of Application Disapproval,

---

[3] Srour also applied for, and was denied, a permit to possess handguns in his home.

1    which explained that Srour's prior arrests "show[ing] poor moral judgment," and

2    his "derogatory driving record . . . , reflect negatively upon [Srour's] moral

3    character and cast[] grave doubt upon [Srour's] fitness to possess a firearm."

4    App'x at 119.

5         Srour administratively appealed the denial of his rifle and shotgun

6    application.   In November of 2019, the NYPD License Division denied his appeal

7    through a Notice of Disapproval After Appeal.   The Notice began by referencing

8    New York State Penal Law section 400.00, which provides that "no license shall be

9    issued except for an applicant . . . (b) of good moral character . . . and; (n) for whom

10   no good cause exists for the denial of a license."   App'x at 124 (quoting N.Y. Penal

11   Law § 400.00(1)).   It also referenced the Rules as "provid[ing] a list of factors to be

12   considered in assessing moral character and 'good cause.'"   *Id.*

13        The Notice explained that even though the prior criminal cases against

14   Srour were dismissed, his previous arrests and their "violent nature" were "factors

15   supporting denial of his applications."   *Id.*   It also stressed that the failure to

16   disclose his previous arrests on his initial application "demonstrate[d] a lack of

---

Because this interlocutory appeal concerns only his challenge to the City's denial of his rifle and shotgun application, the specifics of his handgun application and denial will not be discussed.

1    candor and is a strong ground for disapproval of his applications."   *Id.* at 125.

2    Finally, the Notice indicated that Srour's many moving violations and license

3    suspensions "demonstrate[] an inability to abide by laws and regulations."   *Id.*

4    All of these factors, the Appeal Notice concluded, "portray a lack of good moral

5    character and disregard for the law."   *Id.* at 125–26.

6    **III.    Procedural History**

7    **A.    Srour's Complaint and Motion for Summary Judgment**

8    On January 2, 2022, Srour initiated a suit against the City of New York and

9    then-Police Commissioner Sewell seeking monetary, declaratory, and injunctive

10   relief for the denial of his firearms applications.   In it, he claimed that the City's

11   "discretionary and permissive" licensing scheme for handguns, rifles, and

12   shotguns "violate[s] the Second Amendment facially and as applied to Plaintiff."

13   App'x at 12.

14   Specifically, Srour claimed that subsections 10-303(a)(2) and (a)(9) of the

15   Code, authorizing the City to deny a rifle or shotgun permit based on good moral

16   character and good cause, respectively, are improperly discretionary and

17   permissive, and are therefore unconstitutional facially and as applied to him.

18   Srour also challenged as unconstitutional specific sections of the Rules that the

19   police department had promulgated to implement section 10-303 of the Code and

1     section 10-310 of the Code (providing criminal penalties for violations of sections

2     10-301 through 10-309). He also argued that all of these rules and regulations are

3     preempted by state law.

4          On June 23, 2022, six months after Srour filed his complaint, the Supreme

5     Court decided a challenge to New York State's handgun licensing scheme in *New*

6     *York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), ruling against

7     the State. In response, on July 1, the state legislature amended its handgun

8     licensing regime. The district court had stayed Srour's case in the interim, and

9     after the *Bruen* decision, directed the parties to submit a joint letter on September

10    25, 2022, indicating their positions as to whether the issues in this case had

11    changed.

12         In said letter, Srour indicated that he wished to move for summary

13    judgment pre-discovery. In response to the City's position that discovery was

14    necessary to decide Srour's as-applied challenges, Srour withdrew his as-applied

15    claims and his preemption claim and opted instead to proceed solely on a facial

16    constitutional challenge to the City's regulations. Srour moved for summary

17    judgment on December 16, 2022. On the same day, the NYPD amended the

18    regulations for implementing the rifle and shotgun permitting regime by

19    providing a definition for "good moral character" and removing the "good cause"

1    exception. *See* Part I, *supra*. Subsections 10-303(a)(2) and (a)(9) of the Code

2    remained unchanged.

3    **B.     District Court Decision**

4    On October 24, 2023, the district court issued an opinion and order granting

5    in part, and denying in part, Srour's motion for summary judgment. Specifically,

6    it found that subsections 10-303(a)(2) and (a)(9) of the Code, i.e., the "good moral

7    character" and "good cause" provisions, respectively, were facially

8    unconstitutional. As a result, the district court granted declaratory relief as to

9    these subsections of the Code and enjoined enforcement of both of them.[4]

10    In finding subsection 10-303(a)(2) of the Code unconstitutional, the district

11    court analyzed it on its face, and did not consider the revised version of section

12    3-03 of title 38 of the Rules—defining "good moral character"—as a part of the law.

13    In doing so, the district court found that the City had "not identified any historical

14    analogue for investing officials with the broad discretion to restrict someone's

15    Second Amendment right based on determining the person to lack good moral

---

[4] The district court concluded that only subsections (a)(2) and (a)(9) needed to be enjoined because the remaining subsections of section 10-303 of the Code were severable and could be left undisturbed.

1   character."   *Srour*, 699 F. Supp. 3d at 279 (alteration and internal quotation marks

2   omitted).

3        The district court also determined that the *pre*-December 16, 2022 versions

4   of sections 3-03 and 5-10 of title 38 of the Rules, the versions under which Srour

5   was denied his permits, were facially unconstitutional.   Because these versions of

6   the Rules were no longer in effect at the time of the district court's decision, and

7   the current versions were not before the district court, it held that declaratory and

8   injunctive relief as to the Rules was not necessary or appropriate.

9        The district court denied Srour's motion with regard to section 10-310 of the

10  Code, which provides criminal penalties for conduct which violates sections 10-

11  301 through 10-309—conduct which includes, for example, possessing a shotgun

12  without a license or defacing a serial number on a firearm.   It reasoned that Srour

13  had not shown that all the conduct covered in those sections was protected by the

14  Second Amendment, and therefore he "failed to establish that section 10-310 is

15  facially unconstitutional."   *Id.* at 285.

16       Lastly, the district court noted that it had already bifurcated the issues of

17  liability and damages.   Therefore, with regard to Srour's retrospective claims

18  seeking money damages for the City's denial of his permits, the district court

19  directed the parties to file a joint letter proposing a discovery plan.

12

1    **C.    Post-Summary Judgment Developments**

2        On October 25, 2023, the City filed a notice of interlocutory appeal and

3    moved for a stay of the injunction of subsections 10-303(a)(2) and (a)(9) of the Code

4    pending appeal.   The district court denied the full stay, but granted a temporary

5    stay of the injunction to afford the City a short time to seek a stay pending appeal

6    before this Court.   Before this Court, the City asked for a stay of the injunction

7    only on subsection 10-303(a)(2)—the "good moral character" provision—and on

8    February 21, 2024, this Court granted the stay.

9        As this case was working its way to this Court, Srour filed a *new* application

10   for a permit to possess rifles and shotguns and immediately filed a separate

11   complaint against the City on October 29, 2023.   *See* Complaint, *Srour v. City of*

12   *New York*, No. 23-CV-9489 (JPC) (S.D.N.Y. Oct. 29, 2023) ("*Srour II*").   In *Srour II*,

13   he sought declaratory and injunctive relief on the basis that the *post*-December

14   2022 versions of the Rules of the City of New York, which include the amended

15   definition of "good moral character," are unconstitutional.   *Id.* at 1–2.   Even

16   though his new applications had yet to be denied, Srour asserted that he had

17   standing because "his applications are futile" as "[t]he denial of [his] applications

18   is *certain*."   *Id.* at 7, 9.

13

1       However, nothing in life is certain.   On March 21, 2024, after the opening

2   and response briefs were submitted in the case before this Court, Srour's rifle and

3   shotgun and handgun applications were granted.   Srour was issued his rifle and

4   shotgun permit on March 25.   In its reply brief submitted on April 10, 2024, the

5   City argued that this case was moot, as Srour's applications had been granted, and

6   that this Court should dismiss the appeal and vacate the judgment of the district

7   court.   After oral argument on June 10, 2024, the City filed a Post-Argument Letter

8   Brief reiterating its mootness argument, and Srour submitted a Post-Argument

9   Letter Brief, arguing that the case was not in fact moot.

10                                   **DISCUSSION**

11      The parties disagree as to two issues relevant to this appeal: (1) whether

12  Srour's claims for injunctive and declaratory relief against subsection 10-303(a)(2)

13  are moot; and (2) the extent to which we possess pendent appellate jurisdiction

14  over his retrospective claims.   Under Article III, we are required to first address

15  whether Srour's claims for prospective relief are moot before considering if

16  exercising pendent appellate jurisdiction over other issues is appropriate.   *See*

17  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement

18  that [Article III] jurisdiction be established as a threshold matter springs from the

19  nature and limits of the judicial power of the United States and is inflexible and

1   without exception." (alteration and internal quotation marks omitted)); *Blackwelder*

2   *v. Safnauer*, 866 F.2d 548, 550 (2d Cir. 1989) ("Mootness is a jurisdictional matter

3   relating to the Article III requirement that federal courts hear only cases or

4   controversies." (internal quotation marks omitted)).

5          For the following reasons, we conclude that Srour's claims for prospective

6   relief are moot.   Therefore, we decline to exercise pendent appellate jurisdiction

7   over any of Srour's claims for retrospective relief, which are not yet final.

8   **I.    Mootness**

9          The City argues that because Srour was granted a permit to possess rifles

10   and shotguns in March of 2024, "he no longer has any interest in the prospective

11   relief at issue in this appeal."   City Reply Br. at 4.   Therefore, the City argues,

12   Srour's claims requesting prospective relief from subsection 10-303(a)(2) of the

13   Code are moot.[5]

14          There is a "virtually unflagging obligation of the federal courts to exercise

15   the jurisdiction given them."   *Colo. River Water Conservation Dist. v. United States*,

---

[5] The City makes a separate, related, argument that there is no jurisdiction over Srour's claim against subsection 10-303(a)(2) because the NYPD amended its implementing regulations in December of 2022, and he therefore cannot "demonstrate an injury stemming from the permitting regime's present-day character requirement."   City Br. at 25.   Because we conclude that Srour's claim is mooted based on the fact that he received a rifle and shotgun permit, we need not address the City's alternative argument.

1   424 U.S. 800, 817 (1976).   However, we have a similarly strong obligation to decide

2   only actual cases and controversies.   *See DaimlerChrysler Corp. v. Cuno*, 547 U.S.

3   332, 341 (2006) ("If a dispute is not a proper case or controversy, the courts have

4   no business deciding it . . . .").   This is because "federal judges are not counselors

5   or academics; they are not free to take up hypothetical questions that pique a

6   party's curiosity or their own."   *FBI v. Fikre*, 601 U.S. 234, 241 (2024).

7       Our responsibility to ensure we limit our review to live cases and

8   controversies does not cease at the time a complaint is filed, but rather extends

9   through the entire life of a case.   *See Deeper Life Christian Fellowship, Inc. v. Sobol*,

10  948 F.2d 79, 81 (2d Cir. 1991) ("A case in federal court must be alive at all stages of

11  judicial proceedings, not only at the point at which a suit was originally filed.").

12  This is not an optional responsibility we carry, as "[u]nder Article III of the U.S.

13  Constitution, when a case becomes moot, the federal courts lack subject matter

14  jurisdiction over the action."   *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80

15  (2d Cir. 2013) (alteration and internal quotation marks omitted).

16      Whether or not the original denial of Srour's permit application was

17  unlawful, this "case is moot if the dispute is no longer embedded in any actual

18  controversy about [Srour's] particular legal rights."   *Already*, 568 U.S. at 91

19  (internal quotation marks omitted).   In Srour's case, his injury of being denied a

1    permit to possess rifles and shotguns—which gave him Article III standing to

2    bring this suit against the enforcement of subsection 10-303(a)(2)—has been

3    remedied.  Srour was granted a permit to possess rifles and shotguns, and it is

4    therefore "impossible for a court to grant [him] any effectual [prospective] relief."

5    *Knox v. Service Employees International Union, Local 1000*, 567 U.S. 298, 307 (2012)

6    (internal quotation marks omitted).   For this reason, his claim before us—barring

7    any applicable exception—is moot.

8         The exceptions to the mootness doctrine include "voluntary cessation cases

9    and cases capable of repetition but evading review."   *Mhany Mgmt., Inc. v. County*

10   *of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016).   Srour argues that this case falls under

11   the "voluntary cessation" exception because "[t]he City voluntarily (and

12   temporarily) complied with the district court's Order by issuing Srour a

13   rifle/shotgun license," and therefore the case and controversy is no longer live

14   because of the City's own actions, which should not be permitted to render the

15   case moot.   Srour Post-Argument Letter Br. at 3, ECF No. 60.[6]   We disagree.

16        An alleged wrongdoer's voluntary cessation of a disputed action will still

17   render a case moot if the wrongdoer can show that (1) there is no "reasonable

---

[6] Srour also cursorily argues that this case falls into the "capable of repetition yet

1    expectation" the action will recur, and (2) "interim relief or events have completely

2    and irrevocably eradicated the effects of the alleged violation." *Granite State*

3    *Outdoor Advert., Inc. v. Town of Orange*, 303 F.3d 450, 451 (2d Cir. 2002) (quoting

4    *Campbell v. Greisberger*, 80 F.3d 703, 706 (2d Cir. 1996)); *see also Friends of the Earth,*

5    *Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) (explaining that "a

6    defendant claiming that its voluntary compliance moots a case bears the

7    formidable burden of showing that it is absolutely clear" there is no reasonable

8    expectation its behavior will recur).   The City has met that "formidable burden."

9         We begin with the easy question—whether the relief has "eradicated" the

10   effects of the City denying Srour a rifle and shotgun permit.   It has.   Srour has

11   obtained a permit to possess rifles and shotguns, and thus his situation is

---

avoiding review" exception because "the harm to Srour is capable of repetition. . . . [And if] the permanent injunction is vacated, this facially unconstitutional statute will evade review by this Court."   Srour Post-Argument Letter Br. at 6, ECF No. 60.   This misunderstands the "evading review" prong of the exception, which requires Srour to show that "the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration."   *Granato v. Bane*, 74 F.3d 406, 411 (2d Cir. 1996) (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)).   In other words, Srour's task is not to demonstrate that the City's alleged unconstitutional actions would evade review by *this* Court, but rather that they would evade review by *any* court because the very nature of the actions are so short in duration that they are likely to be moot before litigation can reasonably run its course.   *See, e.g., Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 648 (2d Cir. 1998) (finding the exception satisfied when plaintiff had "only a few weeks between being notified" that its parade permit was denied and the date of the parade, a period "clearly insufficient for full litigation of [plaintiff's] claims").   Srour has made no such demonstration here.

1    "sufficiently altered so as to present a substantially different controversy from the

2    one that existed when this suit was filed." *Lamar Advert. of Penn, LLC v. Town of*

3    *Orchard Park*, 356 F.3d 365, 378 (2d Cir. 2004) (internal quotation marks omitted).

4    The trickier question is whether the City has met its "stringent and . . .

5    formidable burden" in demonstrating that there is no reasonable expectation its

6    conduct will recur, i.e., that Srour's rifle and shotgun permit will not be revoked

7    for allegedly unconstitutional reasons. *Mhany*, 819 F.3d at 604 (citation omitted).

8    We hold that it has.

9    The City argues that "[t]here is no nonspeculative basis to conclude that

10   Srour will be subject to the character requirement for rifle/shotgun permitting

11   again in the future." City Reply Br. at 4 n.2. This is because the permit is subject

12   to *automatic* renewal every three years, and is subject to investigation only if "the

13   police commissioner has reason to believe that the status of the applicant has

14   changed." N.Y.C. Amin. Code § 10-303(f). At oral argument, the City

15   reaffirmed that "[Srour's] character . . . is not reassessed. So unless he is

16   rearrested . . . [or] decides to violate laws," he will not be subject to a character

17   assessment pursuant to subsection 10-303(a)(2). Oral Argument at 35:34–42.

18   These "representations are entitled to some deference." *Am. Freedom Def.*

19   *Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 110 (2d Cir. 2016) (giving weight to

1    a government agency's representations at oral argument that a challenged

2    regulation would not be applied to the plaintiff).

3        We agree with the City that there is no reasonable likelihood Srour again

4    will be subject to the allegedly unconstitutional character requirement.   Though

5    Srour argues that his license will be "subject to suspension and revocation at the

6    will of the License Division," Srour Post-Argument Letter Br. at 4, ECF No. 60,

7    there is no evidence to support the contention that his license will not in fact be

8    subject to automatic renewal, as is required by section 10-303(f) of the Code.   Nor

9    is there evidence, as Srour contends, that his application was granted "specifically

10   to seek vacatur of the permanent injunction."   *Id.*   Srour's October 2023

11   application was reviewed under the new implementing regulations which defined

12   "good moral character," *see* 38 R.C.N.Y. 3-03, suggesting this application was

13   granted when the previous one was denied due to a change in policy.   We have

14   previously held that a policy change from the government and a representation

15   that, under the current circumstances, the government will not resume the

16   challenged conduct, strongly support that the behavior is not reasonably expected

17   to recur.   *See Am. Freedom Def. Initiative*, 815 F.3d at 110 (holding the government

18   met its burden when, among other reasons, its regulations were amended and it

19   represented it would not apply the challenged regulation to the plaintiff); *Lillbask*

1    *ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 88–89 (2d Cir. 2005)

2    (explaining that while the *possibility* may exist that a child could be subject to

3    removal from a school, the defendant's concession that the child will not be

4    removed and their actions in helping the child thrive at the current school lead the

5    court "to conclude that a proposal to transfer [the child] . . . is [not] reasonably

6    likely to recur"); *Lamar*, 356 F.3d at 377 (finding that when defendant city amended

7    its regulations, mooting a plaintiff's claim, the voluntary cessation exception did

8    not apply, as there was "nothing [in the] record that would lead us to believe that

9    [defendant] intends to return to the questionable state of affairs that existed before

10   [plaintiff] filed suit").

11        Srour also argues that the City's statement that he may be subject to the

12   "good moral character" requirement again if he violates any laws or is rearrested

13   is "confirm[ation] that [the City] will continue to resume the challenged conduct."

14   Srour Post-Argument Letter Br. at 4, ECF No. 60.   This line of argument is of no

15   help to Srour.   The Supreme Court has "consistently refused to conclude that the

16   case-or-controversy requirement is satisfied by the possibility that a party will be

17   prosecuted for violating valid criminal laws.   [It has] instead assumed that

18   litigants will conduct their activities within the law and so avoid prosecution and

19   conviction as well as exposure to the challenged course of conduct."   *United States*

1    *v. Sanchez-Gomez*, 584 U.S. 381, 391 (2018) (alterations, citation, and internal

2    quotation marks omitted).

3          Lastly, Srour relies heavily on the recent Supreme Court case *Federal Bureau*

4    *of Investigation v. Fikre* in arguing that the City's issuance of the permit did not

5    moot the case.   However, Srour's situation is different from Fikre's, and *Fikre* does

6    not control our reasoning here.

7          In that case, Fikre challenged his addition to the No Fly List and sought

8    declaratory and injunctive relief, claiming that "the government had placed him

9    on the list for constitutionally impermissible reasons."   *Fikre*, 601 U.S. at 239.

10    After filing the lawsuit, Fikre was removed from the No Fly list but "[n]o

11    explanation accompanied the decision."   *Id.*   Because he was removed from the

12    No Fly List, the government argued that the case was moot, and even provided a

13    declaration representing that "Mr. Fikre will not be placed on the No Fly List in

14    the future based on the currently available information."   *Id.* at 240 (internal

15    quotation marks omitted).

16          The Supreme Court rejected the government's mootness argument, finding

17    that it did not "satisf[y] [its] formidable standard" of demonstrating it would not

18    again place Fikre on the No Fly List.   *Id.* at 243.   It found that the government's

19    "sparse declaration," *id.* at 242, as well as the contention that Fikre had not been

1    placed back on the list since 2016, were "insufficient to warrant dismissal," *id.* at

2    243.  Importantly, the Supreme Court also noted that "it appears no statute or

3    publicly promulgated regulation describes the standards the government employs

4    when adding individuals to, or removing them from, the list."  *Id.* at 237.

5         The fact that the defendant ceased and declared it would not restart its

6    challenged behavior are where the similarities between *Fikre* and this case begin

7    and end.   In *Fikre*, the government unilaterally took Fikre off the No Fly List.   *Id.*

8    at 239.   Here, Srour actively applied for a rifle and shotgun permit again.   Once

9    Srour re-applied for a permit, the City had legal obligations to him beyond his role

10   as a litigant in this suit.   It was required to process his application.   And it was

11   required to do so under the new regulations defining "good moral character"

12   promulgated by the NYPD.   *See* 38 R.C.N.Y. 3-03; *see also Hassoun v. Searls*, 976

13   F.3d 121, 132–33 (2d Cir. 2020) (explaining that the government did not

14   impermissibly unilaterally moot a case when the action mooting the case was a

1    part of a separate legal obligation).   Srour, not the City, initiated review of his new

2    application, which was eventually granted in March of 2024.[7]

3         Additionally, in *Fikre*, when faced with a policy governed by no public rules

4    or regulations, the Supreme Court could not rely on the government's "sparse

5    declaration" that Fikre would not be subject to impermissible placement on the No

6    Fly List in the future.   *Fikre*, 601 U.S. at 242.   Here, we have a robust set of rules

7    and regulations governing the granting and renewal of licenses.   *See* N.Y.C.

8    Admin. Code § 10-303; 38 R.C.N.Y. § 3-03.   We know quite a bit, including the

9    exact standards that changed between the denial of Srour's first application and

10   the granting of his second, the fact that his renewal will generally be automatic,

11   and the criteria under which his renewal would not be automatic.   Moreover,

12   unlike in *Fikre*, *if* Srour's renewal were to be denied in the future, he would be

13   provided with the exact reasons as to the denial.   *See* N.Y.C. Admin. Code § 10-

14   303(e)(1) ("[T]he commissioner shall issue the permit or shall notify the applicant

15   of the denial of the application and the reason or reasons therefor.").

---

[7] If the City, after being faced with this lawsuit and decision from the district court, unilaterally reversed its denial of Srour's original 2018 application and issued him a rifle and shotgun permit, his case might more closely resemble *Fikre*.   That, however, is not the case.

1    Thus, unlike the Supreme Court in *Fikre*, we are satisfied in Srour's case that

2    the City has met its burden of demonstrating that the challenged "behavior could

3    not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 190.

4    Because Srour has been granted his rifle and shotgun permit, he "lack[s] a legally

5    cognizable interest in the outcome" of his challenge requesting injunctive and

6    declaratory relief from section 10-303(a)(2) of the Code, and the appeal before us

7    is moot. *Powell v. McCormack*, 395 U.S. 486, 496 (1969).

8    **II.    Pendent Appellate Jurisdiction**

9    Because we conclude that Srour's claims for prospective relief are moot, we

10   decline to exercise appellate jurisdiction over his nonfinal retrospective claims. A

11   federal appellate court's jurisdiction is defined by statute, and under 28 U.S.C.

12   § 1291, it is generally limited to appeals from final orders of a district court. While

13   the district court entered an injunction and declaratory relief, it did not, and has

14   still not, calculated the damages available to Srour for the allegedly

15   unconstitutional denial of his firearms permits. Therefore, the district court's

16   order is not a "final order." *See In re Fugazy Express, Inc.*, 982 F.2d 769, 775 (2d Cir.

17   1992) ("An order granting summary judgment on the issue of liability, but

18   requiring a calculation of damages, is not an appealable final order.").

1     "However, where a district court grants permanent injunctive relief but

2     reserves decision on damages, we have jurisdiction to hear the appeal pursuant to

3     § 1292(a)(1)."   *Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1175 (2d Cir. 1995).

4     Because the district court entered an injunction of subsections (a)(2) and (a)(9) of

5     the Code, that injunction is an interlocutory order that we possess appellate

6     jurisdiction over pursuant to § 1292(a)(1).   However, "the Supreme Court has . . .

7     directed the Courts of Appeals not to take 'pendent appellate jurisdiction' on

8     interlocutory appeals of issues not themselves immediately appealable."   *Rein v.*

9     *Socialist People's Libyan Arab Jamahiriya*, 162 F.3d 748, 756 (2d Cir. 1998) (quoting

10    *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 51 (1995)).   As there is generally a

11    "bar to interlocutory appeals of all issues not independently warranting

12    immediate review," *id.* at 757, to review the portion of the district court's judgment

13    concerning retrospective relief would require this Court to assume pendent

14    jurisdiction on issues over which 28 U.S.C. § 1292(a)(1) does not independently

15    grant us jurisdiction, which is permitted only in limited circumstances.[8]

---

[8] We can assume pendent appellate jurisdiction over issues not warranting immediate review "(a) where an issue is inextricably intertwined with a question that is the proper subject of an immediate appeal, or (b) where review of a jurisdictionally insufficient issue is necessary to ensure meaningful review of a jurisdictionally sufficient one."   *Rein*, 162 F.3d at 757–58 (internal quotation marks omitted).

1    "We have held that issues usually will not be considered inextricably

2    intertwined where review of the unappealable issue is not necessary for review of

3    the issue over which we have appellate jurisdiction."   *Lamar Advert. of Penn, LLC*

4    *v. Town of Orchard Park*, 356 F.3d 365, 372 (2d Cir. 2004) (internal quotation marks

5    omitted).   Here, as explained *supra*, Srour's prospective claims based on the

6    district court's order granting injunctive and declaratory relief are now moot.   As

7    we lack jurisdiction to review these claims, it is neither necessary nor appropriate

8    to review the nonfinal retrospective claims.   We therefore decline to exercise

9    pendent appellate jurisdiction over any of Srour's claims for retrospective relief.

10   **III.    Vacatur**

11   When a case becomes moot on appeal, we must consider "what to do with

12   the lower court's judgment."   *Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 14 (2023)

13   (Jackson, *J.*, concurring).   We have the authority to "affirm, modify, vacate, set

14   aside or reverse any judgment, decree, or order of a court . . . as may be just under

15   the circumstances."   28 U.S.C. § 2106.   It is the case that "[w]hen a civil case

16   becomes moot pending appellate adjudication, 'the established practice in the

17   federal system is to reverse or vacate the judgment below and remand with a

18   direction to dismiss.'"   *Arizonans for Off. English v. Arizona*, 520 U.S. 43, 71 (1997)

19   (alterations omitted) (quoting *Munsingwear*, 340 U.S. at 39).   This general practice

1    makes sense—otherwise losing parties who wish to challenge a ruling may find

2    themselves saddled with an adverse but unappealable judgment if the underlying

3    district court decision is not vacated.   *See U.S. Bancorp Mortg. Co. v. Bonner Mall*

4    *P'ship*, 513 U.S. 18, 25 (1994) ("A party who seeks review of the merits of an adverse

5    ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be

6    forced to acquiesce in the judgment."); *see also Camreta v. Greene*, 563 U.S. 692, 713

7    (2011) ("When happenstance prevents . . . review from occurring, the normal rule

8    should apply: Vacatur then rightly strips the decision below of its binding effect,

9    and clears the path for future relitigation." (internal citations and quotation marks

10   omitted)).

11       Vacatur is not warranted, though, when an appellant acts in bad faith to

12   purposefully moot a case.   In such a case, "[a]n appellant's actions constitute

13   forfeiture of the benefit of vacatur" because it "voluntarily act[ed] with an intent

14   that the appeal become moot."   *Hassoun*, 976 F.3d at 131 (alteration and internal

15   quotation marks omitted).   But "conduct that is voluntary in the sense of being

16   non-accidental, but which is entirely unrelated to the lawsuit, should not preclude

1    our vacating the decision below."  *Russman v. Bd. of Educ.*, 260 F.3d 114, 122 (2d

2    Cir. 2001).

3          There is no indication that the City granted Srour's rifle and shotgun permit

4    to intentionally moot this case, or even that its action was related to this lawsuit.

5    It is true that the City's action in granting Srour a rifle and shotgun permit was the

6    final action in a chain of actions that ultimately mooted this appeal.  However, as

7    explained *supra*, the *first* action in that chain was precipitated by Srour himself—

8    he re-applied for a rifle and shotgun permit on October 26, 2023, after the district

9    court granted summary judgment in his favor and the City filed a notice of

10    interlocutory appeal in this action.  In deciding if vacatur is the correct path,

11    "[t]he appellant's fault in causing mootness is . . . the touchstone of our analysis."

12    *F.D.I.C. v. Regency Sav. Bank, F.S.B.*, 271 F.3d 75, 77 (2d Cir. 2001).  The City was

13    required to timely process the new application that Srour submitted, and there is

14    no indication that his permit was granted for the purpose of mooting this appeal.

15    Thus, we find that the standard practice of vacating the district court's judgment

16    is appropriate in this case.  *See Hassoun*, 976 F.3d at 132–33 (explaining that while

17    it was the government's actions in deporting the plaintiff that caused the case to

18    be moot, this action was a result of "the government's ongoing effort to comply

1    with" its statutory obligations, "independent of the pending lawsuit," and

2    therefore vacatur was appropriate).

3                                    **CONCLUSION**

4           For the reasons stated above, we **VACATE** the district court's judgment

5    enjoining subsection 10-303(a)(2) of the New York City Administrative Code and

6    its declaration that it is facially unconstitutional, **DISMISS** this appeal as moot,

7    and **REMAND** to the district court with instructions to dismiss Srour's claims for

8    injunctive and declaratory relief from New York City Administrative Code

9    subsection 10-303(a)(2) as moot.