# 23-7549

## United States Court of Appeals
## for the Second Circuit

JOSEPH SROUR,

*Plaintiff-Appellee,*

*v.*

NEW YORK CITY, NEW YORK, and EDWARD A. CABAN,
in his Official Capacity as NYPD Police
Commissioner,

*Defendants-Appellants,*

KEECHANT SEWELL,

*Defendant.*

## PETITION FOR REHEARING /REHEARING EN BANC

THE BELLANTONI LAW FIRM
*Attorneys for Appellee*
2 Overhill Road, Suite 400
Scarsdale, New York 10583
info@bellantoni-law.com

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES.........................................................................i

PRELIMINARY STATEMENT.................................................................1

I. VACATUR IS CONTRARY TO SUPREME COURT PRECEDENT ................2

II. VACATUR IS CONTRARY TO SECOND CIRCUIT PRECEDENT...............4

III. VACATUR IS CONTRARY TO OTHER CIRCUIT COURTS.........................6

IV. THE CITY ACTED VOLUNTARILY, AND INTENDED TO MOOT ITS APPEAL AND CAUSE THE VACATUR OF THE DISTRICT COURT JUDGMENT .........................................................................................8

    A.  Expedited Processing of License Application and Absence of Mandate .................................................................8

    B. The City Was Not Required to Reach a Particular Determination...........9

    C. The License Was Not Issued Under a 'New Policy' ...............................9

    D. The City Confirmed Its 'Old Ways' Will Be Applied Going Forward .. 12

    E. The City Voluntarily Complied ............................................................15

    F. City's History of Intentional Mootness to Avoid Review.......................16

CONCLUSION........................................................................................17

CERTIFICATE OF COMPLIANCE ........................................................18

Panel Decision,
    Dated September 9, 2024 ...................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abekassis v. New York City*,
    477 F. Supp. 3d 139 (S.D.N.Y. 2020)...................................................................... 16

*Am. Freedom  Def. Initiative v. Metro. Transp. Auth.*,
    815 F.3d 105 (2d Cir. 2016)..................................................................... 14

*Associated Gen. Contractors of Connecticut, Inc. v. City of New Haven*,
    41 F.3d 62 (2d Cir. 1994)................................................................... 1, 5

*Blair v. Shanahan*,
    38 F.3d 1514 (9th Cir. 1994)................................................................. 2, 7

*Doe v. Gonzales*,
    449 F.3d 415 (2d Cir. 2006).................................................................. 1, 4

*D'Onofrio v. Kelly*,
    4 Misc. 3d 1016(A), 798 N.Y.S.2d 343 (Sup. Ct. 2004) ...................................... 10

*Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd.*,
    336 F.3d 211 (3d Cir. 2003)................................................................. 2, 7

*Exxon Mobil Corp. v. Healey*,
    28 F.4th 383 (2d Cir. 2022)................................................................. 1, 4

*Fed. Bureau of Investigation v. Fikre*,
    601 U.S. 234 (2024).......................................................................... 14

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)........................................................................... 2

*Harper v. Neary*,
    225 A.D.3d 595 (2d Dept. 2024) .............................................................. 9

i

*Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*,
   510 U.S. 27 (1993) ................................................................. 3

*Karcher v. May*,
   484 U.S. 72 (1987) ............................................................. 1, 5

*La Grange v. Bruhn*,
   291 A.D.2d 601 (3d Dep't 2002) ......................................... 10

*Manufacturers Hanover Tr. Co. v. Yanakas*,
   11 F.3d 381 (2d Cir. 1993) ................................................. 1, 5

*New York State Rifle & Pistol Ass'n, Inc. v. City of New York, New York*,
   590 U.S. 336 (2020) ............................................................ 17

*Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet*,
   260 F.3d 114 (2d Cir. 2001) ............................................. 1, 4, 5

*Sierra Club v. Glickman*,
   156 F.3d 606 (5th Cir. 1998) ............................................. 2, 6

*Srour v. New York City, New York*,
   699 F. Supp. 3d 258 (S.D.N.Y. 2023), vacated and remanded, No. 23-7549-
   CV, 2024 WL 4112342 (2d Cir. Sept. 9, 2024) ...................... 5

*Tandy v. City of Wichita*,
   380 F.3d 1277 (10th Cir. 2004) ......................................... 2, 7

*Taveras v. New York City, New York*,
   2023 WL 3026871 (S.D.N.Y. Apr. 20, 2023) ....................... 16

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*,
   513 U.S. 18 (1994) ...................................................... Passim

*United States v. Munsingwear Inc.*,
   340 U.S. 36 (1950) ............................................................... 1

*United States v. Rahimi*,
   144 S. Ct. 1889 (2024) ................................................. 11, 13

**Statutes**

18 U.S.C. § 922(g) ................................................................................ 13

N.Y. Penal Law § 265.01(4) ................................................................ 13

**Regulations**

38 RCNY 3-02 ...................................................................................... 13

38 RCNY 3-03 ............................................................................... passim

38 RCNY 5-10 (a), (h), (l), and (n).................................................... 16

New York Administrative Code 10-303(a)(2).................................. 1, 17

New York Administrative Code 10-303(a)(9).................................... 16

## PRELIMINARY STATEMENT

Plaintiff-Appellee, Joseph Srour ("Srour") respectfully submits that a panel rehearing or hearing *en banc* is warranted because the panel's vacatur of the district court judgment was improper.

Relying on *United States v. Munsingwear Inc.*, 340 U.S. 36, 41 (1950), the panel dismissed appellant New York City's (the "City") appeal as moot, vacated the district court's judgment enjoining New York City Administrative Code subsection 10-303(a)(2) and declaring it facially unconstitutional, and remanded with instructions to dismiss Srour's claims for injunctive and declaratory relief from New York City Administrative Code ("NYAC") 10-303(a)(2) as moot.

The panel decision ("Decision") issued on September 9, 2024 conflicts with decisions of this Circuit; consideration by the full court is therefore necessary to secure and maintain uniformity of the Court's decisions. See, *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 397 (2d Cir. 2022); *Doe v. Gonzales*, 449 F.3d 415, 420 (2d Cir. 2006); *Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet*, 260 F.3d 114, 122 (2d Cir. 2001); *Associated Gen. Contractors of Connecticut, Inc. v. City of New Haven*, 41 F.3d 62, 67 (2d Cir. 1994); *Manufacturers Hanover Tr. Co. v. Yanakas*, 11 F.3d 381, 383 (2d Cir. 1993);

The Decision conflicts with decisions of the United States Supreme Court. See, *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994);

1

*Friends of the Earth*, *Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 194 n. 6 (2000); *Karcher v. May*, 484 U.S. 72 (1987).

The Decision conflicts with the authoritative decisions of other United States Courts of Appeal that have addressed the issue. See, *Sierra Club v. Glickman*, 156 F.3d 606, 620 (5th Cir. 1998); *Tandy v. City of Wichita*, 380 F.3d 1277 (10th Cir. 2004); *Blair v. Shanahan*, 38 F.3d 1514 (9th Cir. 1994); *Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 218 (3d Cir. 2003).

This issue also presents a question of exceptional importance.

## I. VACATUR IS CONTRARY TO SUPREME COURT PRECEDENT

Vacatur is available only in "extraordinary circumstances" and an appellant's "voluntary forfeiture of review constitutes a failure of equity that makes the burden decisive, whatever respondent's share in the mooting of the case might have been." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994).

The Supreme Court has cautioned that "it is far from clear that vacatur ... would be the appropriate response to a finding of mootness on appeal brought about by the voluntary conduct of the party that lost in the District Court." *Friends of the Earth*, *Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 194 n. 6 (2000). The City failed to demonstrate "equitable entitlement to the extraordinary remedy of vacatur." *U.S. Bancorp*, 513 U.S. at 29.

2

"Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." *U.S. Bancorp*, 513 U.S. at 26–27 (1994) citing *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 40 (1993) (STEVENS, J., dissenting).

Where the appellant has caused the mootness, the appeal may be dismissed without vacating the district court judgment. *U.S. Bancorp*, 513 U.S. at 25.

Public policy dictates that a judgment holding that a statute is facially unconstitutional should not be vacated where the City's voluntary conduct caused its own appeal to be moot. See, e.g., *U.S. Bancorp*, 513 U.S. at 28 ("We again assert the inappropriateness of disposing of cases, whose merits are beyond judicial power to consider, on the basis of judicial estimates regarding their merits").

The panel had no jurisdiction to consider the merits of the City's appeal where it found that the issuance of a license mooted the appeal, as issuing the license was a voluntary by the appellate, New York City.

Having been divested of jurisdiction to hear the City's appeal, the panel should have dismissed the appeal outright and declined to reward the City for its actions by vacating the district court judgment. The district court judgment should be reinstated.

3

## II. VACATUR IS CONTRARY TO SECOND CIRCUIT PRECEDENT

This Circuit does not 'automatically' vacate district court orders "where the party seeking relief from the judgment below caused the mootness by voluntary action." *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 397 (2d Cir. 2022), quoting *Doe v. Gonzales*, 449 F.3d 415, 420 (2d Cir. 2006) (internal quotation marks omitted).

"If the case has become moot due to circumstances unattributable to any of the parties or from the unilateral action of the party who prevailed in the district court, vacatur is usually warranted. However, when "the party seeking relief from the judgment below caused the mootness by voluntary action, vacatur is usually not warranted." *Doe v. Gonzales*, 449 F.3d 415, 420 (2d Cir. 2006) (cleaned up).

The City lost in the district court, which declared New York City statute 10-303(a)(2) facially unconstitutional and issued a permanent injunction against its enforcement. The City was in control of mooting its own appeal and preventing appellate review of the merits of the district court judgment by voluntarily issuing a license to Srour.

This voluntary forfeiture of review "means that the Government has failed to meet its burden of demonstrating that it is entitled to vacatur of the [d]istrict [court's permanent] injunction ruling." *Doe*, 449 F.3d at 420 citing, *Russman*, 260 F.3d at

4

122 (In considering whether vacatur is inappropriate, our primary concern is the fault of the parties in causing the appeal to become moot).

"Where the appellant has caused the mootness, we may dismiss the appeal without vacating the district court's judgment." *Russman*, 260 F.3d at 122 citing, *U.S. Bancorp*, 513 U.S. at 25; *Karcher v. May*, 484 U.S. 72, 82–83 (1987); *Associated Gen. Contractors*, 41 F.3d at 67; *Mfrs. Hanover Trust*, 11 F.3d at 383.

"If we were to vacate where the party that lost in the district court has taken action to moot the controversy, the result would be to allow that party to eliminate its loss without an appeal and to deprive the winning party of the judicial protection it has fairly won." *Russman*, 260 F.3d at 122 quoting, *Manufacturers*, 11 F.3d at 383 ("the appellate court should not vacate the judgment below if the case has become moot due to the voluntary act of the losing party").

By vacating the district court judgment, the panel improperly allowed the City to "eliminate its loss" and "deprived [Srour] of the judicial protection he fairly won" below.[1]

---

[1] The Decision caused the entire district court opinion and order to be vacated, which included the finding that, by enforcing NYAC 10-303(a)(2) to deny his rifle/shotgun license, the City violated Srour's Second Amendment rights. See, *Srour v. New York City, New York*, 699 F. Supp. 3d 258 (S.D.N.Y. 2023), *vacated and remanded*, No. 23-7549-CV, 2024 WL 4112342 (2d Cir. Sept. 9, 2024) The holding that § 10-303(a)(2) and (9) are facially unconstitutional is relevant to Srour's plenary Second Amendment claims, which remain alive below. Moreover, the district court decision can no longer be cited, which deprives the People of New York City, and elsewhere, of the ability to cite Judge Cronan's extensive analysis and findings – which remain unchallenged by the City.

Confusingly, the panel cites *Russman* for the premise that "conduct that is voluntary in the sense of being non-accidental, but which is *entirely unrelated to the lawsuit*, should not preclude our vacating the decision below" [Decision, 28-29 (emphasis added)]. But went on to hold that, by the issuance of a license, "Srour has been granted the very *relief he sought*" *in his lawsuit* [*Id.* at 2, 5 (emphasis added)].

But Srour's federal complaint did not seek the issuance of a license [A11], it sought, *inter alia,* a declaration that NYAC 10-303(a)(2) is facially unconstitutional and the permanent injunction thereof [A44].

The City's issuance of a license did not grant the relief he sought in his lawsuit - a declaration of unconstitutionality or a permanent injunction of 10-303(a)(2). The issuance of a license satisfied *none of the relief* pled in Srour's complaint. And the panel's vacatur stripped Srour of his winnings.

Vacatur of the district court judgment is inconsistent with Second Circuit precedent.

## III. VACATUR IS CONTRARY TO OTHER CIRCUIT COURTS

The panel decision conflicts with other circuit courts on the issue of vacatur where mootness results from the losing party's voluntary conduct. See, *Sierra Club v. Glickman*, 156 F.3d 606, 620 (5th Cir. 1998) ("where mootness results from the voluntary actions of the losing party, such party has forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the

equitable remedy of vacatur; finding the issue was rendered moot by the USDA's voluntary compliance with the district court's judgment and declining vacatur) citing, *U.S. Bancorp*, 513 U.S. at 24; see also, *Tandy v. City of Wichita*, 380 F.3d 1277, 1291–92 (10th Cir. 2004) ("Vacatur…is an equitable remedy, and a key consideration in determining its appropriateness is whether the party seeking vacatur caused the mootness through voluntary action…Wichita has not presented any equitable consideration which would justify vacatur despite the fact that mootness was brought about by Wichita Transit's voluntary compliance. Therefore, this court declines to vacate the district court's injunction against Wichita Transit's driver-discretion policy."); *Blair v. Shanahan*, 38 F.3d 1514, 1520–21 (9th Cir. 1994) (*Munsingwear* vacatur is inapplicable when appellant renders appeal moot by his own act; "a dissatisfied litigant should not be allowed to destroy the collateral consequences of an adverse judgment by destroying his own right to appeal") (cases cited); *Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 218 (3d Cir. 2003) (mootness caused by the voluntary act of the losing party does not justify vacatur of a judgment under review).

**IV. THE CITY ACTED VOLUNTARILY, AND INTENDED TO MOOT ITS APPEAL AND CAUSE THE VACATUR OF THE DISTRICT COURT JUDGMENT**

    **A.  Expedited Processing of License Application and Absence of Mandate**

The panel implies that Srour is responsible for mooting the City's appeal by applying for a new license [Decision 23-24]. Not so. For one, while the City "was required to process his application" [Decision, 23] *in due course*, the City expedited the process.

The City's licensing process generally exceeds six months [A30-31]. Srour's initial application was filed on November 12, 2018 [A55 at ¶80] and decided on June 13, 2019 [A55 at ¶81]. A determination of his internal appeal to the License Division occurred on November 7, 2019 [A124].

Srour submitted a new application for a rifle/shotgun license "in October 2023, after the district court granted him declaratory and permanent-injunctive relief [on October 24][2], and after the City filed its notice of appeal" [City Br. at 4; Dkt. 48.1].

In expedited fashion, the City issued Srour a license on March 2024 [City Br. at 1] – just days before filing its Reply Brief in this Court wherein it argued that its appeal was now moot and the district court judgment should be vacated [City Br. at 29].

---

[2] SPA2.

8

**B. The City Was Not Required to Reach a Particular Determination**

While the City "was required to process his application" [Decision, 23] it was not required to reach a particular determination – whether to grant or deny the application. Mandamus to compel the issuance of a license to Srour was never part of his federal complaint.[3]

The 'moral character' statute, NYAC 10-303(a)(2), imbues the NYPD police commissioner with "unabridged discretion," which the City failed to show "has any grounding in our Nation's historical tradition of firearm regulation" [SPA48]. And, the district court's permanent injunction of 10-303(a)(2) was stayed by this Court [Decision, 13].

The City acted voluntarily when using a license to Srour.

**C. The License Was Not Issued Under a 'New Policy'**

The panel overlooked the record when finding that the issuance of a license "suggest[s] this application was granted…due to a change in policy" [Decision, 20].

First, the City Council did not amend the statute enjoined by the district court: §10-303(a)(2).

---

[3] New York courts continue to reject the idea of mandamus relief for the issuance of a firearm license. See, e.g., *Harper v. Neary*, 225 A.D.3d 595, 597, 206 N.Y.S.3d 390, 393, appeal dismissed, 41 N.Y.3d 1007, 237 N.E.3d 819 (2024) (where "the statute empowers the licensing officer to exercise discretion to determine, *inter alia*, whether the applicant is of 'good moral character'…the petitioner is not entitled to mandamus relief") (Penal Law § 400) (cases cited).

Second, the unilateral amendment of NYPD internal rules[4] by the then-police commissioner in December 2022, revocable at-will, simply reworded the <u>preamble</u> to 38 RCNY 3-03 (the "Rule") for <u>rifles and shotguns</u> to mirror the definition of the 'moral character' requirement set forth in New York State's <u>handgun</u> licensing regime [A316-317].[5]

Rewording the preamble to Rule 3-03 was nugatory, as the enumerated factors under 3-03 the City relies on to determine whether 'moral character' exists -- subsections (a)-(n) – have not changed.

And even before the 2022 amendment, the standard applied by the police commissioner (and New York State) for determining 'moral character' has been whether individuals, "by their conduct, have shown themselves to be lacking the essential temperament  or character which should be present in one entrusted with a dangerous instrument…" *D'Onofrio v. Kelly*, 4 Misc. 3d 1016(A), 798 N.Y.S.2d 343 (Sup. Ct. 2004), aff'd, 22 A.D.3d 343 (1st Dept. 2005) citing *La Grange v. Bruhn*, 291 A.D.2d 601 (3d Dep't 2002).

Under the amended preamble to Rule 3-03, moral character now reads: "having the essential character, temperament and judgement necessary to be

---

[4] 38 RCNY 3-03.
[5] Notably, the City did not argue below that the amendment to the preamble of Rule 3-03 foreclosed injunctive and declaratory relief as to NYAC § 10-303(a)(2) [A132]

entrusted with a weapon and to use it only in a manner that does not endanger oneself or others" [A316-317]. While the words changed, the policy remained the same.

But the 3-03 subsections were not amended; they continue to include the following grounds for denial, suspension, and revocation of a rifle/shotgun license: sub. (a) past arrests, even if dismissed and sealed; (e) failure to disclose past arrests that were dismissed and sealed; (h) poor driving history; (j) termination from employment failure to pay child support under circumstances that demonstrate lack of good judgment or lack of good moral character; (l) failure to pay legally required debts such as child support, taxes, fines or penalties imposed by governmental authorities; and (n) Other information that demonstrates a lack of good moral character, including but not limited to an unwillingness to abide by the law, a lack of candor towards lawful authorities, a lack of concern for the safety of oneself and/or other persons and/or for public safety, or an inability to maintain rifle/shotgun possession in a manner that is safe to oneself or others."

Perhaps such events are the mark of an irresponsible person, but they are not objective adjudications that a person is presently "a danger to another person." See, *United States v. Rahimi*, 144 S. Ct. 1889, 1903 (2024) (unanimously rejecting the premise that an individual may be disarmed simply because he is not "responsible").

The December 2022 amendment to the preamble, enacted while Srour's motion for summary judgment was pending, was intended to insulate the 3-03 Rule

from constitutional challenge. The district court found that the City's amendment mooted Srour's challenge to Rule 3-03(a), (e), (h), and (n).

And by tracking the state language for handguns, which have a decidedly separate historical analogue from long guns, the City hoped to insulate and sanctify its application of a 'moral character' requirement under 3-03.

The City openly continues to enforce § 10-303(a)(2) under the Rule 3-03 subsections as it did before the 2022 amendment: denying licenses for "prior arrests" [sub. (a)]; "poor driving history" [sub. (h)] and the wildly subjective 'catch-all' subsection (n). See, e.g., *Flaifel v. New York City*, 1:24-cv-06838-MMG (filed September 10, 2024) (preliminary injunction motion pending)] (July 2024 denial under (a), (h), and (n) based *solely* on the plaintiff's driving history); *Cohen v. New York City, New York et al.*, 1:24-cv-02594-LJL (filed April 5, 2024) (revoked under (a) for arrest that was dismissed and sealed by the criminal court).

The City's "old ways" were only suspended when it issued a license to Srour.

**D. The City Confirmed Its 'Old Ways' Will Be Applied Going Forward**

At oral argument, the City confirmed that the same policies that led to Srour's 2019 denial will be applied to Srour every three years, at a minimum.

Renewal of an automatically expiring license is not "automatic" [Decision, 19]. The panel overlooked and/or disregarded the police commissioner's open-ended discretion to deny a renewal application [10-303(f)], which requires the licensee to

complete questions on a form that the City never disclosed and the panel never saw [see, Rule 3-03(6) "Prior to the expiration of her/his rifle/shotgun permit the permittee shall be sent a renewal notice. The permittee shall answer all questions, comply with all instructions, submit a certified check or money order made payable to the N.Y.C. Police Department as required, sign and date the notice and forward it to the Rifle/Shotgun Section"].[6]

At oral argument, the City confirmed that the same innocuous events, and some undefined missteps, will trigger denial:

> "…if new facts come to light…his character is not reassessed unless he is rearrested, unless something, he again decides to violate laws. It's not just driving history, it's ignoring direct instructions about not doing certain things for public safety reasons. So he was told "this is illegal, don't do this," and then he did it again, so he was charged with violations of the Navigational Law, so if that kind of thing happens again, then his character could be reassessed…"

[Oral Argument at 35:20-36:05; Decision 19-20].

Another jet ski infraction, speeding ticket, unpaid fine, false arrest - and Srour's Second Amendment right is up for grabs.[7]

---

[6] Under Rule 3-05(b), a license may be also suspended or revoked at any time "upon evidence of any disqualification pursuant to subdivision a of § 10-303 of the Administrative Code and 38 RCNY §§ 3-02 and 3-03."

[7] Again, the subjective assessment of events that do not rise to a "court adjudication of dangerousness" [*Rahimi*, supra] or other existing disqualifiers under 18 U.S.C. § 922(g) and/or Penal Law 265.01(4) are off the proverbial table as a basis to interfere with an individual's right

13

The panel relied on *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 110 (2d Cir. 2016), which credited the MTA's representation in its brief and oral argument that "it would not apply the challenged regulation to the plaintiff" [Decision, 19-20], to give deference to the City's statements at oral argument that renewal was 'automatic.'[8]

But oral argument confirmed *the opposite.* The City's representations bear out that its broad and discretionary 'moral character' assessment under NYAC § 10-303(a)(2) will continue to be enforced and that the Rule 3-03 preamble is merely window dressing.

Significantly, the City has *never* represented that it will stop - or has stopped - enforcing a 'moral character' requirement for the possession of rifles and shotguns – the basis of Srour's lawsuit. The enforcement of a subjective and discretionary moral character requirement for rifles and shotguns - § 10-303(a)(2) – was held facially unconstitutional by the district court.

---

to possess bearable arms under the Second Amendment. The City's regulations exemplify government conduct the plain text of the Second Amendment expressly forbids.

[8] The panel finding that Srour's license was issued "due to a change in policy" is belied by the record, the City's history of mooting challenges to its firearm regulations, and pending litigation in *Flaifel* and *Cohen*, supra. Moreover, the Supreme Court in *Fikre* rejected the government's affidavit that they would not take the same action against Fikre in the future. *Fikre,* 601 U.S. at 242. Yet here, the City *confirmed* that it will - and has against other people. See, *Flaifel* and *Cohen*, supra.

### E. The City Voluntarily Complied

Srour's license was denied in 2019 based on his driving history, two navigational law violations, and false arrests that were dismissed and sealed.

Had the City actually enforced its policies, no license would have been issued. Srour's background – the facts that gave rise to his initial denial based on a conclusion that he is "dangerous and not law abiding" – have not changed since the City's denial in 2019.

And as of October 2023, the City continued to believe Srour was 'dangerous and not law-abiding.' The City's October 25, 2023 letter seeking a stay pending appeal of the district court judgment informs, "the License Division believes that Plaintiff is both 'dangerous' and not law-abiding" [*Srour I* ECF 45, p. 3 n. 3]. Then a few months later, the License Division issued a 'dangerous and not law-abiding' person a license to possess firearms – and in expedited fashion – while continuing to deny and revoke other individuals under the same subsections that caused Srour's denial in 2019 [see, *Flaifel* and *Cohen*, supra].

Had the City enforced its regulations (as it did against the plaintiffs in *Flaifel* and *Cohen*) and adhered to its assessment that Srour is a 'dangerous and not law-abiding' individual, Srour's application would have been denied, again.

Instead, the City expedited his application and voluntarily complied with the district court order permanently enjoining NYAC 10-303(a)(2).

15

The City's "old ways" have never ceased. The People, including Srour, continue to be subject to a discretionary moral character assessment [§ 10-303(a)(2)] to simply possess rifles and shotguns.

### F. City's History of Intentional Mootness to Avoid Review

The City has a history of mooting challenges to its firearm regulations.

By amending the preamble to Rule 3-03 while Srour's summary judgment motion was *sub judice*, the City mooted Srour's constitutional challenges to 38 RCNY 3-03(a), (e), (h), and (n) [SPA4]. Any future police commissioner can unilaterally repeal the amendment, which is an executive decision not subject to a vote, board approval, or similar controls.

By issuing a license to Srour, the City intended to moot Srour's second federal lawsuit [*Srour II*], which seeks an injunction of the amended Rule 3-03, and to vacate the district court's judgment.

The City mooted the plaintiffs' claims in *Abekassis v. New York City*, 477 F. Supp. 3d 139, 143 (S.D.N.Y. 2020), judgment vacated, appeal dismissed, No. 20-3038, 2021 WL 852081 (2d Cir. Mar. 4, 2021) (challenge to 38 RCNY § 5-10 (a), (h), (l), and (n)[9] mooted by issuing a license to plaintiff); *Taveras v. New York City, New York*, No. 20 CIV. 1200 (KPF), 2023 WL 3026871, at *7 (S.D.N.Y. Apr. 20, 2023) (challenge to § 10-303(a)(2) and (a)(9), 38 RCNY 3-03 (f) and (g) mooted by

---

[9] Subsections (a)-(n) of Rule 5-10 (handgun licenses) mirror 3-03.

mailing a license to plaintiff; and then served a Rule 65 Offer of Judgment to prevent the plaintiff from proceeding with his plenary claims).

In *New York State Rifle & Pistol Ass'n, Inc. v. City of New York, New York*, 590 U.S. 336 (2020) the City Council amended its statutes to moot the challenge to its carry restrictions. At least in *NYSRPA v. City* the complained-of regulation was eliminated by the City Council.

Here, the City continues to impose a 'moral character' requirement on the mere possession of rifles and shotguns.

## CONCLUSION

Plaintiff-Appellee's motion for rehearing or rehearing *en banc* should be granted, the panel decision reversed, New York City's appeal dismissed as moot, the district court October 24, 2023 opinion and order and judgment reinstated in the entirety, and this Court's Order staying the district court judgment permanently enjoining New York Administrative Code 10-303(a)(2) should be vacated.

Dated: September 23, 2024
     Scarsdale, New York

                           Respectfully submitted,

                           The Bellantoni Law Firm, PLLC
                           *Attorneys for Plaintiff-Appellee*

By:  *Amy L. Bellantoni*
       Amy L. Bellantoni
       2 Overhill Road, Suite 400
       Scarsdale, New York 10583
       abell@bellantoni-law.com

17

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared using Microsoft Word 2016 and, according to that software, it contains 3521words, not including the cover, Table of Contents, Table of Authorities, and this Certificate of Compliance.


_Amy L. Bellantoni_
Amy L. Bellantoni

23-7549-cv
*Srour v. New York City*



In the

United States Court of Appeals

For the Second Circuit

_____

August Term, 2023

(Argued: June 10, 2024; Decided: September 9, 2024)

No. 23-7549-cv

_____

JOSEPH SROUR,

*Plaintiff-Appellee,*

v.

NEW YORK CITY, New York, and EDWARD A. CABAN, in his Official Capacity as
NYPD Police Commissioner,

*Defendants-Appellants,*

KEECHANT SEWELL,*

*Defendant.*

_____

Before:        LEVAL, LOHIER, and LEE, *Circuit Judges.*

_____

* The Clerk of the Court is respectfully directed to amend the official caption to conform
to the above.

CERTIFIED COPY ISSUED ON 09/09/2024

In 2019, Joseph Srour was denied a permit to possess rifles and shotguns in his home in New York by the New York City Police Department ("NYPD") License Division. Subsequently, he initiated this lawsuit seeking injunctive, declaratory, and monetary relief, bringing a constitutional challenge to various provisions of the New York City Administrative Code and the Rules of the City of New York, which provide the legislative and administrative framework, respectively, for granting rifle and shotgun permits. Most relevant to this appeal is the requirement that an applicant have "good moral character" to be issued a rifle and shotgun permit. *See* N.Y.C. Admin. Code § 10-303(a)(2); 38 R.C.N.Y. § 3-03.

Srour moved for summary judgment, but prior to the district court's decision, the NYPD updated the Rules of the City of New York to provide a definition of "good moral character," which was previously undefined. The district court (Cronan, *J.*) granted Srour's motion with regard to the New York City Administrative Code, enjoining the enforcement of the "good moral character" requirement and the separate "good cause" requirement, and declaring them unconstitutional. *Srour v. New York City*, 699 F. Supp. 3d 258, 285, 289 (S.D.N.Y. 2023). The district court did not and has not yet decided the amount of damages. *Id.* at 289.

Defendants-Appellants, New York City and New York City Police Commissioner Edward A. Caban (collectively, "the City"), filed this interlocutory appeal asking us to review the district court's judgment enjoining enforcement of New York City Administrative Code subsection 10-303(a)(2). In the meantime, Srour applied for a rifle and shotgun permit again, and immediately brought another suit against the City on the theory that he would surely be denied another permit. However, on March 21, 2024, Srour was granted his rifle and shotgun permit.

The City now asks us to deem this appeal moot and to vacate the district court's judgment enjoining enforcement of New York Administrative Code subsection 10-303(a)(2) and declaring it unconstitutional. We now hold that because Srour has been granted the very relief he sought, the case before us is moot, and we lack jurisdiction to hear the merits. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Accordingly, we **VACATE** the district court's judgment enjoining New York City Administrative Code subsection 10-303(a)(2) and

1    declaring it facially unconstitutional, **DISMISS** this appeal as moot, and
2    **REMAND** the case to the district court with instructions to dismiss Srour's claims
3    for injunctive and declaratory relief from New York City Administrative Code
4    subsection 10-303(a)(2) as moot.   *See United States v. Munsingwear Inc.*, 340 U.S. 36,
5    41 (1950).

6    _____

7

8                                              ELINA DRUKER (Claude S. Platton, Richard
9                                              Dearing, *on the brief*), Of Counsel, New York City
10                                             Law Department, *for* Muriel Goode-Trufant,
11                                             Acting Corporation Counsel for the City of New
12                                             York, New York, NY, *for Defendants-Appellants.*

13

14                                             AMY L. BELLANTONI, The Bellantoni Law Firm,
15                                             PLLC, Scarsdale, NY, *for Plaintiff-Appellee.*

16

17                                             Joseph G.S. Greenlee, Greenlee Law, PLLC,
18                                             McCall, ID, *for Amicus Curiae* Firearms Policy
19                                             Coalition and FPC Action Foundation, *in support of*
20                                             *Plaintiff-Appellee.*

21    _____

22

23   EUNICE C. LEE, *Circuit Judge*:

24          In 2019, Joseph Srour was denied a permit to possess rifles and shotguns in

25   his home in New York, by the New York City Police Department ("NYPD")

26   License Division.   Subsequently, he initiated this lawsuit seeking injunctive,

27   declaratory, and monetary relief, bringing a constitutional challenge to various

28   provisions of the New York City Administrative Code and the Rules of the City of

29   New York, which provide the legislative and administrative framework,

30   respectively, for granting rifle and shotgun permits.   Most relevant to this appeal

3

1   is the requirement that an applicant have "good moral character" to be issued a

2   rifle and shotgun permit.   *See* N.Y.C. Admin. Code § 10-303(a)(2); 38 R.C.N.Y. § 3-

3   03.

4          Srour moved for summary judgment, but prior to the district court's

5   decision, the NYPD updated the Rules of the City of New York to provide a

6   definition of "good moral character," which was previously undefined.   The

7   district court (Cronan, *J.*) granted Srour's motion with regard to the New York City

8   Administrative Code, enjoining the enforcement of the "good moral character"

9   requirement and the separate "good cause" requirement and declaring them

10  unconstitutional.   *Srour v. New York City*, 699 F. Supp. 3d 258, 285, 289 (S.D.N.Y.

11  2023).   The district court did not and has not yet decided the amount of damages.

12  *Id.* at 289.

13         Defendants-Appellants, New York City and New York City Police

14  Commissioner Edward A. Caban[1] (collectively, "the City"), filed this interlocutory

15  appeal asking us to review the district court's judgment enjoining the enforcement

16  of New York City Administrative Code subsection 10-303(a)(2).   In the meantime,

---

[1] When Srour brought this suit, Keechant Sewell was the New York City Police
Commissioner.   However, Edward A. Caban was appointed to the role of Commissioner
on July 17, 2023, and therefore was automatically substituted for Sewell pursuant to
Federal Rule of Civil Procedure 25(d).

1    Srour applied for a rifle and shotgun permit again, and immediately brought

2    another suit against the City on the theory that he would surely be denied another

3    permit.  However, on March 21, 2024, Srour was granted his rifle and shotgun

4    permit.

5        The City now asks us to deem this appeal moot and to vacate the district

6    court's judgment enjoining enforcement of New York Administrative Code

7    subsection 10-303(a)(2) and declaring it unconstitutional.  We hold that because

8    Srour has been granted the very relief he sought, the case before us is moot and

9    we lack jurisdiction to hear the merits.  *See Already, LLC v. Nike, Inc.*, 568 U.S. 85,

10    91 (2013).  Accordingly, we **VACATE** the district court's judgment enjoining New

11    York City Administrative Code subsection 10-303(a)(2) and declaring it facially

12    unconstitutional, **DISMISS** this appeal as moot, and **REMAND** to the district

13    court with instructions to dismiss Srour's claims for injunctive and declaratory

14    relief from New York City Administrative Code subsection 10-303(a)(2) as moot.

15    *See United States v. Munsingwear Inc.*, 340 U.S. 36, 41 (1950).

16                         **BACKGROUND**

17    **I.**      **Rifle and Shotgun Licensing in New York City**

18        Prior to delving into the specific facts of Srour's case, it is helpful to outline

19    the licensing scheme for the ownership of shotguns and rifles in New York City.

1    While state law governs handgun licensing for individuals, *see generally* N.Y. Penal

2    Law § 400.00, possession of rifles and shotguns is regulated by the City of New

3    York through the New York City Administrative Code (the "Code") section 10-

4    303.

5         The Code provides, among other things, that "[n]o person shall be denied a

6    permit to purchase and possess a rifle or shotgun unless the applicant . . . is not of

7    good moral character."   N.Y.C. Admin. Code § 10-303(a)(2).[2]   The Code also

8    directs any application for a permit to be made to the police commissioner.

9    *Id*. § 10-303(b).

10        The New York City Charter allows the police commissioner to "adopt rules

11   necessary to carry out the powers and duties delegated to [the NYPD] by . . . local

12   law."   N.Y.C. Charter § 1043(a)(2).   The Police Department's regulations

13   regarding the process for issuing permits for rifles and shotguns are codified in

14   title 38, chapter 3 of the Rules of the City of New York (the "Rules").   Prior to

15   December 2022, the Rules stated that "an application for a rifle/shotgun permit

16   may be denied where it is determined that an applicant lacks good moral character

---

[2] Srour also challenged subsection 10-303(a)(9) of the Code, which allows the denial of a permit for "good cause."   N.Y.C. Admin. Code § 10-303(a)(9).   While the district court did enjoin enforcement of that provision, the City does not challenge that ruling on appeal, and the issue is thus not properly before this Court.

1    [or that other good cause exists for denial]."   New York City Police Department,

2    *Notice of Adoption of Final Rule* 4 (Dec. 13, 2022), https://perma.cc/U626-ME6W.

3    However, this section was amended on December 16, 2022, so that it now contains

4    a definition of "good moral character" and no longer permits denial for "good

5    cause."   *See* 38 R.C.N.Y. § 3-03 ("For the purposes of this chapter, 'good moral

6    character' means having the essential character, temperament and judgment

7    necessary to be entrusted with a weapon and to use it only in a manner that does

8    not endanger oneself or others.").   This definition in substance tracks the

9    definition for "good moral character" used by New York State in its handgun

10   licensing scheme.   *See* N.Y. Penal Law § 400.00(1)(b) ("[F]or the purposes of this

11   article, [good moral character] shall mean having the essential character,

12   temperament and judgement necessary to be entrusted with a weapon and to use

13   it only in a manner that does not endanger oneself or others[.]").

14   **II.    Srour's Rifle and Shotgun Permit Application**

15       In 2018, Srour, a resident of Brooklyn, New York, applied for a permit to

16   possess rifles and shotguns in his home.   His application was denied on June 13,

17   2019.[3]   The NYPD License Division issued a Notice of Application Disapproval,

---

[3] Srour also applied for, and was denied, a permit to possess handguns in his home.

1    which explained that Srour's prior arrests "show[ing] poor moral judgment," and

2    his "derogatory driving record . . . , reflect negatively upon [Srour's] moral

3    character and cast[] grave doubt upon [Srour's] fitness to possess a firearm."

4    App'x at 119.

5          Srour administratively appealed the denial of his rifle and shotgun

6    application.    In November of 2019, the NYPD License Division denied his appeal

7    through a Notice of Disapproval After Appeal.    The Notice began by referencing

8    New York State Penal Law section 400.00, which provides that "no license shall be

9    issued except for an applicant . . . (b) of good moral character . . . and; (n) for whom

10   no good cause exists for the denial of a license."    App'x at 124 (quoting N.Y. Penal

11   Law § 400.00(1)).    It also referenced the Rules as "provid[ing] a list of factors to be

12   considered in assessing moral character and 'good cause.'"    *Id.*

13         The Notice explained that even though the prior criminal cases against

14   Srour were dismissed, his previous arrests and their "violent nature" were "factors

15   supporting denial of his applications."    *Id.*    It also stressed that the failure to

16   disclose his previous arrests on his initial application "demonstrate[d] a lack of

---

Because this interlocutory appeal concerns only his challenge to the City's denial of his rifle and shotgun application, the specifics of his handgun application and denial will not be discussed.

1    candor and is a strong ground for disapproval of his applications." *Id.* at 125.

2    Finally, the Notice indicated that Srour's many moving violations and license

3    suspensions "demonstrate[] an inability to abide by laws and regulations." *Id.*

4    All of these factors, the Appeal Notice concluded, "portray a lack of good moral

5    character and disregard for the law." *Id.* at 125–26.

6    **III.    Procedural History**

7    **A.    Srour's Complaint and Motion for Summary Judgment**

8        On January 2, 2022, Srour initiated a suit against the City of New York and

9    then-Police Commissioner Sewell seeking monetary, declaratory, and injunctive

10   relief for the denial of his firearms applications.   In it, he claimed that the City's

11   "discretionary and permissive" licensing scheme for handguns, rifles, and

12   shotguns "violate[s] the Second Amendment facially and as applied to Plaintiff."

13   App'x at 12.

14       Specifically, Srour claimed that subsections 10-303(a)(2) and (a)(9) of the

15   Code, authorizing the City to deny a rifle or shotgun permit based on good moral

16   character  and  good  cause,  respectively,  are  improperly  discretionary  and

17   permissive, and are therefore unconstitutional facially and as applied to him.

18   Srour also challenged as unconstitutional specific sections of the Rules that the

19   police department had promulgated to implement section 10-303 of the Code and

1  section 10-310 of the Code (providing criminal penalties for violations of sections

2  10-301 through 10-309).   He also argued that all of these rules and regulations are

3  preempted by state law.

4       On June 23, 2022, six months after Srour filed his complaint, the Supreme

5  Court decided a challenge to New York State's handgun licensing scheme in *New*

6  *York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), ruling against

7  the State.   In response, on July 1, the state legislature amended its handgun

8  licensing regime.   The district court had stayed Srour's case in the interim, and

9  after the *Bruen* decision, directed the parties to submit a joint letter on September

10  25, 2022, indicating their positions as to whether the issues in this case had

11  changed.

12       In said letter, Srour indicated that he wished to move for summary

13  judgment pre-discovery.   In response to the City's position that discovery was

14  necessary to decide Srour's as-applied challenges, Srour withdrew his as-applied

15  claims and his preemption claim and opted instead to proceed solely on a facial

16  constitutional challenge to the City's regulations.   Srour moved for summary

17  judgment on December 16, 2022.   On the same day, the NYPD amended the

18  regulations for implementing the rifle and shotgun permitting regime by

19  providing a definition for "good moral character" and removing the "good cause"

exception.  *See* Part I, *supra*.  Subsections 10-303(a)(2) and (a)(9) of the Code remained unchanged.

## B.     District Court Decision

On October 24, 2023, the district court issued an opinion and order granting in part, and denying in part, Srour's motion for summary judgment.   Specifically, it found that subsections 10-303(a)(2) and (a)(9) of the Code, i.e., the "good moral character" and "good cause" provisions, respectively, were facially unconstitutional.   As a result, the district court granted declaratory relief as to these subsections of the Code and enjoined enforcement of both of them.[4]

In finding subsection 10-303(a)(2) of the Code unconstitutional, the district court analyzed it on its face, and did not consider the revised version of section 3-03 of title 38 of the Rules—defining "good moral character"—as a part of the law. In doing so, the district court found that the City had "not identified any historical analogue for investing officials with the broad discretion to restrict someone's Second Amendment right based on determining the person to lack good moral

---

[4]  The district court concluded that only subsections (a)(2) and (a)(9) needed to be enjoined because the remaining subsections of section 10-303 of the Code were severable and could be left undisturbed.

1 character." *Srour*, 699 F. Supp. 3d at 279 (alteration and internal quotation marks

2 omitted).

3 The district court also determined that the *pre*-December 16, 2022 versions

4 of sections 3-03 and 5-10 of title 38 of the Rules, the versions under which Srour

5 was denied his permits, were facially unconstitutional. Because these versions of

6 the Rules were no longer in effect at the time of the district court's decision, and

7 the current versions were not before the district court, it held that declaratory and

8 injunctive relief as to the Rules was not necessary or appropriate.

9 The district court denied Srour's motion with regard to section 10-310 of the

10 Code, which provides criminal penalties for conduct which violates sections 10-

11 301 through 10-309—conduct which includes, for example, possessing a shotgun

12 without a license or defacing a serial number on a firearm. It reasoned that Srour

13 had not shown that all the conduct covered in those sections was protected by the

14 Second Amendment, and therefore he "failed to establish that section 10-310 is

15 facially unconstitutional." *Id.* at 285.

16 Lastly, the district court noted that it had already bifurcated the issues of

17 liability and damages. Therefore, with regard to Srour's retrospective claims

18 seeking money damages for the City's denial of his permits, the district court

19 directed the parties to file a joint letter proposing a discovery plan.

1    **C.    Post-Summary Judgment Developments**

2    On October 25, 2023, the City filed a notice of interlocutory appeal and

3    moved for a stay of the injunction of subsections 10-303(a)(2) and (a)(9) of the Code

4    pending appeal.   The district court denied the full stay, but granted a temporary

5    stay of the injunction to afford the City a short time to seek a stay pending appeal

6    before this Court.   Before this Court, the City asked for a stay of the injunction

7    only on subsection 10-303(a)(2)—the "good moral character" provision—and on

8    February 21, 2024, this Court granted the stay.

9    As this case was working its way to this Court, Srour filed a *new* application

10   for a permit to possess rifles and shotguns and immediately filed a separate

11   complaint against the City on October 29, 2023.   *See* Complaint, *Srour v. City of*

12   *New York*, No. 23-CV-9489 (JPC) (S.D.N.Y. Oct. 29, 2023) ("*Srour II*").   In *Srour II*,

13   he sought declaratory and injunctive relief on the basis that the *post*-December

14   2022 versions of the Rules of the City of New York, which include the amended

15   definition of "good moral character," are unconstitutional.   *Id.* at 1–2.   Even

16   though his new applications had yet to be denied, Srour asserted that he had

17   standing because "his applications are futile" as "[t]he denial of [his] applications

18   is *certain*."   *Id.* at 7, 9.

13

1    However, nothing in life is certain.   On March 21, 2024, after the opening

2    and response briefs were submitted in the case before this Court, Srour's rifle and

3    shotgun and handgun applications were granted.   Srour was issued his rifle and

4    shotgun permit on March 25.   In its reply brief submitted on April 10, 2024, the

5    City argued that this case was moot, as Srour's applications had been granted, and

6    that this Court should dismiss the appeal and vacate the judgment of the district

7    court.   After oral argument on June 10, 2024, the City filed a Post-Argument Letter

8    Brief reiterating its mootness argument, and Srour submitted a Post-Argument

9    Letter Brief, arguing that the case was not in fact moot.

10                                **DISCUSSION**

11    The parties disagree as to two issues relevant to this appeal: (1) whether

12    Srour's claims for injunctive and declaratory relief against subsection 10-303(a)(2)

13    are moot; and (2) the extent to which we possess pendent appellate jurisdiction

14    over his retrospective claims.   Under Article III, we are required to first address

15    whether Srour's claims for prospective relief are moot before considering if

16    exercising pendent appellate jurisdiction over other issues is appropriate.   *See*

17    *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement

18    that [Article III] jurisdiction be established as a threshold matter springs from the

19    nature and limits of the judicial power of the United States and is inflexible and

1    without exception." (alteration and internal quotation marks omitted)); *Blackwelder*

2    *v. Safnauer*, 866 F.2d 548, 550 (2d Cir. 1989) ("Mootness is a jurisdictional matter

3    relating to the Article III requirement that federal courts hear only cases or

4    controversies." (internal quotation marks omitted)).

5         For the following reasons, we conclude that Srour's claims for prospective

6    relief are moot.   Therefore, we decline to exercise pendent appellate jurisdiction

7    over any of Srour's claims for retrospective relief, which are not yet final.

8    **I.    Mootness**

9         The City argues that because Srour was granted a permit to possess rifles

10   and shotguns in March of 2024, "he no longer has any interest in the prospective

11   relief at issue in this appeal."   City Reply Br. at 4.   Therefore, the City argues,

12   Srour's claims requesting prospective relief from subsection 10-303(a)(2) of the

13   Code are moot.[5]

14        There is a "virtually unflagging obligation of the federal courts to exercise

15   the jurisdiction given them."   *Colo. River Water Conservation Dist. v. United States*,

---

[5] The City makes a separate, related, argument that there is no jurisdiction over Srour's claim against subsection 10-303(a)(2) because the NYPD amended its implementing regulations in December of 2022, and he therefore cannot "demonstrate an injury stemming from the permitting regime's present-day character requirement."   City Br. at 25.   Because we conclude that Srour's claim is mooted based on the fact that he received a rifle and shotgun permit, we need not address the City's alternative argument.

15

1    424 U.S. 800, 817 (1976).    However, we have a similarly strong obligation to decide

2    only actual cases and controversies.    *See DaimlerChrysler Corp. v. Cuno*, 547 U.S.

3    332, 341 (2006) ("If a dispute is not a proper case or controversy, the courts have

4    no business deciding it . . . .").    This is because "federal judges are not counselors

5    or academics; they are not free to take up hypothetical questions that pique a

6    party's curiosity or their own."    *FBI v. Fikre*, 601 U.S. 234, 241 (2024).

7         Our responsibility to ensure we limit our review to live cases and

8    controversies does not cease at the time a complaint is filed, but rather extends

9    through the entire life of a case.    *See Deeper Life Christian Fellowship, Inc. v. Sobol*,

10   948 F.2d 79, 81 (2d Cir. 1991) ("A case in federal court must be alive at all stages of

11   judicial proceedings, not only at the point at which a suit was originally filed.").

12   This is not an optional responsibility we carry, as "[u]nder Article III of the U.S.

13   Constitution, when a case becomes moot, the federal courts lack subject matter

14   jurisdiction over the action."    *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80

15   (2d Cir. 2013) (alteration and internal quotation marks omitted).

16        Whether or not the original denial of Srour's permit application was

17   unlawful, this "case is moot if the dispute is no longer embedded in any actual

18   controversy about [Srour's] particular legal rights."    *Already*, 568 U.S. at 91

19   (internal quotation marks omitted).    In Srour's case, his injury of being denied a

1    permit to possess rifles and shotguns—which gave him Article III standing to

2    bring this suit against the enforcement of subsection 10-303(a)(2)—has been

3    remedied.  Srour was granted a permit to possess rifles and shotguns, and it is

4    therefore "impossible for a court to grant [him] any effectual [prospective] relief."

5    *Knox v. Service Employees International Union, Local 1000*, 567 U.S. 298, 307 (2012)

6    (internal quotation marks omitted).   For this reason, his claim before us—barring

7    any applicable exception—is moot.

8           The exceptions to the mootness doctrine include "voluntary cessation cases

9    and cases capable of repetition but evading review."   *Mhany Mgmt., Inc. v. County*

10   *of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016).   Srour argues that this case falls under

11   the "voluntary cessation" exception because "[t]he City voluntarily (and

12   temporarily) complied with the district court's Order by issuing Srour a

13   rifle/shotgun license," and therefore the case and controversy is no longer live

14   because of the City's own actions, which should not be permitted to render the

15   case moot.   Srour Post-Argument Letter Br. at 3, ECF No. 60.[6]   We disagree.

16          An alleged wrongdoer's voluntary cessation of a disputed action will still

17   render a case moot if the wrongdoer can show that (1) there is no "reasonable

---

[6] Srour also cursorily argues that this case falls into the "capable of repetition yet

1    expectation" the action will recur, and (2) "interim relief or events have completely

2    and irrevocably eradicated the effects of the alleged violation."  *Granite State*

3    *Outdoor Advert., Inc. v. Town of Orange*, 303 F.3d 450, 451 (2d Cir. 2002) (quoting

4    *Campbell v. Greisberger*, 80 F.3d 703, 706 (2d Cir. 1996)); *see also Friends of the Earth,*

5    *Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) (explaining that "a

6    defendant claiming that its voluntary compliance moots a case bears the

7    formidable burden of showing that it is absolutely clear" there is no reasonable

8    expectation its behavior will recur).   The City has met that "formidable burden."

9        We begin with the easy question—whether the relief has "eradicated" the

10   effects of the City denying Srour a rifle and shotgun permit.   It has.   Srour has

11   obtained a permit to possess rifles and shotguns, and thus his situation is

---

avoiding review" exception because "the harm to Srour is capable of repetition. . . . [And if] the permanent injunction is vacated, this facially unconstitutional statute will evade review by this Court."   Srour Post-Argument Letter Br. at 6, ECF No. 60.   This misunderstands the "evading review" prong of the exception, which requires Srour to show that "the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration."   *Granato v. Bane*, 74 F.3d 406, 411 (2d Cir. 1996) (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)).   In other words, Srour's task is not to demonstrate that the City's alleged unconstitutional actions would evade review by *this* Court, but rather that they would evade review by *any* court because the very nature of the actions are so short in duration that they are likely to be moot before litigation can reasonably run its course.   *See, e.g., Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 648 (2d Cir. 1998) (finding the exception satisfied when plaintiff had "only a few weeks between being notified" that its parade permit was denied and the date of the parade, a period "clearly insufficient for full litigation of [plaintiff's] claims").   Srour has made no such demonstration here.

1   "sufficiently altered so as to present a substantially different controversy from the

2   one that existed when this suit was filed." *Lamar Advert. of Penn, LLC v. Town of*

3   *Orchard Park*, 356 F.3d 365, 378 (2d Cir. 2004) (internal quotation marks omitted).

4          The trickier question is whether the City has met its "stringent and . . .

5   formidable burden" in demonstrating that there is no reasonable expectation its

6   conduct will recur, i.e., that Srour's rifle and shotgun permit will not be revoked

7   for allegedly unconstitutional reasons. *Mhany*, 819 F.3d at 604 (citation omitted).

8   We hold that it has.

9          The City argues that "[t]here is no nonspeculative basis to conclude that

10  Srour will be subject to the character requirement for rifle/shotgun permitting

11  again in the future." City Reply Br. at 4 n.2. This is because the permit is subject

12  to *automatic* renewal every three years, and is subject to investigation only if "the

13  police commissioner has reason to believe that the status of the applicant has

14  changed." N.Y.C. Amin. Code § 10-303(f). At oral argument, the City

15  reaffirmed that "[Srour's] character . . . is not reassessed. So unless he is

16  rearrested . . . [or] decides to violate laws," he will not be subject to a character

17  assessment pursuant to subsection 10-303(a)(2). Oral Argument at 35:34–42.

18  These "representations are entitled to some deference." *Am. Freedom Def.*

19  *Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 110 (2d Cir. 2016) (giving weight to

1    a government agency's representations at oral argument that a challenged

2    regulation would not be applied to the plaintiff).

3         We agree with the City that there is no reasonable likelihood Srour again

4    will be subject to the allegedly unconstitutional character requirement.   Though

5    Srour argues that his license will be "subject to suspension and revocation at the

6    will of the License Division," Srour Post-Argument Letter Br. at 4, ECF No. 60,

7    there is no evidence to support the contention that his license will not in fact be

8    subject to automatic renewal, as is required by section 10-303(f) of the Code.   Nor

9    is there evidence, as Srour contends, that his application was granted "specifically

10    to seek vacatur of the permanent injunction."   *Id.*   Srour's October 2023

11    application was reviewed under the new implementing regulations which defined

12    "good moral character," *see* 38 R.C.N.Y. 3-03, suggesting this application was

13    granted when the previous one was denied due to a change in policy.   We have

14    previously held that a policy change from the government and a representation

15    that, under the current circumstances, the government will not resume the

16    challenged conduct, strongly support that the behavior is not reasonably expected

17    to recur.   *See Am. Freedom Def. Initiative*, 815 F.3d at 110 (holding the government

18    met its burden when, among other reasons, its regulations were amended and it

19    represented it would not apply the challenged regulation to the plaintiff); *Lillbask*

1   *ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 88–89 (2d Cir. 2005)

2   (explaining that while the *possibility* may exist that a child could be subject to

3   removal from a school, the defendant's concession that the child will not be

4   removed and their actions in helping the child thrive at the current school lead the

5   court "to conclude that a proposal to transfer [the child] . . . is [not] reasonably

6   likely to recur"); *Lamar*, 356 F.3d at 377 (finding that when defendant city amended

7   its regulations, mooting a plaintiff's claim, the voluntary cessation exception did

8   not apply, as there was "nothing [in the] record that would lead us to believe that

9   [defendant] intends to return to the questionable state of affairs that existed before

10  [plaintiff] filed suit").

11       Srour also argues that the City's statement that he may be subject to the

12  "good moral character" requirement again if he violates any laws or is rearrested

13  is "confirm[ation] that [the City] will continue to resume the challenged conduct."

14  Srour Post-Argument Letter Br. at 4, ECF No. 60.   This line of argument is of no

15  help to Srour.   The Supreme Court has "consistently refused to conclude that the

16  case-or-controversy requirement is satisfied by the possibility that a party will be

17  prosecuted for violating valid criminal laws.   [It has] instead assumed that

18  litigants will conduct their activities within the law and so avoid prosecution and

19  conviction as well as exposure to the challenged course of conduct."   *United States*

1  *v. Sanchez-Gomez*, 584 U.S. 381, 391 (2018) (alterations, citation, and internal

2  quotation marks omitted).

3       Lastly, Srour relies heavily on the recent Supreme Court case *Federal Bureau*

4  *of Investigation v. Fikre* in arguing that the City's issuance of the permit did not

5  moot the case.   However, Srour's situation is different from Fikre's, and *Fikre* does

6  not control our reasoning here.

7       In that case, Fikre challenged his addition to the No Fly List and sought

8  declaratory and injunctive relief, claiming that "the government had placed him

9  on the list for constitutionally impermissible reasons."   *Fikre*, 601 U.S. at 239.

10  After filing the lawsuit, Fikre was removed from the No Fly list but "[n]o

11  explanation accompanied the decision."   *Id.*   Because he was removed from the

12  No Fly List, the government argued that the case was moot, and even provided a

13  declaration representing that "Mr. Fikre will not be placed on the No Fly List in

14  the future based on the currently available information."   *Id.* at 240 (internal

15  quotation marks omitted).

16       The Supreme Court rejected the government's mootness argument, finding

17  that it did not "satisf[y] [its] formidable standard" of demonstrating it would not

18  again place Fikre on the No Fly List.   *Id.* at 243.   It found that the government's

19  "sparse declaration," *id.* at 242, as well as the contention that Fikre had not been

1    placed back on the list since 2016, were "insufficient to warrant dismissal," *id.* at

2    243. Importantly, the Supreme Court also noted that "it appears no statute or

3    publicly promulgated regulation describes the standards the government employs

4    when adding individuals to, or removing them from, the list." *Id.* at 237.

5         The fact that the defendant ceased and declared it would not restart its

6    challenged behavior are where the similarities between *Fikre* and this case begin

7    and end. In *Fikre*, the government unilaterally took Fikre off the No Fly List. *Id.*

8    at 239. Here, Srour actively applied for a rifle and shotgun permit again. Once

9    Srour re-applied for a permit, the City had legal obligations to him beyond his role

10   as a litigant in this suit. It was required to process his application. And it was

11   required to do so under the new regulations defining "good moral character"

12   promulgated by the NYPD. *See* 38 R.C.N.Y. 3-03; *see also Hassoun v. Searls*, 976

13   F.3d 121, 132–33 (2d Cir. 2020) (explaining that the government did not

14   impermissibly unilaterally moot a case when the action mooting the case was a

part of a separate legal obligation).   Srour, not the City, initiated review of his new

application, which was eventually granted in March of 2024.[7]

Additionally, in *Fikre*, when faced with a policy governed by no public rules

or regulations, the Supreme Court could not rely on the government's "sparse

declaration" that Fikre would not be subject to impermissible placement on the No

Fly List in the future.   *Fikre*, 601 U.S. at 242.   Here, we have a robust set of rules

and regulations governing the granting and renewal of licenses.   *See* N.Y.C.

Admin. Code § 10-303; 38 R.C.N.Y. § 3-03.   We know quite a bit, including the

exact standards that changed between the denial of Srour's first application and

the granting of his second, the fact that his renewal will generally be automatic,

and the criteria under which his renewal would not be automatic.   Moreover,

unlike in *Fikre*, *if* Srour's renewal were to be denied in the future, he would be

provided with the exact reasons as to the denial.   *See* N.Y.C. Admin. Code § 10-

303(e)(1) ("[T]he commissioner shall issue the permit or shall notify the applicant

of the denial of the application and the reason or reasons therefor.").

---

[7] If the City, after being faced with this lawsuit and decision from the district court, unilaterally reversed its denial of Srour's original 2018 application and issued him a rifle and shotgun permit, his case might more closely resemble *Fikre*.   That, however, is not the case.

24

1    Thus, unlike the Supreme Court in *Fikre*, we are satisfied in Srour's case that

2    the City has met its burden of demonstrating that the challenged "behavior could

3    not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 190.

4    Because Srour has been granted his rifle and shotgun permit, he "lack[s] a legally

5    cognizable interest in the outcome" of his challenge requesting injunctive and

6    declaratory relief from section 10-303(a)(2) of the Code, and the appeal before us

7    is moot. *Powell v. McCormack*, 395 U.S. 486, 496 (1969).

8    **II.    Pendent Appellate Jurisdiction**

9    Because we conclude that Srour's claims for prospective relief are moot, we

10   decline to exercise appellate jurisdiction over his nonfinal retrospective claims. A

11   federal appellate court's jurisdiction is defined by statute, and under 28 U.S.C.

12   § 1291, it is generally limited to appeals from final orders of a district court. While

13   the district court entered an injunction and declaratory relief, it did not, and has

14   still not, calculated the damages available to Srour for the allegedly

15   unconstitutional denial of his firearms permits. Therefore, the district court's

16   order is not a "final order." *See In re Fugazy Express, Inc.*, 982 F.2d 769, 775 (2d Cir.

17   1992) ("An order granting summary judgment on the issue of liability, but

18   requiring a calculation of damages, is not an appealable final order.").

1     "However, where a district court grants permanent injunctive relief but

2     reserves decision on damages, we have jurisdiction to hear the appeal pursuant to

3     § 1292(a)(1)." *Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1175 (2d Cir. 1995).

4     Because the district court entered an injunction of subsections (a)(2) and (a)(9) of

5     the Code, that injunction is an interlocutory order that we possess appellate

6     jurisdiction over pursuant to § 1292(a)(1).   However, "the Supreme Court has . . .

7     directed the Courts of Appeals not to take 'pendent appellate jurisdiction' on

8     interlocutory appeals of issues not themselves immediately appealable." *Rein v.*

9     *Socialist People's Libyan Arab Jamahiriya*, 162 F.3d 748, 756 (2d Cir. 1998) (quoting

10    *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 51 (1995)).   As there is generally a

11    "bar to interlocutory appeals of all issues not independently warranting

12    immediate review," *id.* at 757, to review the portion of the district court's judgment

13    concerning retrospective relief would require this Court to assume pendent

14    jurisdiction on issues over which 28 U.S.C. § 1292(a)(1) does not independently

15    grant us jurisdiction, which is permitted only in limited circumstances.[8]

---

[8] We can assume pendent appellate jurisdiction over issues not warranting immediate review "(a) where an issue is inextricably intertwined with a question that is the proper subject of an immediate appeal, or (b) where review of a jurisdictionally insufficient issue is necessary to ensure meaningful review of a jurisdictionally sufficient one." *Rein*, 162 F.3d at 757–58 (internal quotation marks omitted).

1    "We have held that issues usually will not be considered inextricably

2    intertwined where review of the unappealable issue is not necessary for review of

3    the issue over which we have appellate jurisdiction."   *Lamar Advert. of Penn, LLC*

4    *v. Town of Orchard Park*, 356 F.3d 365, 372 (2d Cir. 2004) (internal quotation marks

5    omitted).   Here, as explained *supra*, Srour's prospective claims based on the

6    district court's order granting injunctive and declaratory relief are now moot.   As

7    we lack jurisdiction to review these claims, it is neither necessary nor appropriate

8    to review the nonfinal retrospective claims.   We therefore decline to exercise

9    pendent appellate jurisdiction over any of Srour's claims for retrospective relief.

10   **III.    Vacatur**

11   When a case becomes moot on appeal, we must consider "what to do with

12   the lower court's judgment."   *Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 14 (2023)

13   (Jackson, *J.*, concurring).   We have the authority to "affirm, modify, vacate, set

14   aside or reverse any judgment, decree, or order of a court . . . as may be just under

15   the circumstances."   28 U.S.C. § 2106.   It is the case that "[w]hen a civil case

16   becomes moot pending appellate adjudication, 'the established practice in the

17   federal system is to reverse or vacate the judgment below and remand with a

18   direction to dismiss.'"   *Arizonans for Off. English v. Arizona*, 520 U.S. 43, 71 (1997)

19   (alterations omitted) (quoting *Munsingwear*, 340 U.S. at 39).   This general practice

1   makes sense—otherwise losing parties who wish to challenge a ruling may find

2   themselves saddled with an adverse but unappealable judgment if the underlying

3   district court decision is not vacated. *See U.S. Bancorp Mortg. Co. v. Bonner Mall*

4   *P'ship*, 513 U.S. 18, 25 (1994) ("A party who seeks review of the merits of an adverse

5   ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be

6   forced to acquiesce in the judgment."); *see also Camreta v. Greene*, 563 U.S. 692, 713

7   (2011) ("When happenstance prevents . . . review from occurring, the normal rule

8   should apply: Vacatur then rightly strips the decision below of its binding effect,

9   and clears the path for future relitigation." (internal citations and quotation marks

10   omitted)).

11       Vacatur is not warranted, though, when an appellant acts in bad faith to

12   purposefully moot a case. In such a case, "[a]n appellant's actions constitute

13   forfeiture of the benefit of vacatur" because it "voluntarily act[ed] with an intent

14   that the appeal become moot." *Hassoun*, 976 F.3d at 131 (alteration and internal

15   quotation marks omitted). But "conduct that is voluntary in the sense of being

16   non-accidental, but which is entirely unrelated to the lawsuit, should not preclude

1  our vacating the decision below." *Russman v. Bd. of Educ.*, 260 F.3d 114, 122 (2d

2  Cir. 2001).

3        There is no indication that the City granted Srour's rifle and shotgun permit

4  to intentionally moot this case, or even that its action was related to this lawsuit.

5  It is true that the City's action in granting Srour a rifle and shotgun permit was the

6  final action in a chain of actions that ultimately mooted this appeal.   However, as

7  explained *supra*, the *first* action in that chain was precipitated by Srour himself—

8  he re-applied for a rifle and shotgun permit on October 26, 2023, after the district

9  court granted summary judgment in his favor and the City filed a notice of

10  interlocutory appeal in this action.   In deciding if vacatur is the correct path,

11  "[t]he appellant's fault in causing mootness is . . . the touchstone of our analysis."

12  *F.D.I.C. v. Regency Sav. Bank, F.S.B.*, 271 F.3d 75, 77 (2d Cir. 2001).   The City was

13  required to timely process the new application that Srour submitted, and there is

14  no indication that his permit was granted for the purpose of mooting this appeal.

15  Thus, we find that the standard practice of vacating the district court's judgment

16  is appropriate in this case.   *See Hassoun*, 976 F.3d at 132–33 (explaining that while

17  it was the government's actions in deporting the plaintiff that caused the case to

18  be moot, this action was a result of "the government's ongoing effort to comply

1    with" its statutory obligations, "independent of the pending lawsuit," and

2    therefore vacatur was appropriate).

3                                   **CONCLUSION**

4          For the reasons stated above, we **VACATE** the district court's judgment

5    enjoining subsection 10-303(a)(2) of the New York City Administrative Code and

6    its declaration that it is facially unconstitutional, **DISMISS** this appeal as moot,

7    and **REMAND** to the district court with instructions to dismiss Srour's claims for

8    injunctive and declaratory relief from New York City Administrative Code

9    subsection 10-303(a)(2) as moot.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

30